## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

COMMISSIONERS AMELIA POWERS
GARDNER, GREG MILES, CLINT
PAINTER, VICTOR IVERSON, LORI
MAUGHAN, TAMMY PEARSON, and
ADAM SNOW, each a registered Utah
voter and elected official; MAYOR
JIMMIE HUGHES, a registered Utah
voter and elected official; SHERIFFS
TRACY GLOVER, CHAD JENSEN, and
MIKE SMITH, each a registered Utah
voter and elected official, and
REPRESENTATIVES CELESTE
MALOY and BURGESS OWENS, each
a registered Utah voter and incumbent
elected official seeking re-election,

*Plaintiffs,*

v.

LIEUTENANT GOVERNOR DEIDRE
HENDERSON, in her official capacity,

*Defendant.*

Civil Action No.: 2:26-cv-84

THREE-JUDGE PANEL
REQUESTED

## COMPLAINT

## INTRODUCTION

1.     The Elections Clause of the United States Constitution unequivocally
vests the authority to decide "[t]he Times, Places and Manner of holding Elections for
Senators and Representatives," in the "Legislature" of "each State." U.S. Const. art. I,
§ 4, cl. 1. The only exception is that Congress may alter the state legislature's decision

or act on its own. *See id*. In accord with the U.S. Constitution, the People in Utah also declared that "the *Legislature* shall divide the state into congressional, legislative, and other districts." Utah Const. art. IX, § 1 (emphasis added). Thus, the political branches chosen by the People of Utah—not judges or private activist organizations—possess the exclusive constitutional authority to determine the apportionment of the People's representatives in the U.S. Congress.

2.      Yet, on November 10, 2025, in a 90-page order issued minutes before a midnight deadline set by the Lieutenant Governor, Utah state district judge Dianna Gibson purported to do precisely what the Elections Clause forbids—with the Lieutenant Governor's apparent (and understandable) acquiescence. After purporting to strike down maps enacted by the Utah Legislature for (in her view) not complying with a Utah statute known as Proposition 4, Judge Gibson purported to select and impose "Map 1"—a congressional redistricting plan that had never been introduced, debated, or voted upon by a single member of the Utah House or Senate. Map 1 was instead drafted by attorneys and expert witnesses for the League of Women Voters and Mormon Women for Ethical Government, private activist organizations that possess no lawmaking power under either the United States or Utah Constitutions. And the Lieutenant Governor has stated that she currently considers herself bound to use this judicially mandated map for the 2026 congressional elections.

3.      In one stroke, therefore, Judge Gibson's decision has effectively displaced the elected representatives of the People of Utah and substituted her own preferred electoral arrangement, drafted by partisan litigants that openly sought to flip one of Utah's four Republican congressional seats to a Democrat. The only proper remedy for a court in such circumstances is to enjoin the Lieutenant Governor from implementing an unconstitutional map and either allow the pre-existing 2021 map to remain in effect or to remand to the Legislature to draw a new one. That is because Map 1 contravenes the Elections Clause and threatens to disenfranchise every Utah voter by substituting the policy preferences of a single state judge for the considered judgment of the People's chosen representatives as defined by the Utah Constitution and in line with the federal Elections Clause.

4.      At bottom, the question presented in this suit is not whether Utah's congressional lines should be compact, competitive, or politically "fair" by some contested metric. Instead, this case presents the fundamental question of whether the People of Utah, acting through their Legislature, as defined in the Utah Constitution, retain the sovereign authority the Framers reserved to them—or whether that authority may now be exercised by a single state district judge willing to adopt and implement plans submitted by special-interest litigants seeking partisan ends. That usurpation is something for which no Utahn has ever voted, and that few desire.

5.     If the Legislature does not draw a new map, then Congress has determined that congressional elections will proceed with previous maps, such as the 2021 map (*see* 2 U.S.C. § 2a(c)), which have already been successfully implemented in prior elections. In all events, because Map 1 violates Plaintiffs' rights and the rights of every Utah voter, Plaintiffs respectfully ask this Court to declare Map 1 unconstitutional and to enjoin its use in the 2026 congressional elections and beyond.

## PARTIES

6.     Plaintiffs (collectively "Utah Voters") are County Commissioners Amelia Powers Gardner, Greg Miles, Clint Painter, Victor Iverson, Lori Maughan, Tammy Pearson, and Adam Snow; Mayor Jimmie Hughes; Sheriffs Tracy Glover, Chad Jensen, and Mike Smith; and Representatives Celeste Maloy and Burgess Owens, all elected officials as well as Utah voters. They have all been deprived of their right as Utah citizens to congressional representatives chosen in accord with the U.S. and Utah Constitutions.

7.     Plaintiff Amelia Powers Gardner is a registered Utah voter who currently serves as a commissioner of Utah County, Utah. Map 1 deprives her of her right to representatives chosen in accord with the U.S. and Utah Constitutions.

8.     Plaintiff Greg Miles is a registered Utah voter who currently serves as a commissioner of Duchesne County, Utah. Map 1 deprives him of his right to representatives chosen in accord with the U.S. and Utah Constitutions.

9. Plaintiff Clint Painter is a registered Utah voter who currently serves as a commissioner of Juab County, Utah. Map 1 deprives him of his right to representatives chosen in accord with the U.S. and Utah Constitutions.

10. Plaintiff Victor Iverson is a registered Utah voter who currently serves as a commissioner of Washington County, Utah. Map 1 deprives him of his right to representatives chosen in accord with the U.S. and Utah Constitutions.

11. Plaintiff Lori Maughan is a registered Utah voter who currently serves as a commissioner of San Juan County, Utah. Map 1 deprives her of her right to representatives chosen in accord with the U.S. and Utah Constitutions.

12. Plaintiff Tammy Pearson is a registered Utah voter who currently serves as a commissioner of Beaver County, Utah. Map 1 deprives her of her right to representatives chosen in accord with the U.S. and Utah Constitutions.

13. Plaintiff Adam Snow is a registered Utah voter who currently serves as a commissioner of Washington County, Utah. Map 1 deprives him of his right to representatives chosen in accord with the U.S. and Utah Constitutions.

14. Plaintiff Jimmie Hughes is a registered Utah voter who currently serves as mayor of St. George, Utah. Map 1 deprives him of his right to representatives chosen in accord with the U.S. and Utah Constitutions.

15. Plaintiff Tracy Glover is a registered Utah voter who currently serves as sheriff of Kane County, Utah. Map 1 deprives him of his right to representatives chosen in accord with the U.S. and Utah Constitutions.

16.   Plaintiff Chad Jensen is a registered Utah voter who currently serves as sheriff of Cache County, Utah. Map 1 deprives him of his right to representatives chosen in accord with the U.S. and Utah Constitutions.

17.   Plaintiff Mike Smith is a registered Utah voter who currently serves as sheriff of Utah County, Utah. Map 1 deprives him of his right to representatives chosen in accord with the U.S. and Utah Constitutions.

18.   Plaintiff Burgess Owens is a registered Utah voter who currently serves as a Member of the United States House of Representatives for Utah. He is also an incumbent candidate seeking reelection in 2026. Map 1 deprives him of his right to representatives chosen in accord with the U.S. and Utah Constitutions. It also affects his ability to seek election under a constitutionally valid map freely chosen by the Legislature. Representative Owens brings this action to protect his rights as well as the right of all his constituents—old and new—to the election procedures guaranteed to them under the federal and Utah constitutions.

19.   Plaintiff Celeste Maloy is a registered Utah voter who currently serves as a Member of the United States House of Representatives. She is also an incumbent candidate seeking reelection in 2026. Map 1 deprives her of her right to representatives chosen in accord with the U.S. and Utah Constitutions. It also affects her ability to seek election under a constitutionally valid map freely chosen by the Legislature. Representative Maloy brings this action to protect her rights as well as

the right of all her constituents—old and new—to the election procedures guaranteed to them under the federal and Utah constitutions.

20.    Defendant Lieutenant Governor Diedre Henderson is Utah's chief election officer. She is responsible for coordinating with local, state, and federal officials to ensure compliance with federal and state election laws and to oversee voter registration activities and compliance with the National Voter Registration Act and the Help America Vote Act. Utah Code § 20A-2-300.6. The Lieutenant Governor is also charged with accepting declarations of candidacy or intent to gather signatures in elections for federal office from candidates directly or from county clerks on behalf of candidates. *See id.* §§ 20A-9-201–202. The Lieutenant Governor likewise implements congressional redistricting plans, including—if it is ultimately implemented—Map 1, which is at issue here. *See id.* §§ 20A-13-102–102.2. Defendant Henderson is sued in her official capacity only.

21.    The Lieutenant Governor has stated that she will implement Map 1 because of the state district court's order unless she is ordered not to do so. A declaration (and accompanying injunction) from this Court that Map 1 has not been validly adopted in accordance with the Federal Elections Clause and therefore cannot be imposed on the People of Utah will allow the Lieutenant Governor to act in accordance with that provision and thus redress the harms to Plaintiffs.

## JURISDICTION AND VENUE

22.    This Court has original jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including the Elections Clause.

23.    A three-judge panel is requested under 28 U.S.C. § 2284(a), as this action challenges "the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body.

24.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the Utah Voters' claims occurred in this district.

25.    This Court has authority to grant the declaratory relief requested herein under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). Any further necessary or proper relief is authorized by 28 U.S.C. § 2202.

## PLAINTIFFS' STANDING

26.    The Utah Voters all have standing to pursue their claim that Map 1—which reapportions the districts where they reside and vote—is unconstitutional. The Representatives have an additional basis for standing because Map 1 reapportions the districts where they hold office and are running for reelection and has changed the rules governing their congressional election campaigns.

27.    The Utah Voters allege that Map 1 was not enacted by the State's Legislature as required by law and that its implementation burdens their concrete voting interests and the electoral interests of the Representatives.

28.    The Utah Voters are harmed by having their representatives chosen under a map selected by a state district court judge and special interests rather than by the Legislature, as the U.S. and Utah Constitutions require. This overarching harm is compounded by further concrete harms detailed below.

29.    The normal redistricting process avoids these harms because, on the front end, it is conducted with local input through the People's chosen representatives in the Legislature. And on the back end, Utahns can seek insight into the decision process through GRAMA requests (Utah's FOIA analogue). But the unconstitutional way Map 1 was drawn and selected eliminates this input from the People of Utah.

30.    The People—represented in this lawsuit by the Utah Voters, including various elected officials—have special knowledge of their communities that no state district court or special interest group has. And many of the People, including the Plaintiffs here, have valuable working relationships with their members of Congress, relationships that they wish to perpetuate. The People, including the Plaintiffs, wanted to work with the Legislature to determine the congressional boundaries that best represent them. But Map 1 has cut out the People from the constitutionally mandated redistricting process. By circumventing the Legislature, the state district

court denied the People, including the Plaintiffs, the ability to influence the redistricting process either directly or through their chosen elected officials.

31.     One result of cutting the People out of the redistricting process is that they are confused by the unconstitutional redistricting that has occurred. They do not know whether the state district court's abrupt changes to Utah's congressional maps will hold.

32.     The Utah Voters also now stand to lose their chosen representatives by unconstitutional means, on whom they depend to achieve their federal legislative objectives. These objectives pertain to federal public land and water issues, business growth, regulatory barriers, homelessness, opioid addiction, and illegal immigration, to name but a few.

33.     Map 1 ignores geographical concerns that the Utah Voters could have raised with the Legislature during a normal, constitutional redistricting process. For example, Map 1 crams seventeen counties and part of Utah County into one congressional district. To achieve their federal legislative needs, Plaintiffs who reside in these counties now must compete for attention with triple the number of counties than any other district contains.

34.     Map 1 also places many of the fastest growing cities in Utah—including Eagle Mountain, Lehi, Santaquin, and Saratoga Springs—in the same congressional district. By the time the next census is taken and a new map created in 2030, this district will likely be heavily lopsided compared to other districts. And because of the

influx of new residents, the people residing in that district will likely have their votes diluted.

35.    Map 1 also changes county divisions in ways that harm Utah Voters. The Legislature had ensured that every member of Utah's congressional delegation represented part of Utah's most populous county, Salt Lake County. The Legislature's division guaranteed that Utah's entire congressional delegation was incentivized to help Salt Lake County—such as ensuring that federal public land revenues continue to provide a large share of the county's school funding. And many of Utah's most pressing challenges—homelessness, opioid addiction, and illegal immigration—center in Salt Lake County. Now, however, only some of Utah's congressional delegation will likely be seeking this type of aid for Salt Lake County. In the normal, constitutional redistricting process, the Utah Voters could have raised these concerns with the Legislature. But Map 1 threatens to upend this federal aid.

36.    The Legislature had also recognized that the People in western Juab County shared more in common with Utah's western and southern counties, and the People in eastern Juab County with the Wasatch Front counties. The Legislature districted them accordingly. Now, under Map 1, eastern Juab County will be in a district with predominantly rural counties, with whom it has less in common. In the normal, constitutional redistricting process, the Utah Voters could have raised these concerns with the Legislature.

37.    The Utah Voters who are also elected public officials suffer their own unique harms. They each stand to lose valuable allies in Congress, in whom the Utah Voters have invested considerable time and resources to help their respective representatives understand their interests. The unconstitutional redistricting process here will destroy or compromise those carefully developed representative-constituent relationships. No matter who is chosen as a representative under Map 1, or to which party that representative belongs, the Utah Voters (or some of them) will have to develop new relationships, with all the time and resources that it entails. In the normal, constitutional redistricting process, the Utah Voters could have raised these concerns with the Legislature.

38.    As but one example, Commissioner Amelia Powers Gardner has been working with Representative Mike Kennedy to place a pedestrian bridge separating the foot and wheeled traffic near Bridal Veil Falls near Provo. The project requires a land swap with the federal government, and they are now halfway through that process. But Map 1 upends Commissioner Powers Gardner's efforts by depriving her of her existing representation and placing her in a new district that was not selected according to the U.S. and Utah Constitutions. In the normal, constitutional redistricting process, Commissioner Powers Gardner could have raised these concerns with the Legislature.

39.    The Utah Voters who are also elected state public officials swear an oath to "support, obey, and defend the Constitution of the United States and the

Constitution of the State of Utah," and to "discharge the duties" of his or her "office with fidelity." Utah Const. art. IV, § 10. These officials hold this oath sacred. Many recognize the unconstitutional nature of Map 1, and yet they are being coerced to violate their oaths to implement it.

40.     In support of their oaths of office, Washington County's commissioners have recognized the imposition of Map 1 to be a constitutional crisis, and they have officially voted to refuse to adopt the unconstitutional Map 1.

41.     The Representatives are uniquely harmed by Judge Gibson's changing of the election rules through her unconstitutional redistricting. The normal rules and timeline have been thrown into confusion by the state district court's unconstitutional usurpation of the Legislature's redistricting authority. Now no one knows what the congressional boundaries will be. And the Representatives do not know where they should file to run and continue spending money, time, and resources campaigning.

42.     The Representatives will face a variety of logistical and political challenges to re-election if the new map goes into effect. For example, each Representative will need to spend substantial time and money campaigning in new areas that have not previously been part of their districts. And because Map 1 redistricts the state for the partisan end of creating a heavily favored Democrat district, it significantly distorts the districts in ways that the Legislature would not have chosen, as is their constitutional right.

43.    The Representatives are more than happy to represent any group of Utahns. But their rights and the rights of their constituents and all other Utah Voters to vote and to have the Legislature regulate congressional elections in the state are being usurped by a state judge, who substituted the constitutionally mandated redistricting body for a map chosen by special interests, under a process that no Utahn has ever voted for.

44.    Since the 2024 election, moreover, the Representatives have been spending time, energy, and resources preparing for the 2026 election based on the Legislature's 2021 map. But in the past five months, the State of Utah has seen three probable maps. Five months ago, the Representatives were planning to run under the same map used since 2021. Then Judge Gibson unconstitutionally ordered the Utah State Legislature to draw and submit a different map. The Representatives pivoted to planning to run under the submitted map, Map C. Then in November, Judge Gibson struck down Map C and substituted Map 1, a map drawn by special interest groups who have no constitutional authority to redistrict Utah. Now, the status of Map 1 is uncertain, as the Utah State Legislature appeals Judge Gibson's order. These changes have harmed the Representatives. This Court can provide a definitive answer by declaring that state district courts cannot displace the Legislature from its prescribed role of exercising redistricting authority under the U.S. Constitution.

45.    Normally, the Representatives would file to run for re-election in January of an election year. Under that timeline, the Representatives would

campaign from January until the convention in April, then until the primary in June, and then until the general election in November. The Representatives use this important time to meet their campaigning needs, including educating potential voters and speaking to potential state delegates.

46.    At this time, the Representatives do not know where to file for office or begin campaigning. Nor do they know where to budget their time. For Representative Maloy, if the current, unconstitutional Map 1 holds, she will be either representing or campaigning in most of Utah's 29 counties until the election is held in November, should she file to run where she lives. The confusion resulting from the unconstitutional implementation of Map 1, and from Map 1 itself, thus dilutes her ability to spend time representing her current district and running for office in the district she hopes to represent.

47.    Moreover, this confusion results in lost time while the Representatives wait for this situation to be resolved. Neither Representative Maloy nor Representative Owens have yet filed for re-election. Their districts have been shifted to a point where the Representatives do not know which district to choose.

48.    For Representative Maloy, it is difficult for her to know where to spend her money—whether in her current district, which includes Salt Lake, Davis, and Tooele counties, or the new district, which includes multiple other counties. She faces a similarly difficult decision regarding how to spend her time—in the counties she currently represents or meeting voters and campaigning in an entirely new, massive

area of Utah. Representative Owens faces similarly difficult decisions that divide his money, time, and resources.

49.    The Representatives are thus being forced to make choices that uniquely burden their ability to run for office in the districts they live in and to represent adequately their current constituents, while still campaigning effectively and reaching potential new voters across most of Utah.

50.    The Representatives understand, of course, that during any election, their constituents could elect a different candidate. But that result would be because the voice of the People chose a different representative. Here, the People are being deprived of their right to have their representatives chosen in the manner that the U.S. and Utah Constitutions require.

51.    The Representatives also understand that regular, lawful redistricting is an occupational hazard. But Judge Gibson's redistricting has not followed the normal constitutional course. For this reason too, their constituents have been deprived of their right to have their representatives chosen as the U.S. and Utah Constitutions require.

52.    The U.S. Supreme Court has "long recognized that a person's right to vote is 'individual and personal in nature,'" so "'voters who allege facts showing disadvantage to themselves as individuals have standing to sue' to remedy that disadvantage." *Gill v. Whitford*, 585 U.S. 48, 65–66 (2018) (quoting first *Reynolds v. Sims*, 377 U.S. 533, 561 (1964); then *Baker v. Carr*, 369 U.S. 186, 206 (1962)). The

Court has also held that, "through the Elections Clause, … one-person, one-vote and racial gerrymandering" claims are justiciable, but partisan gerrymandering *fairness* claims are not "because the Constitution supplies no objective measure" for a judicial determination. *Rucho v. Common Cause,* 588 U.S. 684, 699, 707–08 (2019). Here, the voters' claim is not a partisan gerrymandering fairness claim. Their claim, rather, is that the map was chosen by an entity that lacks the constitutional authority to do so. And that determination is an objective one.

53.    Candidates for election, moreover—including the Representatives here—also have a legitimate, legal interest in winning and holding office. *See, e.g.*, *Drake v. Obama*, 664 F.3d 774, 783 (9th Cir. 2011) ("potential loss of an election" was injury-in-fact sufficient to give local candidate and party officials supporting that candidate standing). Indeed, the Supreme Court has recently held that "a candidate has a personal stake in the rules that govern the counting of votes in his election." *Bost v. Ill. State Bd. of Elections*, 607 U.S. --, 2026 WL 96707, at *3 (2026). That principle logically includes redistricting. And denial of the Representatives' right to constitutionally valid election procedures impairs the right of all Utah voters to elect the representatives of their choice, consistent with those procedures. It also imposes a legally cognizable injury-in-fact on the affected Representatives.

54.    The Utah Voters' injuries (including those of the Representatives) are also fairly traceable to the Defendant's proposed implementation of Map 1, a congressional map selected by a state district judge from a plan drawn by non-

legislative activist organizations, and which was not adopted by the constitutionally designated redistricting authorities of the State.

55.    The Utah Voters' injuries (including those of the Representatives) are also redressable by this Court through declaratory and injunctive relief declaring Map 1 unconstitutionally adopted and enjoining its implementation, thus restoring compliance with federal constitutional requirements governing the manner of prescribing congressional election rules and maps.

56.    The Utah Voters have standing to assert claims regarding the dilution of their representational and voting rights.

57.    The unconstitutional redistricting here, moreover, changes the rules of the election just as the candidates are preparing to run their races. The Supreme Court has held that there are many reasons a candidate for office, such as the Representatives, are injured by an "unlawful election rule." *Bost*, 2026 WL 96707, at *3. Unlawful rules "might cause him to lose the election," "might require him to expend additional resources," and "might decrease his vote share and damage his reputation." *Id.* But even if those injuries were not present, candidates have a more fundamental "interest in a fair process." *Id.* "Win or lose, candidates suffer when the process departs from the law." *Id.* When the process is unfair or even perceived as unfair, it "undermine[s] the winner's political legitimacy" and "erodes public confidence that the election results reflect the people's will." *Id.* at *4. In short, when

"the preordained rules" are departed from, candidates suffer "particularized and concrete harm." *Id.*

58.    The Representatives also have standing to assert claims available to voters within their districts, including dilution of their representational and voting rights.

59.    The injuries to the Utah Voters (including those to the Representatives) are actual and imminent as the challenged map governs the configuration of their districts and the conduct of upcoming federal elections in which they intend to vote, and in which the Representatives also seek reelection, thereby establishing injury-in-fact, traceability to Defendant's proposed implementation of the map, and redressability through the requested relief.

## ADDITIONAL FACTUAL ALLEGATIONS

60.    In the federal Constitution, the People of the United States determined that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof…." U.S. Const. art. I, § 4. And this determination is subject to congressional oversight: "Congress may at any time by Law make or alter such regulations, except as to the Places of chusing Senators." *Id.*

61.    Congress used the latter power to give federal courts jurisdiction over reapportionment suits. *See* 28 U.S.C. § 2284(a) ("A district court of three judges shall be convened … when an action is filed challenging the constitutionality of the

apportionment of congressional districts or the apportionment of any statewide legislative body.").

62.    The Supreme Court has also recognized that "States retain autonomy to establish their own governmental processes." *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 816 (2015). "Through the structure of its government, and the character of those who exercise government authority, a State defines itself as a sovereign." *Id.* (quoting *Gregory v. Ashcroft,* 501 U.S. 452, 460 (1991)).

63.    When the People of Utah joined the People of the United States, they vested congressional apportionment authority exclusively in the state "Legislature" and gave it a mandate to "divide the state into congressional, legislative, and other districts…." Utah Const. art. IX, § 1. The People required the Legislature to do so "[n]o later than the annual general session next following the Legislature's receipt of the results of an enumeration made by the authority of the United States…." *Id.*

64.    The apportionment process, however, has not always resulted in a new map being approved by the Legislature. The Utah Supreme Court recognized that, in the 60 years following statehood, "[t]he difficulties in securing enactment of reapportioning legislation [were] such that, notwithstanding the directive that it be done following each federal census, only three such acts [were] passed." *Parkinson v. Watson*, 291 P.2d 400, 402 (Utah 1955).

20

65.     When a map is held unconstitutional, the proper remedy is to enjoin the map and remand to the Legislature, which is the only authorized entity to draw a new map under the U.S. Constitution. U.S. Const. art. I, § 4, cl. 1.

66.     If a new map is not selected, then Congress has determined, using its Elections Clause authority, how the congressional representatives are to be selected. 2 U.S.C. § 2a(c). The U.S. Constitution does not authorize any court to fill the gap and engage itself in drawing a congressional map.

***Proposition 4***

67.     In 2018, Utah voters approved Proposition 4, a statute that banned partisan gerrymandering and mandated neutral criteria like compactness and community preservation.

68.     Proposition 4 also created an Independent Redistricting Commission as a creature of statute, unlike commissions from other states that have been elevated to constitutional status. *Cf. Ariz. State Legislature*, 576 U.S. at 817 (citing Ariz. Const. art. IV) (Arizona's "people placed both the initiative power and the [Arizona Independent Redistricting Commission's] redistricting authority in the portion of the Arizona Constitution delineating the State's legislative authority.").

69.     In 2020, the Legislature passed SB 200, which amended Proposition 4. A group of plaintiffs led by the League of Women Voters of Utah and Mormon Women for Ethical Government sued the Legislature in state court over SB 200. *See League of Women Voters of Utah v. Utah State Legislature*, 554 P.3d 872, 916 (Utah 2024).

The plaintiffs there alleged that their right under the Utah Constitution to "Alter or Reform" their government was infringed when the Utah Legislature amended the Proposition 4 redistricting statute that the People of Utah had passed by initiative. *Id.* at 878–79. The Utah Supreme Court ultimately ruled that SB 200 should have been evaluated under strict scrutiny and remanded.

70.    In that ruling, however, the Utah Supreme Court carefully emphasized that Proposition 4 "did not take the authority to enact electoral maps from the Legislature and give it to the Independent Commission. Rather, it empowered the Independent Commission to create proposed maps, which the Legislature was required to consider." *League of Women Voters of Utah*, 554 P.3d at 916; *see* Utah Code § 20A-19-204(2)(a) (2018) ("The Legislature shall *either* enact without change or amendment ... *or* reject the Commission's recommended redistricting plans submitted to the Legislature...." (emphasis added)).

71.    The Utah Supreme Court noted that "[a]ccordingly, under Proposition 4, the Legislature retained the ultimate responsibility for 'divid[ing] the state into congressional, legislative, and other districts.'" *League of Women Voters of Utah*, 554 P.3d at 917.

### *Remand*

72.    On remand, in January 2025, Judge Gibson heard arguments on cross motions for summary judgment regarding whether SB 200 satisfied the standards established by the Utah Supreme Court in *League of Women Voters of Utah v. Utah*

22

*State Legislature*. She then requested additional briefing on remedies, due in April 2025.

73.     Four months passed, and on August 25, 2025, Judge Gibson purported to enjoin SB 200 and the post-2020 census congressional maps. *League of Women Voters of Utah v. Utah State Legislature*, No. 220901712, 2025 WL 2644292 (Aug. 25, 2025). She purported to order the Legislature to submit new congressional maps within 30 days, but she also ordered the League of Women Voters and other plaintiffs to submit their own maps. She later clarified that she could not constitutionally order the Legislature to submit a map.

74.     Defendant Lieutenant Governor Deidre Henderson extended the map deadline for the 2026 Elections to November 10, 2025.

75.     Under duress, the Legislature passed S.B. 1011, which amended Proposition 4, and S.B. 1012, which approved a new congressional map, "Map C."

76.     The plaintiffs then submitted their own maps to the Utah district court and moved for an injunction against the Legislature's map.

77.     The district court held an evidentiary hearing regarding the maps on October 23–24, 2025.

78.     On November 10 at 11:25 p.m.—five minutes before the end of the deadline imposed by Defendant—Judge Gibson issued a 90-page ruling that declared Map C an "extreme partisan outlier" drawn with partisan political data and non-compliant with Proposition 4's criteria. *League of Women Voters of Utah v. Utah State*

*Legislature*, No. 220901712, Ruling & Order, at *2 (Nov. 10, 2025) ("Nov. 10 Order"), https://tinyurl.com/47sykkze. She then purported to strike down S.B. 1011 and S.B. 1012 and to adopt the plaintiffs' Map 1, creating a Democratic-leaning district in northern Salt Lake County and southern Davis County. *Id.* at *89.

79.     The next day, on November 11, Lieutenant Governor Henderson posted on her personal X account that she "will comply with Judge Gibson's order and immediately begin the process of implementing Plaintiff's Map 1 unless otherwise ordered by an appeals court. Official statement forthcoming." Deidre Henderson (@DeidreHenderson), X (Nov. 11, 2025 1:52 AM), https://tinyurl.com/wk3fs6bj.

80.     That same day, Lieutenant Governor Henderson confirmed her decision to implement Map 1 in a post on her official X account: "There will likely be an emergency appeal, but the process of finalizing new boundary details will take weeks of meticulous work on the part of state and county officials. Barring an appellate court ruling, we must begin without delay to ensure that everything is in place for candidate filing in January. The people of Utah deserve an orderly and fair election and we will do everything in our power to administer one." Lt. Gov. Deidre M. Henderson (@LGHendersonUtah), X (Nov. 11, 2025 9:29 AM), https://tinyurl.com/57a984zy.

### A New Congressional Map is Unconstitutionally Selected

81.     In her ruling, Judge Gibson purported to determine that she had "the unwelcome obligation to order the use of a lawful congressional map for use in the

2026 election" based on "federal and state law and … long-standing precedent." Nov. 10 Order, at *85. In doing so, Judge Gibson misapprehended what is a permissible remedy under the U.S. and Utah Constitutions. The resulting Map 1 is therefore unconstitutional and exceeds the remedial power of a state court.

82.    Judge Gibson's only possible constitutional option, once she purported to enjoin the Legislature's map, was to remand to the Legislature, which is the only entity authorized to draw a new map under the U.S. Constitution. U.S. Const. art. I, § 4, cl. 1.

83.    Under these principles, if the Legislature fails to choose a valid congressional map, that role does not devolve to a court. Instead, assuming the reviewing court has authority, responsibility for creating a valid map must still revert back to the People's representatives in the Legislature.

84.    Similarly, following Proposition 4, the Utah Code allows courts of competent jurisdiction to enjoin a congressional map. But, consistent with the federal Elections Clause, the Utah Code does not purport to grant any authority to adopt or impose a map. "If a court of competent jurisdiction determines … that a redistricting plan enacted by the Legislature fails to abide by or conform to the redistricting standards, procedures, and requirements," then Utah law directs the court to "issue a permanent injunction barring enforcement or implementation of the redistricting plan." Utah Code § 20A-19-301(2).

85.  Instead, the Utah Code expressly recognizes the Legislature's authority to create a new map. "Upon the issuance of a permanent injunction under Subsection (2), the Legislature may enact a new or alternative redistricting plan that abides by and conforms to the redistricting standards, procedures, and requirements" of Utah law. Utah Code § 20A-19-301(8). If the Legislature does not enact a compliant map, no legal authority grants a state district court the authority to take on that role.

86.  The Utah Code thus follows the U.S. Constitution's requirement that the map-drawing be left to the state political branch, *i.e.*, the Legislature.

87.  Consistent with these principles, the Plaintiffs do not ask this Court to create a new congressional map. Instead, Map 1 and any other map not freely adopted by the Legislature must be declared unconstitutional and their implementation by the Lieutenant Governor enjoined. Then the matter must be remanded to the Legislature to select an appropriate map.

88.  The last map that complied with the U.S. Constitution was the 2021 map. Unless the Legislature enacts a different map, that map should be allowed to remain in effect pending any different action from the Legislature.

## CLAIM

### COUNT I
### Violation of the U.S. Constitution's
### Elections Clause, Art. I, § 4, cl. 1

89.    Plaintiffs incorporate by reference all preceding paragraphs.

90.    The authority to prescribe the "Times, Places, and Manner" of federal congressional elections arises exclusively under the Elections Clause. U.S. Const. art. I, § 4, cl. 1.

91.    The federal Constitution delegates and conveys the authority to prescribe the times, places, and manner of congressional elections only to "the Legislature" of "each State." U.S. Const. art. I, § 4, cl. 1. This broad grant of power includes the redistricting of federal congressional districts.

92.    To be sure, the "exercise of [legislative] authority in the context of the Elections Clause is subject to the ordinary constraints on lawmaking in the state constitution." *Moore v. Harper*, 600 U.S. 1, 30 (2023). But "state courts do not have free rein." *Id*. at 34. Furthermore, "state courts may not transgress the ordinary bounds of judicial review such that they arrogate to themselves the power vested in state legislatures to regulate federal elections." *Id*. at 36. And the Utah Constitution expressly grants congressional redistricting authority to the Legislature alone. Utah Const. art. IX, § 1.

93.    The Utah Independent Redistricting Commission's authority is statutory, and advisory. As the Utah Supreme Court has recognized, ultimate

authority for redistricting must remain with the Utah Legislature. *League of Women Voters of Utah*, 554 P.3d at 917 (Proposition 4 "did not take the authority to enact electoral maps from the Legislature and give it to the Independent Commission. Rather, it empowered the Independent Commission to create proposed maps, which the Legislature was required to consider.").

94.     Courts have no authority to draw a congressional map. The U.S. Constitution and Utah's statutes limit courts' remedial authority in redistricting cases to enjoining a map that fails to comply with federal or Utah law, in which case "the Legislature may enact a new or alternative redistricting plan." Utah Code §§ 20A-19-301(2), (8). Courts are not granted any authority to act as a stopgap if a resulting new or alternative redistricting plan is still unsatisfactory to the court.

95.     Map 1 was drawn by activist organizations, selected by a state court, and agreed to (or embraced) by the Lieutenant Governor. But no authority is bestowed on these entities to select a congressional map. Map 1 was not constitutionally authorized and must be enjoined, along with any other map not freely chosen by the Legislature.

96.     The Utah state district court's selection of Map 1, and the Lieutenant Governor's determination to implement that map, thus exceed these officers' powers and authority under the U.S. and Utah Constitutions. The Utah district court's remedy violates the Elections Clause, and so too does any implementation of that map, or any similar one, by the Lieutenant Governor.

97.    With Map 1 enjoined, the remedy is to remand to the Legislature for selection of a new map. The prerogative to choose a congressional district map belongs to the Legislature under the U.S. Constitution. The last map that the Legislature chose, in line with the U.S. Constitution, was the 2021 map. That map should be considered the presumptive map unless the Legislature enacts a different one.

98.    If the Legislature does not enact a new map, then Congress has determined, using its Elections Clause authority, how the congressional representatives are to be selected, which starts with "the districts then prescribed by the law of such State," meaning the 2021 map. 2 U.S.C. § 2a(c).

99.    Plaintiffs are entitled to declaratory and injunctive relief: Specifically, Map 1 must be declared unconstitutional and its implementation enjoined.

100.    Defendant should also be enjoined from implementing any congressional map other than one passed by the Legislature acting under its own autonomy and authority under Article IX of the Utah Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court:

a.    Convene three judges to hear this case under 28 U.S.C. § 2284;

b.    Declare that Map 1 was unconstitutionally imposed and agreed to by state actors—specifically a state district judge and the Lieutenant Governor—with no authority under federal or state law to adopt, impose, or implement a congressional map other than one adopted by the Legislature;

c.     Remand the selection of a congressional map to the Legislature;

d.     If the Legislature does not select a new map, declare that the 2021 map governs;

e.     Preliminarily and permanently enjoin Defendant from implementing Map 1;

f.     Preliminarily and permanently enjoin Defendant from implementing any congressional map other than one passed by the Legislature pursuant to Article IX of the Utah Constitution and free of coercion from Judge Gibson;

g.     Order expedited hearings and briefing, consider evidence, and take any other action necessary for the Court to issue the relief requested here; and

h.     Grant any other relief that the Court deems just, proper, and equitable.

February 2, 2026

Respectfully submitted,

*/s/ James C. Phillips*
JAMES C. PHILLIPS
Utah Bar No. 17302
TYLER B. LINDLEY
Utah Bar No. 18635
SCHAERR | JAFFE LLP
299 S. Main Street, Suite 1300
Salt Lake City, UT 84111
(202) 787-1060
jphillips@schaerr-jaffe.com
tlindley@schaerr-jaffe.com

GENE C. SCHAERR*
D.C. Bar No. 416638
JUSTIN A. MILLER*
D.C. Bar No. 90022870
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com
jmiller@schaerr-jaffe.com

**Pro hac vice* application forthcoming

*Attorneys for Plaintiffs*