**PARR BROWN GEE & LOVELESS**
David C. Reymann (Utah Bar No. 8495)
Cheylynn Hayman (Utah Bar No. 9793)
Kade N. Olsen (Utah Bar No. 17775)
101 South 200 East, Suite 700
Salt Lake City, UT 84111
(801) 532-7840
dreymann@parrbrown.com
chayman@parrbrown.com
kolsen@parrbrown.com

**ZIMMERMAN BOOHER**
Troy L. Booher (Utah Bar No. 9419)
J. Frederic Voros, Jr. (Utah Bar No. 3340)
Caroline Olsen (Utah Bar No. 18070)
341 South Main Street
Salt Lake City, UT 84111
(801) 924-0200
tbooher@zbappeals.com
fvoros@zbappeals.com
colsen@zbappeals.com

**CAMPAIGN LEGAL CENTER**
Mark P. Gaber*
Aseem Mulji*
Benjamin Phillips*
Isaac DeSanto*
1101 14th Street NW, Ste. 400
Washington, DC 20005
(202) 736-2200
mgaber@campaignlegalcenter.org
amulji@campaignlegalcenter.org
bphillips@campaignlegalcenter.org
idesanto@campaignlegalcenter.org

Annabelle Harless*
55 W. Monroe Street, Ste. 1925
Chicago, IL 60603
aharless@campaignlegalcenter.org

*Attorneys for Proposed Intervenors*

*\* Pro Hac Vice Forthcoming*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AMELIA POWERS GARDNER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>LIEUTENANT GOVERNOR DEIDRE HENDERSON, in her official capacity,<br><br>Defendant.<br>_____<br><br>LEAGUE OF WOMEN VOTERS OF UTAH, *et al.*,<br><br>Proposed Intervenors. | **MOTION TO INTERVENE BY LEAGUE OF WOMEN VOTERS OF UTAH, *ET AL*.**<br><br>Case No. 2:26-cv-84-RJS |

## INTRODUCTION

Proposed Intervenors the League of Women Voters of Utah, Mormon Women for Ethical Government, Stefanie Condie, Malcolm Reid, Victoria Reid, Wendy Martin, Eleanor Sundwall, and Jack Markman (collectively, "LWV Intervenors") respectfully move to intervene in this matter as of right pursuant to Federal Rule of Civil Procedure 24(a)(2). In the alternative, LWV Intervenors request leave to permissively intervene under Rule 24(b)(1)(B).

A Rule 24(c) pleading is attached as Exhibit 1.[1] LWV Intervenors have conferred, through counsel, with the above-named parties regarding their positions on this motion. Plaintiffs have not responded whether they will stipulate to or oppose the motion. Defendant Henderson is unopposed to this motion.

## FACTUAL BACKGROUND

The League of Women Voters of Utah ("LWV") is a nonpartisan nonprofit membership-based organization located in Salt Lake City, Utah that is dedicated to empowering voters and defending democracy. LWV encourages active participation in government and works to increase its members and voters' understanding of major public policy issues. As part of its mission, LWV engages in substantial nonpartisan voter education and mobilization efforts throughout Utah, including get-out-the-vote events, voter registration drives, and advocacy of increased electoral participation and access to voting. LWV specifically seeks to combat partisan gerrymandering, including through public advocacy for fair maps and a transparent and impartial redistricting process,

---

[1] LWV Intervenors plan to expeditiously move to dismiss Plaintiffs' suit and thus do not file a formal answer at this time. *See* Fed. R. Civ. P. 12(a)(4) (motion to dismiss stays the time period for filing an Answer); *Id.* 12(b) (various defenses required to be asserted by motion prior to answer).

1

and public education on redistricting, such as teaching members and voters how to engage with the redistricting process. LWV has diverse members throughout the State of Utah.

Mormon Women for Ethical Government ("MWEG") is a nonpartisan nonprofit membership organization based in Salt Lake City, Utah. MWEG's purpose is to inspire women of faith—across the political spectrum—to be ambassadors of peace who transcend partisanship and advocate for ethical government. MWEG and its members are guided by its four core values: faithful, nonpartisan, peaceful, and proactive. A key part of MWEG's mission is to educate and empower its members to participate in every phase of the democratic process, including redistricting. MWEG has diverse nationwide membership, and many of MWEG's members live in Utah.

Stefanie Condie, Malcolm Reid, Victoria Reid, Wendy Martin, Eleanor Sundwall, and Jack Markman are all United States citizens, registered voters, and residents of Utah.

Collectively, Proposed Intervenors are plaintiffs in the ongoing Utah state court litigation, *League of Women Voters of Utah, et al., v. Utah State Legislature, et al.*, Case No. 220901712 ("*LWVUT*"). This litigation arose after Utahns passed a ballot initiative in 2018 called Proposition 4 that, among other reforms, banned partisan gerrymandering, mandated adherence to neutral criteria in the redistricting process, and created an Independent Redistricting Commission—a successful citizen initiative that the Utah Legislature promptly repealed and replaced with S.B. 200, which gutted Proposition 4's core reforms. The Legislature then enacted H.B. 2004, the 2021 Congressional Map ("2021 Map"), which was not drawn following Proposition 4's neutral redistricting requirements and was an extreme partisan gerrymander. The LWV Intervenors filed a lawsuit challenging the Legislature's repeal of Proposition 4, as well as the 2021 Map, under

the Utah Constitution and Proposition 4. In particular, the LWV Intervenors alleged in Count V of their complaint that S.B. 200 and the resulting 2021 Map violated their right to alter and reform their government provided by Article I, § 2, and Article VI, § 1 of the Utah Constitution, and requested injunctions against enforcement of both state laws. The state district court originally dismissed Count V, but the Utah Supreme Court reinstated the claim and remanded for adjudication, noting that if S.B. 200 was unconstitutional, then "Proposition 4 . . . would become controlling law." *League of Women Voters of Utah v. Utah State Legislature*, 2024 UT 21, ¶ 222, 554 P.3d 872, 881-83 (citations omitted). "And under Proposition 4…it is likely that the Congressional Map cannot stand." *Id.*

On remand, LWV Intervenors amended their complaint and moved for summary judgment, contending that (1) the repeal of S.B. 200 unconstitutionally infringed their right to alter or reform the government and (2) the 2021 Map was indisputably enacted in violation of Proposition 4's procedural requirements. *See LWVUT* First Am. Compl. attached hereto as Exhibit 2, at 8-24, 27, 77-78, 85-87. On August 25, 2025, the district court granted summary judgment in favor of LWV Intervenors on Count V, permanently enjoining S.B. 200 and declaring it void *ab initio* and effectively reinstating Proposition 4. *See LWVUT* Aug. 25 Order, attached hereto as Exhibit 3. The district court permanently enjoined the 2021 Map because it had been passed in accordance with S.B. 200 and violated Proposition 4's requirements. *Id.* In doing so, the district court expressly considered and rejected arguments that the Legislature's authority was violated under the federal Elections Clause. *Id.* at 17-20.

Subsequently, the Legislature reconvened and passed a new congressional map (Map C) as well as another bill amending Proposition 4 (S.B. 1011). LWV Intervenors also submitted two of

their own congressional maps, Maps 1 and 2, as part of the remedial process to which the Legislature stipulated. Following a two-day evidentiary hearing involving testimony from multiple expert and lay witnesses, the district court issued a 90-page ruling on November 10, 2025, preliminarily enjoining both Map C and S.B. 1011. *See LWVUT* Nov. 10 Order, attached hereto as Exhibit 4. The court ruled that Map C violated Proposition 4, and that S.B. 1011 violated LWV Intervenors' alter and reform right under the Utah Constitution. With the 2021 Map also enjoined, the court determined that "[g]iven the November 10, 2025 deadline from the Lieutenant Governor for a map to be in place, *the Court is obligated, as a matter of law*, to order the use of a different congressional map to ensure a constitutionally apportioned map compliant with Proposition 4 is in effect so that Utah's 2026 elections are not jeopardized." *Id.* at 55 (emphasis added). The court concluded that Map 1 satisfied Proposition 4, and thus "approve[d] and adopt[ed] Map 1 as the judicial remedy." *Id.*

On February 2, 2026—nearly *three months later*—Plaintiffs in this case filed suit in federal court, claiming that "[c]ourts have no authority to draw congressional maps" because the federal Elections Clause in Art. I, § 4, cl. 1 of the U.S. Constitution confers state legislatures with that task. Complaint, Dkt.1 at 27-29; *contra Growe v. Emison*, 507 U.S. 25, 33 (1993) ("The power of the judiciary of a State to require valid reapportionment or to formulate a valid redistricting plan has not only been recognized by this Court but . . . specifically encouraged." (quoting *Scott v. Germano*, 381 U.S. 407, 409 (1965))). Plaintiffs thus contend that "Map 1 was unconstitutionally imposed." *Id.* at 29. Plaintiffs seek to enjoin the Lieutenant Governor from implementing Map 1 or any other map not passed by the Legislature. *Id.* at 29-30. Plaintiffs also request that the Court declare that if the Legislature does not select a new map, "the 2021 map

4

governs," *id.*, even though that map was repealed by the Legislature when it enacted Map C—the last legislatively enacted map.

LWV Intervenors seek to intervene in this matter to ensure that their individual interests and the interests of their organizations and their members, who won a judgment in state court that is now being collaterally attacked here, are properly and fully defended. LWV Intervenors are entitled to intervene as of right under Rule 24(a) as this litigation poses a significant threat their interests, and those interests are not adequately represented by the existing Defendant in this case. In the alternative, LWV Intervenors request that this Court grant permissive intervention pursuant to Rule 24(b).

## ARGUMENT

**I.    Proposed Intervenors are entitled to intervene as a matter of right.**

LWV Intervenors are entitled to intervene as a matter of right. Intervention as of right is governed by Fed. R. Civ. P. 24(a)(2), which requires that an intervenor demonstrate that: "(1) the application is timely; (2) it claims an interest relating to the property or transaction which is the subject of the action; (3) the interest may as a practical matter be impaired or impeded; and (4) the interest may not be adequately represented by existing parties." *W. Energy Alliance v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017). An intervenor must also establish standing. *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 912 (10th Cir. 2017).  If these requirements are met, intervention "must" be allowed. Fed. R. Civ. P. 24(a).

Courts take a liberal approach to intervention, which "favors the granting of motions to intervene." *Kane Cnty., Utah v. United States*, 928 F.3d 877, 890 (10th Cir. 2019) (cleaned up). Further, "the requirements for intervention may be relaxed in cases raising significant public

interests." *Id.* As explained below, the LWV Intervenors have standing and satisfy all four of the factors required for intervention as of right under Rule 24(a)(2).

### A. Proposed Intervenors have standing to intervene.

Proposed Intervenors have standing to intervene because the relief requested by the Plaintiffs in this case directly seeks to overturn the judgment and relief granted to LWV Intervenors in their state court litigation. The LWV Intervenors obtained a *permanent* injunction against the 2021 Map after a state court found it violated their fundamental state constitutional rights and Proposition 4. Ex. 3 at 61-76. The Legislature's subsequently enacted map, Map C, likewise violated Proposition 4. Ex. 4 at 84. In line with controlling federal precedent, and to ensure an equally apportioned, lawful congressional map was in effect, the state district court adopted LWV Intervenors' Map 1, which fully complies with state and federal law. *Id.* at 84-89. The Plaintiffs here now ask this Court to overturn that relief and require the LWV Intervenors to vote under a map that instead violates their state constitutional rights and denies them the protections found in Proposition 4. This collateral attack on LWV Intervenors' state court judgment and relief is a concrete and particularized harm that is directly traceable to the Plaintiffs' claims and requested relief, and which would be redressable by favorable decision here.[2] That is sufficient to establish standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Kane Cnty.*, 928 F.3d at 888; *see also Growe*, 507 U.S. 25 at 27, 28-29 (federal court granted intervention to state court litigants who had first challenged congressional and legislative maps in state court after a separate set of plaintiffs filed a challenge in federal court to same maps).[3]

---

[2] An intervenor's injury is sufficiently "imminent" if it is likely to occur upon the success of the plaintiffs' lawsuit. *See, e.g., South Dakota v. Ubbelohde*, 330 F.3d 1014, 1024–25 (8th Cir. 2003).
[3] Here, Proposed Intervenors' right to intervene is even stronger than that of the state court plaintiffs

An organization that files suit on behalf of its members can similarly establish associational standing if it can show that "(1) at least one of its members would have standing to sue in the member's own right; (2) the interest it seeks to protect is germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the member to participate in the lawsuit." *Speech First, Inc. v. Shrum*, 92 F.4th 947, 949 (10th Cir. 2024).

League of Women Voters of Utah and Mormon Women for Ethical Government ("MWEG") meet these requirements and have associational standing to intervene. At least one member of both organizations would be subject to the same injury as the individual proposed Intervenors—being required to vote under a congressional map that violates the Utah Constitution and Proposition 4. In addition, protecting the rights of their members to vote under a legally-compliant map and protecting relief granted in their favor in state court is an interest germane to the purpose of both organizational proposed intervenors. Both organizations were parties to the state court litigation, and both advocate for fair elections, redistricting reform (including Proposition 4), and electoral accountability for voters. Moreover, neither the claim asserted nor the relief requested requires the participation of any individual members in the lawsuit, as individual LWV Intervenors are also seeking to intervene in this case.[4]

---

in *Growe*, as no relief had yet been granted in that case.

[4] The U.S. Supreme Court has held that "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006). As a result, it is enough to show that any one Proposed Intervenor has standing to meet the requirement to intervene.

### B.     Proposed Intervenors' motion for intervention is timely.

LWV Intervenors' motion for intervention is undoubtedly timely. The court considers timeliness "in light of all of the circumstances." *Zinke*, 877 F.3d at 1164. Plaintiffs in this case filed their complaint on February 2, 2026. Proposed Intervenors are filing their motion on February 7, just five days later. This litigation is in its earliest stages—there has been no motion for preliminary injunction filed,[5] the three-judge panel has yet to be selected, no trial date has been set, and discovery has not begun. There is no threat of prejudice or delay to Plaintiffs if Proposed Intervenors' motion is granted, and the motion is timely. *See Zinke* 877 F.3d at 115 (finding timeliness met "[g]iven how early in the lawsuit the groups moved to intervene, and, as a result, the lack of prejudice to the [plaintiffs].").

### C.     Proposed Intervenors have a clear and direct interest in this case.

LWV Intervenors have a clear interest in this case. To satisfy this element, a party must "claim[] an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). As discussed above, the Plaintiffs seek an injunction of Map 1, which was proposed by the LWV Intervenors and implemented by a state court as remedial relief for serious violations of LWV Intervenors' rights. Ex. 4. Alternatively, Plaintiffs seek implementation of the 2021 Map, which the state district court held violates both the Utah Constitution and Proposition 4. The LWV Intervenors' interest in this case is inescapable.

---

[5] At the time of this filing, Plaintiffs have filed a motion to expedite briefing on and a hearing for a motion for preliminary injunction that they have not even filed yet, but which they claim will be coming "shortly." Plaintiffs' Unopposed Motion to Expedite Briefing and Hearing for their Motion for Preliminary Injunction, Dkt. 14 at 5. Plaintiffs characterize this motion as "unopposed," despite knowing that LWV Intervenors were in the process to seek leave to intervene and would unquestionably oppose their motion.

### D. Proposed Intervenors' interests will be directly impaired by this litigation.

LWV Intervenors' interests will be directly impaired by this litigation. "[T]he question of impairment is not separate from the question of existence of an interest . . . [t]his burden is minimal." *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250, 1253 (10th Cir. 2001). Because Plaintiffs' claim is a direct challenge to the judgment and relief granted to the LWV Intervenors and, if granted, would result in reversal of LWV Intervenors' relief, Proposed Intervenors satisfy this element. Indeed, for this reason, LWV Intervenors are necessary parties who must be joined under Rule 19. Disposing of this suit in their absence would, "as a practical matter impair or impede [LWV Intervenors'] ability to protect th[eir] interest" and would leave the Lieutenant Governor "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1).

### E. Proposed Intervenors' interests are not adequately represented.

The existing parties do not adequately represent LWV Intervenors' interests. The "burden" of providing inadequacy of representation "is the 'minimal' one of showing that representation 'may' be inadequate." *Utah Ass'n of Counties*, 255 F.3d at 1254 (citation omitted).

Here, the LWV Intervenors seek to intervene as defendants. Defendant Henderson, who is likewise a defendant in LWV Intervenors' state court litigation, took no position in that litigation and is unlikely to on the merits of the claims or any particular map. *See* Lt. Governor Response, attached hereto as Exhibit 5, at 2. As a result, Defendant Henderson, who is in an adverse party posture to the LWV Intervenors in the ongoing state litigation, cannot adequately represent LWV Intervenors' interests of maintaining the judgment and relief they won in state court. LWV Intervenors must be allowed to intervene to do so.

9

**II.      Proposed Intervenors meet the requirements for permissive intervention.**

Alternatively, the LWV Intervenors meet the requirements to intervene permissibly. "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

As previously explained above, this motion is timely and will lead to no undue delay or prejudice to the parties. In addition, LWV Intervenors' defense and the main action clearly share a question of law or fact in common. Plaintiffs seek to invalidate the very map and judicial determinations that the LWV Intervenors won in state court, where they successfully argued against the legal basis for Plaintiffs' claims here. Because Proposed Intervenors satisfy these requirements, if this Court denies intervention as of right, it should nevertheless grant permissive intervention.

## CONCLUSION

For the foregoing reasons the motion should be granted.

RESPECTFULLY SUBMITTED this 7th day of February 2026.

/s/ *David C. Reymann*
**PARR BROWN GEE & LOVELESS**
David C. Reymann
Cheylynn Hayman
Kade N. Olsen

**CAMPAIGN LEGAL CENTER**
Mark P. Gaber
Annabelle Harless
Aseem Mulji
Benjamin Phillips
Isaac DeSanto

**ZIMMERMAN BOOHER**
Troy L. Booher
J. Frederic Voros, Jr.
Caroline Olsen

*Attorneys for Proposed Intervenors*