**PARR BROWN GEE & LOVELESS**
David C. Reymann (Utah Bar No. 8495)
Cheylynn Hayman (Utah Bar No. 9793)
Kade N. Olsen (Utah Bar No. 17775)
101 South 200 East, Suite 700
Salt Lake City, UT 84111
(801) 532-7840
dreymann@parrbrown.com
chayman@parrbrown.com
kolsen@parrbrown.com

**ZIMMERMAN BOOHER**
Troy L. Booher (Utah Bar No. 9419)
J. Frederic Voros, Jr. (Utah Bar No. 3340)
Caroline Olsen (Utah Bar No. 18070)
341 South Main Street
Salt Lake City, UT 84111
(801) 924-0200
tbooher@zbappeals.com
fvoros@zbappeals.com
colsen@zbappeals.com

**CAMPAIGN LEGAL CENTER**
Mark P. Gaber*
Aseem Mulji*
Benjamin Phillips*
Isaac DeSanto*
1101 14th Street NW, Ste. 400
Washington, DC 20005
(202) 736-2200
mgaber@campaignlegalcenter.org
amulji@campaignlegalcenter.org
bphillips@campaignlegalcenter.org
idesanto@campaignlegalcenter.org

Annabelle Harless*
55 W. Monroe Street, Ste. 1925
Chicago, IL 60603
aharless@campaignlegalcenter.org

*Attorneys for Proposed Intervenors*

*\* Pro Hac Vice Forthcoming*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AMELIA POWERS GARDNER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> LIEUTENANT GOVERNOR DEIDRE HENDERSON, in her official capacity, <br><br> Defendant. <br><hr> LEAGUE OF WOMEN VOTERS OF UTAH, *et al.*, <br><br> Proposed Intervenors. | **STATEMENT OF LEAGUE OF WOMEN VOTERS OF UTAH, *ET AL.*'S RIGHTS, INTERESTS, AND DEFENSES IN INTERVENTION** <br><br> Case No. 2:26-cv-84-RJS |

Pursuant to Rule 24(c) of the Federal Rules of Civil Procedure, Proposed Intervenors League of Women Voters of Utah, Mormon Women for Ethical Government, Stefanie Condie, Malcolm Reid, Victoria Reid, Wendy Martin, Eleanor Sundwall, and Jack Markman (collectively, "LWV Intervenors") set forth their rights, interests, and defenses for which intervention is sought.

1. LWV Intervenors include two nonpartisan, nonprofit membership organizations that work, *inter alia*, to achieve fair redistricting maps and who advocated for Utah's Proposition 4, which reformed the redistricting process in the state and prohibited partisan gerrymandering. They also include several Utah voters who are harmed by the Utah Legislature's partisan gerrymandering and violations of the Utah Constitution and Proposition 4 in enacting both the 2021 congressional map ("2021 Map") and the subsequent Map C. LWV Intervenors are plaintiffs in the ongoing state court litigation, *League of Women Voters of Utah, et al. v. Utah State Legislature, et al.*, Case No. 220901712, aspects of which are currently on appeal at the Utah Supreme Court, Case No. 20260019-SC.

2. LWV Intervenors sued in state court in March 2022 seeking permanent injunctions against implementation and enforcement of S.B. 200, which repealed the 2018 voter-passed initiative Proposition 4, and against H.B. 2004, the 2021 Map. They alleged that the 2021 Map was a partisan gerrymander in violation of several provisions of the Utah Constitution and that the Legislature's repeal of Proposition 4 and subsequent enactment of the 2021 Map violated their right under Article 1, Section 2 of the Utah Constitution to alter or reform their government.

3. After the state district court ruled on Legislative Defendants' motion to dismiss, an interlocutory appeal was heard by the Utah Supreme Court. The Court held that the LWV Intervenors had stated a valid claim under Article 1, Section 2's alter or reform clause and that

were they to show on remand that Proposition 4's repeal violated the alter or reform clause, then "it is likely that the [2021] Congressional Map cannot stand." *League of Women Voters of Utah v. Utah State Legislature*, 2024 UT 21, ¶ 222, 554 P.3d 872 ("*League of Women Voters I*").

4. In response to LWV Intervenors' motion for summary judgment, Legislative Defendants contended, *inter alia*, that Proposition 4 violated the federal Constitution's Elections Clause by impairing the Legislature's redistricting power. On August 25, 2025, the state court granted partial summary judgment in favor of LWV Intervenors, ruling that S.B. 200's repeal of Proposition 4 violated Article I, Section 2 of the Utah Constitution, which protects Utahns' right to alter or reform their government. The court permanently enjoined implementation of S.B. 200 and ruled that it was void *ab initio* and that a permanent injunction against H.B. 2004 (the 2021 Map) was likewise necessary both to fully remedy the constitutional violation and because it indisputably violated certain of Proposition 4's requirements. The court rejected Legislative Defendants' arguments that Proposition 4 ran afoul of the federal Elections Clause.

5. On September 15, 2025, the Utah Supreme Court denied the Legislative Defendants' petition to stay the state district court's injunctions and the remedial proceeding. *See League of Women Voters of Utah v. Utah State Legislature*, 2025 UT 39, 579 P.3d 287 ("*League of Women Voters of Utah III*").

6. LWV Intervenors and the Legislative Defendants agreed to a remedial schedule in the state district court that included an opportunity for LWV Intervenors to submit proposed congressional maps in the event they contended that the Legislature's remedial map (ultimately known as Map C) failed to abide by or conform to the requirements of Proposition 4. *See* Utah Code § 20A-19-301(8).

7.      After the Legislature passed a new law (S.B. 1011) amending Proposition 4's prohibition on partisan gerrymandering and enacted Map C, LWV Intervenors sought to enjoin both laws as violating the Utah Constitution (S.B. 1011) and Proposition 4 (Map C). The state district court held a two-day evidentiary hearing and on November 10, 2025, issued a ruling and order preliminarily enjoining both S.B. 1011 and Map C and adopting Map 1—submitted by LWV Intervenors—as the judicial remedial map. Specifically, the court found that Map C was created with partisan political data on display precinct-by-precinct as the map was drawn, it had the intent and effect of being an unlawful partisan gerrymander, and it failed to minimize the division of municipalities and counties—all in violation of Proposition 4. *See* Utah Code § 20A-19-103. By contrast, the court found that Map 1 complied with the equal population requirements of the U.S. and Utah Constitutions and satisfied Proposition 4's requirements. Given the Lieutenant Governor's November 10, 2025 deadline for a map to be finalized to conduct the 2026 election, the court imposed Map 1 as the judicial remedy.

8.      Legislative Defendants in the state court action did not appeal either the August 25, 2025 order or the November 10, 2025 order at the time, despite their statutory right to do so. *See* Utah Code § 78B-5-1002. Instead, they ultimately sought—and were granted—a separate final judgment under Utah Rule of Civil Procedure 54(b) with respect to the August 25, 2025 order permanently enjoining S.B. 200 and H.B. 2004 (the 2021 Map).

9.      On January 23, 2025, Legislative Defendants filed a motion with the Utah Supreme Court to stay the state court's permanent injunctions against S.B. 200 and H.B. 2004. That request is pending before the Utah Supreme Court. Their stay motion contends, *inter alia*, that the state district court's August 25, 2025 order and injunctions offend the federal Constitution's Elections

Clause by usurping the Legislature's role in redistricting—the same provision cited by Plaintiffs in this case.

10. Utah's Lieutenant Governor, who is a defendant in LWV Intervenors' state court case and is the Defendant in this case, has throughout the state court litigation taken no position on the merits of the suit, instead informing the court at various times of the deadlines by which she needs a determination regarding a map in order to implement the map in accordance with the state's electoral calendar.

11. The Lieutenant Governor had identified November 10, 2025 as that deadline for the 2026 election. After a special session of the Legislature in which it moved candidate filing for the congressional election from January to March 2026, the Lieutenant Governor informed the Utah Supreme Court that if that court were to grant a stay that resulted in the 2021 map being resurrected, such a decision would be needed by February 23, 2026. The Lieutenant Governor explained that although the candidate filing period is now March 9-13, "[t]o effectively administer the 2026 congressional election, the Lieutenant Governor and the county clerks must know no later than two weeks before the start of this filing period, by February 23, 2026, if they must change course and administer the election under the 2021 Map."

12. Plaintiffs in this case attempt to challenge the victory LWV Intervenors obtained in state court. They ask this Court to enjoin the Lieutenant Governor from implementing Map 1, which was proposed by LWV Intervenors and which the state court ordered the Lieutenant Governor to implement. And, should the Legislature fail to enact a new map in response, they ask this Court to order the Lieutenant Governor to implement the 2021 map, which the state court permanently enjoined as violating both the Utah Constitution and Proposition 4.

13. Plaintiffs in this suit thus ask this Court to override LWV Intervenors' state court victory and subject LWV Intervenors (and all other Utah voters) to a congressional map that the state court found to be unconstitutional and violative of Proposition 4, which governs redistricting in Utah.

14. Plaintiffs in this suit also ask this Court to decide a question of federal law—the applicability of the U.S. Constitution's Elections Clause—that has already been decided by the state district court and is currently an issue on appeal in the Utah Supreme Court.

15. Were Plaintiffs to succeed, this suit would directly affect LWV Intervenors' interests by depriving them of the judicial remedy and victories they obtained in state court and subjecting them to voting under a congressional map they succeeded in having enjoined as violating both the Utah Constitution and Proposition 4.

**WHEREFORE,** LWV Intervenors' rights, interest, and defenses in connection with this matter include the following:

  i. A right to an order dismissing Plaintiffs' suit for lack of Article III standing;

  ii. A right to an order dismissing and/or staying Plaintiffs' suit under *Growe v. Emison,* where the U.S. Supreme Court held that "[i]n the reapportionment context, the Court has required federal judges to defer consideration of disputes involving redistricting where the State, through its legislative *or* judicial branch, has begun to address the highly political task itself" and that "'[t]he power of the judiciary of a State to require valid reapportionment or to formulate a valid redistricting plan has not only been recognized by this Court but . . . specifically encouraged.'" 507 U.S. 25, 32-33 (1993) (quoting *Scott v. Germano*, 381 U.S. 407, 409 (1965) (per curiam)) (emphasis in original);

iii. A right to an order dismissing and/or staying Plaintiffs' suit under abstention doctrines such as those announced in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), and *Younger v. Harris*, 401 U.S. 37 (1971);

iv. A right to an order dismissing Plaintiffs' suit under the issue preclusion doctrine;

v. A right to an order dismissing Plaintiffs' suit for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6);

vi. A right to an order dismissing Plaintiffs' suit for failure to join necessary parties;

vii. A right to an order ruling that Plaintiffs are not entitled to imposition of the 2021 Map or any other map that does not comply with Proposition 4;

viii. A right to an order for attorneys' fees and costs; and

ix. Such further or additional relief as this Court may deem just and proper.

RESPECTFULLY SUBMITTED this 7th day of February 2026.

/s/ *David C. Reymann*
**PARR BROWN GEE & LOVELESS**
David C. Reymann
Cheylynn Hayman
Kade N. Olsen

**CAMPAIGN LEGAL CENTER**
Mark P. Gaber
Annabelle Harless
Aseem Mulji
Benjamin Phillips
Isaac DeSanto

**ZIMMERMAN BOOHER**
Troy L. Booher
J. Frederic Voros, Jr.
Caroline Olsen

*Attorneys for Proposed Intervenors*