James C. Phillips (17302)
Tyler B. Lindley (18635)
SCHAERR | JAFFE LLP
299 S. Main Street, Suite 1300
Salt Lake City, Utah 84111
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
jphillips@schaerr-jaffe.com
tlindley@schaerr-jaffe.com

Gene C. Schaerr*
Justin A. Miller *
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
gschaerr@schaerr-jaffe.com
jmiller@schaerr-jaffe.com

*Pro hac vice pending

Counsel for Plaintiffs

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| COMMISSIONER AMELIA POWERS GARDNER, a registered Utah voter and elected official, et al., | **PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| Plaintiffs, | Case No. 2:26-cv-00084-RJS |
| v. | District Judge Robert J. Shelby |
| LIEUTENANT GOVERNOR DEIDRE HENDERSON, in her official capacity, | THREE-JUDGE PANEL REQUESTED |
| Defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION .................................................................................................... 1

BACKGROUND ....................................................................................................... 4

    A.    The Parties ................................................................................................ 4

    B.    The State-Court Orders and Legislative Process ....................................... 6

ARGUMENT ........................................................................................................... 9

    I.    This Court Has Jurisdiction to Enter a Preliminary Injunction. .............. 10

        A.    Plaintiffs have standing .................................................................... 10

        B.    This case is about enforcing the federal constitutional structure and process, not partisan redistricting. ........................... 15

        C.    *Lance v. Dennis* reinforces this Court's jurisdiction. ....................... 16

        D.    Concurrent litigation in state and federal court is allowed here. .............................................................................................. 17

    II.    Plaintiffs Satisfy the Requirements for a Preliminary Injunction. ........... 18

        A.    Plaintiffs Are Likely to Succeed on the Merits of their Claim because Map 1 violates the Elections Clause. ................................ 18

            1.    The "Legislature" does not mean state courts. .................... 19

            2.    State courts have only limited authority in Election Clause disputes. ................................................................. 21

            3.    Congress has not superseded the Utah Legislature's authority here but reinforced it. .......................................... 24

        B.    Plaintiffs Are Likely to Suffer Irreparable Harm Absent Preliminary Injunctive Relief. ......................................................... 26

        C.    The Balance of Equities and Public Interest Favor Plaintiffs. ........ 27

CONCLUSION ....................................................................................................... 30

CERTIFICATE OF COMPLIANCE ......................................................................... 32

CERTIFICATE OF SERVICE .................................................................................. 33

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n,*
   576 U.S. 787 (2015) ....................................................... 2, 19, 20, 22

*Awad v. Ziriax,*
   670 F.3d 1111 (10th Cir. 2012) ................................................... 28

*Biden v. Nebraska,*
   600 U.S. 477 (2023) .................................................................. 13

*Bost v. Ill. State Bd. of Elections,*
   607 U.S. --, 2026 WL 96707 (2026) ...................................... *passim*

*Bush v. Gore,*
   531 U.S. 98 (2000) .................................................................... 24

*Chamber of Com. of U.S. v. Edmondson,*
   594 F.3d 742 (10th Cir. 2010) ................................................... 28

*Diamond Alternative Energy, LLC v. EPA,*
   606 U.S. 100 (2025) .................................................................. 11

*Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.,*
   269 F.3d 1149 (10th Cir. 2001) ................................................. 26

*FDA v. All. for Hippocratic Med.,*
   602 U.S. 367 (2024) .................................................................. 10

*Fish v. Kobach,*
   840 F.3d 710 (10th Cir. 2016) ........................................ 26, 27, 28

*Free the Nipple-Fort Collins v. City of Fort Collins,*
   916 F.3d 792 (2019) .................................................................. 28

*Growe v. Emison,*
   507 U.S. 25 (1993) ............................................................. 17, 18

*Lance v. Coffman,*
   549 U.S. 437 (2007) .................................................................. 14

*Lance v. Dennis,*
   546 U.S. 459 (2006) .................................................................. 16

*League of Women Voters of Utah v. Utah State Legislature,*
   554 P.3d 872 (Utah 2024) ................................................. *passim*

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) .................................................................. 15

*Moore v. Harper,*
600 U.S. 1 (2023) ...................................................................... *passim*

*Nken v. Holder,*
556 U.S. 418 (2009) ............................................................................ 27

*Planned Parenthood Ass'n of Utah v. Herbert,*
828 F.3d 1245 (10th Cir. 2016) ...................................................... 19

*Rucho v. Common Cause,*
588 U.S. 684 (2019) ............................................................................ 15

*Schrier v. Univ. of Colo.,*
427 F.3d 1253 (10th Cir. 2005) ................................................... 26, 29

*Winter v. Nat. Res. Def. Council, Inc.,*
555 U.S. 7 (2008) ................................................................................. 9

**Constitutional Provisions**

U.S. Const. art. I, §4, cl. 1 ...................................................... *passim*

Ariz. Const. art. IV, pt. 1, §1 ............................................................ 20

Utah Const. art. IX, §1 ............................................................ *passim*

**Statutes**

2 U.S.C. §2a ....................................................................................... 25

28 U.S.C. §2201 ......................................................................... 25, 30

28 U.S.C. §2202 ......................................................................... 25, 30

28 U.S.C. §2284 ................................................................................... 4

Utah Code §§20A-9-201–202.5 ........................................................ 6

Utah Code §§20A-13-102–102.2 ....................................................... 6

Utah Code §20A-19-204 (2018) ........................................................ 6

Utah Code §20A-19-301 .................................................................. 23

**Rule**

Fed. R. Civ. P. 65 ................................................................................ 1

**Treatises**

11A *Wright & Miller's Federal Practice & Procedure* §2948 (2d ed. 1995) ............... 29

11A *Wright & Miller's Federal Practice and Procedure* §2948.3 (2013) ................... 19

**Other Authorities**

Cook Pol. Rep.,
  *2026 CPR House Race Ratings* (Nov. 17, 2025) ..................................................... 12

Michael R. Dimino et al.,
  *Understanding Election Law and Voting Rights* (2d ed. 2026)........................ 22, 23

Deidre Henderson
  (@DeidreHenderson), X (Nov. 11, 2025 at 1:52 AM) ............................................... 8

Redistricting Amendments, S.B. 200,
  63d Leg., 2020 Gen. Sess. (Utah 2020) ..................................................................... 7

Ruling & Order,
  *League of Women Voters of Utah v. Utah State Legislature,*
  No. 220901712 (Utah Dist. Ct., Salt Lake Cnty., Nov. 10, 2025) ........................... 8

David Wasserman,
  *2025 Cook PVI: District Map and List (119th Congress),*
  The Cook Pol. Rep. (Apr. 3, 2025) ........................................................................... 12

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiffs Amelia Powers Gardner, Greg Miles, Clint Painter, Victor Iverson, Lori Maughan, Tammy Pearson, Adam Snow, Jimmie Hughes, Tracy Glover, Chad Jensen, Mike Smith, Celeste Maloy and Burgess Owens move for a preliminary injunction declaring Map 1 unconstitutional and enjoining its use in the 2026 congressional elections and beyond.

## INTRODUCTION

This redistricting case is not about the "*what*" but about the "*who*."

Plaintiffs challenge the Lieutenant Governor's planned implementation of "Map 1" for Utah's 2026 congressional elections, which she believes herself bound to use. This suit does not challenge the content of Map 1, despite its radical reworking of Utah's congressional districts—moving half a million voters in one county alone into new districts. Rather, this suit challenges Defendant's endorsement of the unconstitutional *process* of effectively allowing a single state-court judge to promulgate that map.

That process was unlawful because the United States (and Utah) Constitution vest authority to create a congressional district map *only* in the State Legislature. *See* U.S. Const. art. I, §4, cl. 1; Utah Const. art. IX, §1. And Map 1 was not selected by the Legislature, whether that term is understood to include only the official, elected Utah State Legislature, or also the statutorily created redistricting commission.

Instead, Map 1 was selected by a state district judge and drafted by attorneys and expert witnesses for the League of Women Voters and Mormon Women for Ethical Government, private parties with the same amount of state legislative authority to draw congressional maps as state district judges, that is, none at all. Moreover, Map 1 has been further altered by the state judge herself on the fly when problems with it have been repeatedly raised.

Even the most capacious interpretation of "the Legislature" cannot stretch to include a state judge or voting advocacy organizations. The Elections Clause simply does not permit courts to displace the Legislature as the *federally* (and state) mandated redistricting authority, even when purporting to enforce state law. Allowing Map 1 to govern Utah's 2026 congressional elections would do exactly that, and in plain violation of the Elections Clause.

This case, moreover, is not about partisan gerrymandering. Instead, Plaintiffs seek to vindicate a structural constitutional guarantee: that the rules governing federal elections be set by institutions accountable to the people through the legislative process, not by courts exercising free-form equitable discretion. *See Moore v. Harper*, 600 U.S. 1, 34, 36 (2023); *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 824 (2015).

Nor is this a challenge to a state court decision. Rather, this suit challenges Defendant's acquiescence to a state court's purported *remedy* of imposing on Utah a map (1) put forth by private actors, (2) selected by a state judge without

constitutional authority to do so, and (3) later repeatedly altered by that state judge as she saw fit. That remedy, rather than the state court's underlying decisions on the merits, violated both the federal and state constitutions as well as federal and state statutes.

And, while state courts can sometimes enjoin unlawful redistricting maps and statewide election officials are sometimes required to impose maps not entirely drawn by the Legislature, there is nothing ordinary about the situation here: namely, a state judge enjoining the use of a Legislature-created map—one that has never been found unlawful—and then requiring the use of an unconstitutionally created map in its stead.

Of course, Plaintiffs recognize that Defendant is stuck between the rock of a state court injunction and the hard place of the Elections Clause. But that is why we have federal courts—to make clear the supremacy of the U.S. Constitution when state actors, such as the state court here, forget that foundational constitutional principle.

In sum, by moving forward with Map 1, Defendant is allowing a state district judge and voter advocacy organizations to unilaterally create, select, and amend Utah's 2026 congressional map in a way contrary to the clear wishes of Utah's duly elected Legislature. In so doing, the Defendant is contravening the Elections Clause

by allowing these non-legislative actors' policy preferences to wholly displace those of that Legislature—the only authorized source of redistricting authority in Utah.[1]

## BACKGROUND

### A.    The Parties

Plaintiffs are incumbent Members of Congress, elected officials, and registered Utah voters whose campaign activities, representational interests, and voting rights will be governed by the congressional map used in the 2026 elections. *See generally* Plaintiff Declarations. Map 1 burdens their concrete voting interests, deprives each of them of their right to representatives chosen in accord with the U.S. and Utah Constitutions, including diluting some of Plaintiffs' votes or significantly altering their ability to work with their representative. *Id.*

Specifically, Representatives Celeste Maloy and Burgess Owens are registered Utah voters who currently serve as Members of the United States House of Representatives for Utah. Maloy Decl. ¶¶1-2; Owens Decl. ¶¶1-2. They are also seeking reelection in 2026. Maloy Decl. ¶3; Owens Decl. ¶3. Map 1 affects the rules governing their elections and their ability to seek election under a constitutionally valid map freely chosen by the Legislature, as well as inflicts additional costs and challenges on their reelection campaigns. Maloy Decl. ¶¶4-15; Owens Decl. ¶¶1-14.

---

[1] Plaintiffs have filed a motion for expedited appointment of a three-judge panel to hear this action, pursuant to 28 U.S.C. §2284. Doc. 9. They have also filed a Motion to Expedite Briefing and Hearing. Doc. 14. Expedited relief is necessary so that the three-judge panel can rule and provide relief at least ten days before Defendant states she needs a final court decision on February 23, 2026, to enable appellate review.

County Commissioners Amelia Powers Gardner (Utah County), Greg Miles (Duchesne County), Clint Painter (Juab County), Victor Iverson (Washington County), Lori Maughan (San Juan County), Tammy Pearson (Beaver County), and Adam Snow (Washington County), are registered Utah voters who currently serve as county commissioners in Utah. Powers Gardner Decl. ¶¶1-2; Miles Decl. ¶¶1-2; Painter Decl. ¶¶1-2; Iverson Decl. ¶¶1-2; Maughan Decl. ¶¶1-2; Pearson Decl. ¶¶1-2; Snow Decl. ¶¶1-2. Mayor Jimmie Hughes is a registered Utah voter and the Mayor of St. George. Hughes Decl. ¶¶1-2. Sheriffs Tracy Glover (Kane County), Chad Jensen (Cache County), and Mike Smith (Utah County), are registered Utah voters who currently serve as sheriffs in Utah. Glover Decl. ¶¶1-2; Jensen Decl. ¶¶1-2; Smith Decl. ¶¶1-2. Prevented from influencing the normal redistricting process, they are now forced to implement Map 1, which they feel would violate their oaths of office. Powers Gardner Decl. ¶¶10-11; Miles Decl. ¶¶9-10; Painter Decl. ¶¶10-11; Iverson Decl. ¶¶10-12; Maughan Decl. ¶¶9-10; Pearson Decl. ¶¶10-11; Snow Decl. ¶¶10-12; Hughes Decl. ¶¶10-11; Glover Decl. ¶¶10-11; Jensen Decl. ¶¶8-9; Smith Decl. ¶¶9-10. Map 1 was selected without their direct or indirect input, and they now stand to lose the valuable working relationships they have carefully built with their members of Congress. Powers Gardner Decl. ¶¶4-7; Miles Decl. ¶¶4-6; Painter Decl. ¶¶4-7; Iverson Decl. ¶¶4-7; Maughan Decl. ¶¶4-6; Pearson Decl. ¶¶4-7; Snow Decl. ¶¶4-7; Hughes Decl. ¶¶4-7; Glover Decl. ¶¶4-7; Smith Decl. ¶¶4-6. Further, they are confused about which district they will even be in at this point, given the clear

unconstitutionality of Map 1. Powers Gardner Decl. ¶3; Miles Decl. ¶3; Painter Decl. ¶3; Iverson Decl. ¶3; Maughan Decl. ¶3; Pearson Decl. ¶3; Snow Decl. ¶3; Hughes Decl. ¶3; Glover Decl. ¶3; Smith Decl. ¶3.

Defendant Lieutenant Governor Deidre Henderson is sued in her official capacity as Utah's chief election officer. She is responsible for coordinating with local, state, and federal officials to ensure compliance with federal and state election laws and to accept declarations of candidacy in elections for federal office from candidates directly or from county clerks on behalf of candidates. *See* Utah Code §§20A-9-201–202.5. The Lieutenant Governor also implements congressional redistricting plans, including—if it is ultimately implemented—Map 1 at issue here. *See id.* §§20A-13-102–102.2. She has stated that she will implement Map 1 because of the state district court's order unless she is ordered by another court not to do so.

## B.    The State-Court Orders and Legislative Process

The saga of this case begins in 2018, when Utah voters approved Proposition 4, a statutory initiative banning partisan gerrymandering and requiring neutral criteria (*e.g.*, compactness, community preservation). It created an advisory Independent Redistricting Commission to propose maps, but the Legislature— consistent with the federal and state constitutions—retained ultimate authority to enact, amend, or reject them. Utah Code §20A-19-204 (2018); *League of Women Voters of Utah v. Utah State Legislature*, 554 P.3d 872, 916–17 (Utah 2024).

Following the 2020 census, the Utah State Legislature enacted S.B. 200, amending Proposition 4. Redistricting Amendments, S.B. 200, 63d Leg., 2020 Gen. Sess. (Utah 2020). Plaintiffs challenged this legislation in state court (*see League of Women Voters of Utah v. Utah State Legislature*, No. 220901712 (Utah Dist. Ct., Salt Lake Cnty.)), alleging infringement of the people's right to alter or reform government under the Utah Constitution. The Utah Supreme Court held that S.B. 200 triggered strict-scrutiny review and remanded for application of that standard. But that court emphasized that Proposition 4 did not transfer map-drawing authority from the Legislature to the Commission, or to the courts. Instead, the elected Legislature retained "ultimate responsibility" for dividing the state into districts. *League of Women Voters*, 554 P.3d at 916–17.

On remand, in August 2025, the state district court purported to enjoin S.B. 200. But that is not all. Judge Gibson also enjoined the post-2020 census congressional maps created by the Legislature—despite no finding that these maps were unlawful in any way. She then ordered submissions from the state legislature *as well as* the private plaintiffs. And she later clarified that she could not compel the state legislature to enact a map. So, under pressure from the state district court, the state legislature passed S.B. 1011 and S.B. 1012 approving Map C. The plaintiffs, however, proposed and drafted Map 1. That map was not drafted by the Legislature

or any entity exercising delegated legislative authority.[2] (And that map significantly altered the status quo, moving some half million Utahns in one county alone to new congressional districts.). *See* Maloy Decl. ¶10.

The Lieutenant Governor set a November 10, 2025, deadline for finalization ahead of the 2026 election cycle. After an evidentiary hearing on October 23–24, 2025, the state district court ruled at 11:25 p.m. on November 10 that Map C was an extreme partisan outlier and instead adopted the plaintiffs' Map 1. *See* Ruling & Order, *League of Women Voters of Utah v. Utah State Legislature,* No. 220901712 (Utah Dist. Ct., Salt Lake Cnty., Nov. 10, 2025), https://tinyurl.com/47sykkze. Again, there was no finding that the *existing* map (promulgated in 2021) was in any respect unlawful.

On November 11, 2025, the Lieutenant Governor publicly stated that she intends to implement Map 1 for the 2026 elections absent further court order. Deidre Henderson (@DeidreHenderson), X (Nov. 11, 2025 at 1:52 AM), https://tinyurl.com/wk3fs6bj. The Lieutenant Governor's apparent (and

---

[2] This played out in a similar manner to *Moore v. Harper*, where after a state court held redistricting maps unconstitutional and remanded to the state legislature to try again, and the legislature drew a new map, the court again rejected that new map and instead adopted "interim maps developed by several Special Masters for use in the 2022 North Carolina congressional elections." 600 U.S. 1, 12 (2023). One big difference here, though, is that the private parties submitting maps to Judge Gibson were not Special Masters duly appointed to do so, making this situation even more egregious.

understandable) acquiescence, and her stated intent to implement Map 1 unless ordered otherwise, underscores the need for preliminary injunctive relief.

## ARGUMENT

This Court has jurisdiction to immediately hear and decide this case. All Plaintiffs, as candidates, voters or elected officials concretely harmed by Map 1, have standing to bring this suit. This case is not about partisan gerrymandering, so the suit does not prevent a non-judiciable political question. Plaintiffs were not parties to the state litigation. And concurrent litigation in state and federal court is allowed here given that the state court has purported to promulgate a map for the 2026 *federal* congressional elections.

Preliminary relief is also appropriate because (1) Plaintiffs are likely to succeed on the merits, (2) they are likely to suffer irreparable harm absent preliminary relief, and (3) the balance of equities and public interest favor them. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). As to the merits, the U.S. Constitution (joined by the Utah Constitution) designate only the State "Legislature" as authorized to create redistricting maps. U.S. Const. art. I, §4, cl. 1; Utah Const. art. IX, §1. A state judge is not the "Legislature." And, while state courts may exercise ordinary judicial review, Judge Gibson's conduct was anything but that. Finally, both Judge Gibson and the Defendant (feeling bound by Judge Gibson's decision) violate federal law by not allowing the Legislature another opportunity to draw a map, or if it is too late to do so, using the last lawful redistricting plan Utah adopted: the 2021 map.

## I.     This Court Has Jurisdiction to Enter a Preliminary Injunction.

### A.     Plaintiffs have standing.

For Article III standing to sue, "plaintiffs must have a 'personal stake' in a case." *Bost v. Ill. State Bd. of Elections*, 607 U.S. --, 2026 WL 96707, at *3 (2026) (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024)). Both groups of Plaintiffs easily satisfy that requirement, individually and collectively.

1.     As to the congressional Plaintiffs: As the Supreme Court clarified just last month, "a candidate has a personal stake in the rules that govern" his election. *Id*. Thus, "[a]n unlawful election rule can injure a candidate in several ways." *Id*.

For instance, "[i]t might cause him to lose the election." *Id*. Additionally, "[i]t might require him to expend additional resources." *Id*. Also, "it might decrease his vote share and damage his reputation." *Id*. Thus, "winning [an election], and doing so as inexpensively and decisively as possible" are all interests candidates have that can be harmed by illegalities related to the election, thus providing standing. *Id*.

But that is not all. As representatives of the people rather than "common competitors in the economic marketplace," "candidates also have an interest in a fair process." *Id*. Hence, "[w]in or lose," and "[w]hether [election-related regulations] help, hurt, or have no effect on a candidate's electoral prospects," "candidates suffer when the process departs from the law" because unlawful state action in the context of an election "deprive the candidate of a fair process and an accurate result." *Id*.

What is more, state action "that undermine[s] the integrity of the electoral process also undermine[s] the winner's political legitimacy." *Id.* at *4 (cleaned up). Thus, a candidate can still lose when he wins. That is because "when public confidence in the election results falters, public confidence in the elected representative follows." *Id.* And "[t]o the representative, that loss of legitimacy—or its diminution—is a concrete harm" that presents a "classic Article III injur[y]." *Id.* (citation omitted from second quotation). That reputational injury is "particularly concrete for those whose very jobs depend on the support of the people." *Id.* Political influence waxes or wanes, political careers rise or fall, and elections are won or lost on reputation.

In sum, because candidates "are not 'mere bystanders' in their own elections," and because candidates "have an obvious personal stake in how the result is determined and regarded," any "[d]epartures from the preordained [constitutional or statutory] rules cause them particularized and concrete harm." *Id.* (quoting *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 110 (2025)).

Here, under *Bost*, Plaintiffs Representatives Owens and Maloy show an Article III injury in multiple ways. Map 1 "might decrease [Representative Owens'] vote share." *Bost*, 2026 WL 96707, at *3; Owens Decl. ¶¶10-12; Compl. ¶42. Additionally, given that the Cook Report previously reported Representative Owens' current district (UT-04) to be R+14, but Map 1 moves him to Utah's First District and swings that district to D+12, Map 1 "might cause him to lose the election." *Bost*, 2026 WL

96707, at *3; Owens Decl. ¶¶10-12; *compare* David Wasserman, *2025 Cook PVI: District Map and List (119th Congress)*, The Cook Pol. Rep. (Apr. 3, 2025), https://tinyurl.com/mrx3tv2d (select Dist. UT-04) *with* Cook Pol. Rep., *2026 CPR House Race Ratings* (Nov. 17, 2025), https://tinyurl.com/3kk3d6xw (select Dist. UT-01; "Democrats are poised to easily win the reconfigured 1st District, which is now entirely within Salt Lake County and would have voted for Kamala Harris by nearly 24 points last year."); Compl. ¶42.

Beyond that, both Representatives "might [be] require[d] …. to expend additional resources." *Bost*, 2026 WL 96707, at *3; Maloy Decl. ¶15; Owens Decl. ¶14. That is true for Representative Owens because his new district under Map 1 has become so much more politically hostile. Owens Decl. ¶¶10-12. It is true for Representative Maloy because her new district will be significantly larger and cover many more counties. Maloy Decl. ¶¶11-13. And it is true for both candidates because they will have to introduce themselves to new voters, having lost the familiarity of incumbency in new areas. Maloy Decl. ¶¶9, 12-13; Owens Decl. ¶¶9, 12; Compl. ¶¶41–49. Of course, both Owens and Maloy are more than happy to do that. Maloy Decl. ¶18; Owens Decl. ¶17. But constitutionally, the necessity of doing so is still a cognizable injury for standing purposes.

Even if Map 1 would "have no effect on [Plaintiffs'] electoral prospects," moreover, they still "suffer when the process departs from the law" because the process by which Judge Gibson solicited, selected, imposed, and amended Map 1, and

Defendant's acquiescence and furtherance of that illegal process by implementing the map, "deprive[s] [Plaintiffs] of a fair process and an accurate result." *Bost*, 2026 WL 96707, at *3; Maloy Decl. ¶14; Owens Decl. ¶13. Also, Judge Gibson's actions, and Defendant's plans to countenance those actions by implementing Map 1, all undermine the integrity of the 2026 election, and thus Plaintiffs' political legitimacy, inflicting reputational harm even if they win. *Bost*, 2026 WL 96707, at *4; Maloy Decl. ¶16; Owens Decl. ¶15. For all these reasons, "[d]epartures from the preordained [constitutional or statutory] rules [for redistricting] cause [Representatives Owens and Maloy] particularized and concrete harm." *Bost*, 2026 WL 96707, at *4.

That just one, much less both, of the congressional plaintiffs can show standing is sufficient for this Court to hear this case. *See id*. at *3 n.3 ("[O]nly one plaintiff needs standing for a suit to proceed." (citing *Biden v. Nebraska*, 600 U.S. 477, 489 (2023))).

2. But the other plaintiffs likewise suffer legally cognizable injuries. After all, at least some Plaintiffs have alleged that their vote will be diluted by being placed in a district with many of the fastest growing cities in Utah such that by the time the next census is taken and a new map created in 2030, this district will likely be heavily lopsided compared to other districts. *See* Powers Gardner Decl. ¶7; Painter Decl. ¶6; Smith Decl. ¶6; Compl. ¶34. This is not an "undifferentiated, generalized grievance" that "the Elections Clause[] has not been followed" in a way that would deprive voters who have "assert[ed] no particularized stake in the litigation." *Lance v. Coffman*, 549

U.S. 437, 442 (2007). Rather, the vote dilution injury is particular to Plaintiffs Powers Gardner, Painter, and Smith.

Additionally, the unconstitutional nature of Map 1, and the repeated alterations of it by Judge Gibson, have significantly disadvantaged those Utah voters who are potentially moved to a new district by the map—over half a million. Maloy Decl. ¶10. This electoral limbo has harmed them in their ability to screen and vet candidates for the upcoming primaries, including some of Plaintiff voters here. *Id.*

As constituents, moreover, all Plaintiffs also suffer injury. For example, western Juab County, where Plaintiff Commissioner Painter lives, was previously in a district with more heavily populated Wasatch Front counties that it had more in common with, but under Map 1 it will be placed with predominantly rural counties, with which it has less in common, affecting how its representative serves it. *See id.* ¶36; Painter Decl. ¶7.

Additionally, at least some Plaintiffs, such as Commissioner Powers Gardner, as state elected officials, have cultivated a relationship with their congressional representative that benefits those officials in fulfilling their duties and helping their constituents. Powers Gardner Decl. ¶6. She will now lose that relationship due to Map 1 since she will have to start over with a new representative. *See* Compl. ¶¶37–38; Powers Gardner Decl. ¶6.

Thus, whether as voters, constituents, or state-elected officials, the remaining Plaintiffs also will suffer sufficiently particularized, concrete, and imminent injuries to satisfy Article III standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

As for the other two elements of Article III standing—causation (or traceability) and redressability—Plaintiffs can easily satisfy these as well. *Id.* at 560–61. Their injuries directly stem from Defendant's plan to implement Map 1. And an order by this Court enjoining Defendant from implementing Map 1 will redress these harms.

In short, Plaintiffs' suit satisfies Article III standing requirements—on multiple, independent grounds.

### B. This case is about enforcing the federal constitutional structure and process, not partisan redistricting.

Nor does the fact that the map solicited and chosen by Judge Gibson was put forth by advocacy groups for seemingly partisan purposes—namely to make it easier for a Democrat to win a U.S. House seat in deeply Republican Utah—prevent this Court from deciding this case. To be sure, in *Rucho v. Common Cause*, the Supreme Court held that federal constitutional challenges to partisan redistricting maps presented non-justiciable political questions for federal courts. 588 U.S. 684, 703-708 (2019). But the suit here is a challenge to *who* created a redistricting map rather than a challenge to the substance of that map.

In other words, had the *Legislature* selected "Map 1," Plaintiffs could not and would not be bringing this suit, and Plaintiffs could still have brought the suit even

if the underlying state-court litigation did not concern partisan gerrymandering. This case is about protecting the structure and process commanded by the federal Elections Clause, regardless of underlying political concerns or issues.

### C.    *Lance v. Dennis* **reinforces this Court's jurisdiction.**

Unlike *Rucho*, *Lance v. Dennis* is relevant to this Court's jurisdiction. 546 U.S. 459 (2006) (per curiam). Little different than the voters in *Lance*, Plaintiffs here bring an Election Clause challenge in federal court to election officials' implementation of a state court decision that a state court-created redistricting map should be used over the state legislature's own map. *Id.* at 461. Despite the *Lance* plaintiffs not being a party to the state litigation, the three-judge district court in that case ruled it lacked jurisdiction to hear the Elections Clause claim under the *Rooker-Feldman* doctrine. *Id.* at 462. But the Supreme Court reversed, noting that doctrine was "narrow" and "inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding." *Id.* at 464 (citation omitted).

The same is true here. Plaintiffs were not party to the state proceedings leading to Judge Gibson's adoption of Map 1. And thus under *Lance*, Plaintiffs are free to bring their Election Clause suit in this federal forum—a forum created for the express purpose of enforcing the federal Constitution with respect to elections to federal office.

**D. Concurrent litigation in state and federal court is allowed here.**

Nor is ongoing litigation in state court over Map 1 an obstacle to this Court's exercising jurisdiction and expeditiously deciding this case. In *Growe v. Emison*, the Supreme Court reiterated that federal and state courts can concurrently exercise jurisdiction over congressional redistricting challenges. 507 U.S. 25, 32 (1993). In *Growe*, a federal three-judge district court panel enjoined a state court from deciding a redistricting matter and issuing a plan, which injunction the Supreme Court held to be "clear error"—but only on the technical ground that "[t]he state court was never given a time by which it should decide on reapportionment … if it wished to avoid federal intervention." *Id.* at 28, 34, 36. Once the state court had so decided, however, the *Growe* Court determined that "federal court *was* empowered to entertain the …. plaintiffs' claims relating to …. redistricting …. to the extent those claims challenged the *state court's* plan." *Id.*

That is what happened here—the state court issued a plan on November 10, 2025, empowering federal courts to consider federal claims against it. Nor does it matter that there may still be ongoing proceedings in the Utah state courts over that plan—just as it did not matter in *Growe* that after promulgating the final plan there was still ongoing litigation and even further proposals of alternative plans and a hearing on them. *See* 507 U.S. at 30. It was "the state court issu[ance of] a final order adopting its legislative plan and requiring that plan to be used for [that year's]

primary and general elections," *id.*, that then "empowered" the federal district court in *Growe* to entertain federal claims "challeng[ing] the *state court's* plan," *id.* at 36.

Here, moreover, Plaintiffs are not asserting a direct challenge to the state court's decision, and are not asking this Court to enter any order directed at the state court. Instead, they are simply asking for an order enjoining the Defendant's *implementation* of the state court's plan. So, under *Growe,* this Court's resolution of Plaintiffs' Elections Clause claim is doubly appropriate.

In short, this Court has jurisdiction to decide this case without delay.

## II. Plaintiffs Satisfy the Requirements for a Preliminary Injunction.

Plaintiffs satisfy all four factors for a preliminary injunction and will be irreparably harmed if this Court does not enter that injunction immediately.

### A. Plaintiffs Are Likely to Succeed on the Merits of their Claim because Map 1 violates the Elections Clause.

Plaintiffs are likely to succeed on the merits of their Elections Clause claim because Map 1 was not chosen by the Legislature, as required by the Elections Clause. State-court judges do not count as the Legislature. Although there is a role for state-count judges in reviewing legislatively enacted maps, Judge Gibson did not stay within her circumscribed judicial role in this case, as determined by the U.S. Supreme Court. The selection of Map 1 by state court judge, and its implementation, however reluctantly, by the Defendant, thus violates the federal constitutional rights of all Utah voters. And because Plaintiffs must only show that they are likely—rather than guaranteed—to succeed on their claim, they easily satisfy the likelihood-of-

success element. *See Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1252 (10th Cir. 2016) ("All courts agree that plaintiff must present a prima facie case but need not show a certainty of winning." (quoting 11A *Wright & Miller's Federal Practice and Procedure* §2948.3, at 201 (2013))).

### 1. The "Legislature" does not mean state courts.

The Elections Clause provides that the "Times, Places and Manner" of congressional elections shall be prescribed exclusively "by the Legislature" of each State. U.S. Const. art. I, §4, cl. 1. This broad grant of power includes congressional redistricting. *Ariz. State Legislature*, 576 U.S. at 793. The Supreme Court has interpreted "Legislature" to mean the State's lawmaking system as structured by its state constitution. *Id.* at 808–09.[3] A state's Legislature "exercise[s]" its "authority under the Elections Clause" only "in accordance with the method which the State has prescribed for legislative enactments." *Moore*, 600 U.S. at 24 (cleaned up) (citation omitted). And states prescribe laws only in the "manner …. in which the constitution of the State has provided that laws shall be enacted." *Id.* (citation omitted).

Applying those principles here, the Utah Constitution expressly grants congressional redistricting authority to the Legislature alone. Utah Const. art. IX, §1

---

[3] Although Plaintiffs do not ask this Court to opine on the issue, they believe *Arizona State Legislature v. Arizona Independent Redistricting Commission*, 576 U.S. 787 (2015), by recognizing an unelected commission independent of the state legislature as the "Legislature" for purposes of the Elections Clause, was wrong when it was decided and should be overruled by the Supreme Court in an appropriate case. This case, however, can easily be resolved in a manner consistent with that precedent.

("[T]he Legislature shall divide the state into congressional, legislative, and other districts accordingly.").

Nor is the Utah Independent Redistricting Commission authorized to perform this legislative function. The Commission's authority is merely advisory (and statutory). As the Utah Supreme Court recognized, ultimate authority for redistricting must remain with the Utah Legislature. *See League of Women Voters*, 554 P.3d at 916–17 (the initiative that created the Commission "did not take the authority to enact electoral maps from the Legislature and give it to the Independent Commission," but "empowered the Independent Commission to create proposed maps, which the Legislature was required to consider.").[4]

In short, under the reasoning of *Arizona State Legislature*, Map 1 is unconstitutional. Unlike the commission map upheld in Arizona—which commission was created by the state constitution, placed in the "Legislative Department," and

---

[4] Utah's independent redistricting commission differs in two key respects from the commission upheld in *Arizona State Legislature*. First, the Arizona commission was placed in the "Legislative Department" in Arizona's constitution. Ariz. Const. art. IV, pt. 1, §1; *see also Ariz. State Legislature*, 576 U.S. at 792. The commission thus not only clearly exercised legislative power, *Ariz. State Legislature*, 576 U.S. at 808–09, the commission became part of the "Legislative Department." By contrast, the Utah redistricting commission is merely a creature of statute, not placed anywhere in the state constitution, much less in Utah's legislative branch. Second, whereas the Arizona redistricting commission has sole authority to create new congressional maps, with the state legislature completely bypassed in that process, *id*. at 792, Utah's redistricting commission may merely provide maps to the Legislature, which is only required to consider them, *League of Women Voters*, 554 P.3d at 916–17. The Utah Legislature is still the only relevant "Legislature" for purposes of the Elections Clause. Thus, *Arizona State Legislature* provides no obstacle to Plaintiffs' claim here.

exercised delegated legislative power—Map 1 was not adopted by any institution exercising legislative authority. The Legislature did not enact Map 1. Nor did the Utah redistricting commission create the map, and the commission does not have authority to implement a map and is merely a creature of statute that has not been placed in the state's legislative branch. Instead, a state trial judge selected and imposed a map proposed by private parties, with that judge continuing to alter the map on her own.

Simply put, there is nothing in the U.S. or Utah Constitutions, federal or state statutes, or federal or state judicial precedent that can turn Judge Gibson into the "Legislature" under the Elections Clause. And accordingly, the Defendant cannot implement her Map 1 consistently with that Clause.

### 2. State courts have only limited authority in Election Clause disputes.

To be sure, "[s]tate courts retain the authority to apply state constitutional restraints when legislatures act under the power conferred upon them by the Elections Clause." *Moore*, 600 U.S. at 37. But "state courts do not have free rein." *Id.* at 34. Thus, Judge Gibson could engage in "ordinary judicial review" of state law to determine whether maps adopted by the State Legislature complied with that law (which she did not). *Id.* at 37. But "[i]n interpreting state law in this area, state courts may not so exceed the bounds of ordinary judicial review as to unconstitutionally intrude upon the role specifically reserved to state legislatures by [the Elections Clause]." *Id.*

That line was crossed here. What Judge Gibson did was not judicial review. And even if it somehow was, her order was anything but ordinary.[5]

First, by soliciting and then selecting a redistricting map from private parties and then continuing to alter that map on her own, Judge Gibson went far beyond judicial review and instead improperly engaged in lawmaking: "[R]edistricting is a legislative function, to be performed in accordance with the State's prescriptions for lawmaking." *Ariz. State Legislature*, 576 U.S. at 808; *see also* Michael R. Dimino et al., *Understanding Election Law and Voting Rights* 53 (2d ed. 2026) ("[S]tate courts' actions that are not judicial review at all would obviously not be 'ordinary judicial review,'" such as exercising "administrative powers or legislative powers over redistricting, rather than simply the power to hear lawsuits in a traditional form").

Judge Gibson's conduct here would be closer to the constitutional line if the Utah Constitution purported to delegate legislative power to state courts in selecting

---

[5] This case thus presents the question left unanswered by *Moore v. Harper*: "whether the [state court] strayed beyond the limits derived from the Elections Clause." 600 U.S. 1, 36 (2023). But this case is narrower than *Moore*. That case involved the more typical scenario where a state court enjoins a map drawn by the Legislature because it violates state law in some way. Here Judge Gibson did something unheard of in redistricting litigation. She enjoined the use of the Legislature's map without finding it unconstitutional. The suit she was hearing was about whether a law passed by the Legislature, which amended a previous statutory initiative creating an independent redistricting commission, was unconstitutional under the state constitution. The state court plaintiffs never challenged the Legislature's map. But when Judge Gibson held the challenged law unconstitutional, she also enjoined the unchallenged Legislature's map created after the law went into effect—without any predicate finding or judgment that the map was unconstitutional. Thus, this case presents an easier question and clearer answer than that which *Moore* left unanswered.

redistricting maps created by private parties and subsequently amend them on their own (though that would very likely also be constitutionally infirm). But the state constitution does not do even that much. *See* Utah Const. art. IX, §1; *see also Moore*, 600 U.S. at 24 (a state's Legislature "exercise[s]" its "authority under the Elections Clause" only "in accordance with the method which the State has prescribed for legislative enactments" (cleaned up)).

Judge Gibson's order would be closer to "ordinary judicial review" if state law were even ambiguous on this issue, but state law is unmistakably clear: Utah statutes limit courts' remedial authority in redistricting cases to solely enjoining a map that fails to comply with federal or Utah law, in which case "the Legislature may enact a new or alternative redistricting plan." Utah Code §§20A-19-301(2), (8). Otherwise, Utah courts are not granted any authority to act as a stopgap if a redistricting map is unsatisfactory to the court. By inventing a new remedy not provided in state law, Judge Gibson exceeded the bounds of ordinary judicial review by instead exercising legislative authority and making new law. *Cf.* Dimino et al., *supra*, at 53 ("[S]tate courts would not be exercising 'ordinary' judicial review if their interpretation of state law were so outlandish that it would amount to lawmaking.").

Nor did the initiative that created the independent redistricting commission change that. *League of Women Voters*, 554 P.3d at 916–17 (noting the initiative that created the Commission "did not take the authority to enact electoral maps from the Legislature and give it to the Independent Commission."). There is thus no way,

regardless of whatever test one selects for determining when "ordinary judicial review" has been transgressed, of viewing Judge Gibson as merely engaging in ordinary judicial review.[6]

In sum, Judge Gibson "so exceed[ed] the bounds of ordinary judicial review as to unconstitutionally intrude upon the role specifically reserved to state legislatures by [the Election Clause]." *Moore*, 600 U.S. at 37.

### 3. Congress has not superseded the Utah Legislature's authority here but reinforced it.

The above discussion would be much different if Congress had overridden Utah law concerning redistricting. After delegating authority to "the Legislature" in "each State" to regulate elections, the Constitution reserves to Congress the authority to

---

[6] The Supreme Court has yet to adopt a test of how federal courts can determine that a state court has exceeded the bounds of ordinary judicial review of state law under the Elections Clause. *Moore*, 600 U.S. at 36. It noted two possibilities. One was Chief Justice Rehnquist's three-justice concurrence in *Bush v. Gore*, where he put forth as a test whether state court interpretations of state law "impermissibly distorted them beyond what a fair reading required." *Moore*, 600 U.S. at 36 (quoting 531 U.S. 98, 115 (2000) (Rehnquist, C.J., joined Scalia and Thomas, JJ., concurring)). The second was Justice Souter's dissent in *Bush v. Gore*, which looked at whether a state court interpretation "transcends the limits of reasonable statutory interpretation to the point of supplanting the statute enacted by the 'legislature' within the meaning of Article II." *Moore*, 600 U.S. at 36 (quoting 531 U.S. at 133 (Souter, J., dissenting)); *see also Bush*, 531 U.S. at 131 (Souter, J., dissenting) (stating his standard as where "the interpretation of [state law by a state court] was so unreasonable as to transcend the accepted bounds of statutory interpretation, to the point of being a nonjudicial act and producing new law untethered to the legislative Act in question"). Justice Kavanaugh sees no daylight between these tests, but would adopt Chief Justice Rehnquist's, calling it "straightforward." *Moore*, 600 U.S. at 38 (Kavanaugh, J., concurring). Regardless, Judge Gibson's "judicial review," by inventing a new remedy not found in state law and absconding for herself legislative redistricting authority committed solely to the Legislature, fails either test by a wide margin.

"any time by Law make or alter such Regulations, except as to the Places of chusing Senators." U.S. Const. art. I, §4, cl. 1. But not only has Congress not displaced Utah law on redistricting, it has reinforced it.

That reinforcement can be found in 2 U.S.C. §2a(c). That provision provides a similar and complimentary remedy to what Utah law provides. The latter requires a state court, if it holds a legislatively drawn map to be unlawful, to give the Legislature another opportunity to draw a new map. *League of Women Voters*, 554 P.3d at 916–17. And the former—the federal remedy—requires that if a court finds to be unlawful the last available map provided by the Legislature before time runs out to conduct the election, then the court must apply the last lawful map produced by the Legislature in a scenario where the number of representatives has stayed the same since the last map, which is the case here. *See* 2 U.S.C. §2a(c)(1).

By ignoring this, Judge Gibson violated federal law. And by acquiescing to implementing an illegal redistricting plan, Defendant also violates federal law since the statute does not differentiate between state judges and statewide election officials. *See* 2 U.S.C. §2a(c) (referring to the "State").

Thus, the remedy here is straightforward. Plaintiffs seek declaratory and injunctive relief under 28 U.S.C. §§2201–2202, declaring Map 1 unconstitutional under the Elections Clause and enjoining its use in any future election. If the Legislature cannot or does not pass a new map in time for the 2026 elections, Plaintiffs ask the Court to declare that the 2021 congressional map still governs, as

it did before the state district judge issued an unconstitutional remedy—which map the judge never held unlawful. This remedial sequencing respects the limits on judicial authority articulated in *Moore* while ensuring orderly elections. Given Utah's election calendar, expedited consideration is warranted. And Plaintiffs Maloy and Owen are willing, eager, and ready today to run for re-election under the 2021 map—the map they know and were planning on until late last year. Maloy Decl. ¶7; Owens Decl. ¶7.

### B. Plaintiffs Are Likely to Suffer Irreparable Harm Absent Preliminary Injunctive Relief.

The selection of Map 1 by an improper entity also irreparably harms Plaintiffs. Irreparable injury occurs "when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001). This requirement is met "if a [movant] demonstrates a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005) (citation omitted).

The Tenth Circuit has held that "[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary," and at the very least "must weigh heavily" in any analysis. *Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016) (citation omitted from first quotation). This presumption "especially" applies "in the context of the right to vote" because "there can be no 'do-

over' or redress of a denial of the right to vote after an election." *Id.* (citations omitted). That the injury Plaintiffs suffer here is precisely the same means that "no further showing of irreparable injury is necessary," *id.* (citation omitted), but in any event, the irreparable nature of the harm here also includes the following.

The Utah Voters cannot be compensated for their exclusion from a constitutional redistricting process, for voter confusion, or for dilution of their votes. Nor can they be compensated for casting their votes under an unconstitutional map or for having a potentially unconstitutionally elected representative. And for the Representatives, once the candidate filing deadline passes, they cannot obtain relief in time for the 2026 election.[7] No amount of money can turn back the clock or compensate them for denial of a "fair process" and a lost opportunity to run a race under the agreed-upon rules. *See Bost*, 2026 WL 96707, at *3. The changed rules, especially the changed boundaries, burden their campaigns and leave them uncertain where to file for office or begin campaigning. And even in the event of a victory, they suffer an irreparable reputational harm as the unconstitutional Map 1 casts its pall over any official elected thereunder. "Win or lose, candidates suffer when the process departs from the law." *Id.* Only an injunction can remedy these harms.

### C. The Balance of Equities and Public Interest Favor Plaintiffs.

The balance of equities and public interest factors, which merge when the defendant is the government, *Nken v. Holder,* 556 U.S. 418, 435 (2009), also favor

---

[7] Plaintiffs would still seek relief regarding use of Map 1 in 2028 and future elections.

Plaintiffs. The public interest favors Plaintiffs because "it is always in the public interest to prevent the violation of a party's constitutional rights." *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) (citation omitted). And here, both equity and the public interest support ensuring that Utah's elections proceed only under a constitutionally valid map chosen by the Legislature.

The irreparable harm to Plaintiffs contrasts with the lack of harm to the Lieutenant Governor if a preliminary injunction is entered. The Tenth Circuit has recognized that "[w]hen a constitutional right hangs in the balance, … even a temporary loss usually trumps any harm to the defendant." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 806 (2019) (cleaned up). And states have no "interest in enforcing a law that is likely constitutionally infirm." *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010). To the contrary, "the public interest will perforce be served by enjoining the enforcement of the invalid provisions of state law." *Id.* (citation omitted).

At most, the Lieutenant Governor might allege some administrative burden in implementing the original map or another designated by the Legislature. But Plaintiffs request relief before her February 23rd deadline. And, in any event, the Tenth Circuit has recognized that "[t]here is no contest between the mass denial of a fundamental constitutional right," such as "denial of the right to vote," and "the modest administrative burdens to be borne" by the State's chief elections officer "and other state and local offices involved in elections." *Fish*, 840 F.3d at 755.

Further, the requested relief would serve the public interest in having Utah's representatives elected under a map selected by constitutionally authorized decisionmakers. The state district court's departure from that constitutional process has generated massive voter and candidate confusion, and even anger, all of which would be alleviated by restoring the status quo ante. *See* Powers Gardner Decl. ¶3; Miles Decl. ¶3; Painter Decl. ¶3; Iverson Decl. ¶3; Maughan Decl. ¶3; Pearson Decl. ¶3; Snow Decl. ¶3; Hughes Decl. ¶3; Glover Decl. ¶3; Smith Decl. ¶3. This Court "determine[s] the status quo for preliminary injunctions" by "look[ing] to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights." *Schrier*, 427 F.3d at 1260 (citation omitted). Here, the "last peaceable uncontested status existing between the parties before the dispute developed" was the status quo before the state district court enjoined the Legislature's 2021 congressional map and selected its own. *Id.* (quoting 11A *Wright & Miller's Federal Practice & Procedure* §2948 (2d ed. 1995)). This Court should grant preliminary injunctive relief restoring that status quo and ensure that the 2026 elections are conducted in compliance with the Elections Clause and federal and state law.

## CONCLUSION

For all these reasons, Plaintiffs ask that this Court grant their Motion for Preliminary Injunction immediately, and in so doing find and order that:

1. Under 28 U.S.C. §2201 Map 1 violates the Elections Clause;

2. Defendant be preliminarily enjoined under 28 U.S.C. §2202 from implementing Map 1 and from implementing any congressional map other than one passed by the Legislature pursuant to Article IX of the Utah Constitution;

3. if the Legislature does not timely enact a congressional map consistent with the U.S. Constitution Article I, §4, the 2021 map be declared the governing map for the 2026 elections, as required by federal law; and

4. such other and further relief consistent with the relief requested above be granted as the Court deems just and proper.

February 7, 2026

Respectfully submitted,

*/s/ James C. Phillips*
JAMES C. PHILLIPS
Utah Bar No. 17302
TYLER B. LINDLEY
Utah Bar No. 18635
SCHAERR | JAFFE LLP
299 S. Main Street, Suite 1300
Salt Lake City, UT 84111
jphillips@schaerr-jaffe.com
tlindley@schaerr-jaffe.com

GENE C. SCHAERR*
D.C. Bar No. 416638
JUSTIN A. MILLER*
D.C. Bar No. 90022870
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
gschaerr@schaerr-jaffe.com
jmiller@schaerr-jaffe.com

**Pro hac vice* application pending

*Attorneys for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

I certify that this motion complies with the requirements of DUCivR 7-1(a)(4)(C) and 10-1 because this motion was prepared in 12-point Century Schoolbook, a proportionally spaced typeface, using Microsoft Word, and because this motion contains 7,665 words.

Dated: February 7, 2026

*/s/ James C. Phillips*
James C. Phillips (17302)

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on February 7, 2026, the foregoing motion was filed with the Clerk of the Court by this CM/ECF filing system, which will cause all counsel of record to be served electronically.

Dated: February 7, 2026

*/s/ James C. Phillips*
James C. Phillips (17302)

*Counsel for Plaintiffs*