# EXHIBIT D

FILED DISTRICT COURT
Third Judicial District
~~DEC 2 6 2025~~
Salt Lake County
By:_____
Deputy Clerk

THIRD JUDICIAL DISTRICT COURT

SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF UTAH, MORMON WOMEN FOR ETHICAL GOVERNMENT, STEFANIE CONDIE, MALCOLM REID, VICTORIA REID, WENDY MARTIN, ELEANOR SUNDWALL, JACK MARKMAN, and DALE COX,<br><br>Plaintiffs,<br><br>v.<br><br>UTAH STATE LEGISLATURE; UTAH LEGISLATIVE REDISTRICTING COMMITTEE; SENATOR SCOTT SANDALL, in his official capacity; REPRESENTATIVE BRAD WILSON, in his official capacity; SENATOR J. STUART ADAMS, in his official capacity; and LIEUTENANT GOVERNOR DEIDRE HENDERSON, in her official capacity,<br><br>Defendants. | **RULING and ORDER**<br><br>**DENYING LEGISLATIVE DEFENDANTS' MOTION FOR ENTRY OF FINAL JUDGMENT**<br><br>**and**<br><br>**GRANTING LEGISLATIVE DEFENDANTS' MOTION FOR RULE 54(b) CERTIFICATION**<br><br>Case No. 220901712<br><br>Judge Dianna M. Gibson |

    The Legislative Defendants filed two motions with the Court on December 9, 2025[1] and on December 11, 2025 requesting that the Court either enter a *final* judgment under rule 58A, effectively ending this case, or certify its August 25, 2025 Ruling and Order as final under rule 54(b) of the Utah Rules of Civil Procedure. Both motions request expedited consideration. Not surprisingly, Plaintiffs oppose both motions. On December 22, 2025, the Court held a hearing to

---

[1] The Court notes, ironically, that this motion was filed 29 days after the Court's November 10, 2025 Ruling and still within the time for the Legislative Defendants to seek an immediate and direct appeal of that ruling (which arguably encompasses the August 25, 2025 Ruling and Order) – as a matter of right – to the Utah Supreme Court and obtain a faster appellate decision.

1

seek clarification from the parties. In the late afternoon of December 23, 2025, the Legislative Defendants filed a Notice of Supplemental Authority and Clarification. Late that same evening, Plaintiffs filed their Response.

The December 22, 2025 hearing confirmed what the Court suspected. With election deadlines imminent, the Legislative Defendants repeatedly stated they intended to appeal but then intentionally elected not to utilize the more appropriate appellate tools available to them. Specifically, under rule 7 of the Utah Rules of Appellate Procedure, they could have petitioned to appeal any one of the Court's interlocutory (i.e., non-final) orders within 21 days of any of the Court's three orders. Under Utah Code section 78B-5-1002(2), they could have filed a direct appeal to the Utah Supreme Court within 30 days[2] of each order and obtained an expedited appellate ruling based on this Court's August 25, 2025 Ruling and Order (as amended by the September 6 Ruling and Order) permanently enjoining S.B. 200 and H.B. 2004 (the 2021 Congressional Map) and on this Court's November 10, 2025 Ruling and Order preliminarily enjoining S.B. 1011 and S.B. 1012 (Map C).

Instead, the Legislative Defendants attempt to argue to this Court that this entire case and Plaintiffs' Count V are "essentially" final. That is, they contend all of the relief that can be given in this case has been, and we are "close enough" to call this case done.

Quite literally – this Court is between the proverbial rock and a hard spot. This entire case is not "final." Count V is not final. But the Court agrees that the important legal issues decided by this Court and reflected in each of its rulings – the August 25, 2025 Ruling and Order, the September 6, 2025 Ruling and Order and the November 10, 2025 Ruling and Order – should be reviewed by the Utah Supreme Court as quickly as possible. But this Court and the Utah Supreme Court are bound by the law and by procedure on how we proceed.

The Court first addresses the concept of "finality" and then considers each of the Legislative Defendants' Motions.

### Finality

"As a general rule, an appellate court does not have jurisdiction to consider an appeal unless the appeal is taken from a final order or judgment that ends the controversy between the litigants." *Copper Hills Custom Homes, LLC v. Countrywide Bank, FSB*, 2018 UT 56, ¶ 10, 428 P.3d 1133 (quotation simplified). "The obvious and principal rationale for limiting the right to appeal in this way is to promote judicial economy by preventing piecemeal appeals in the same

---

[2] Rule 4(a) of the Utah Rules of Appellate Procedure provides: "in a case in which an appeal is permitted as a matter of right from the trial court to the appellate court, the notice of appeal required by Rule 3 must be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from." Utah R. App. P. 4(a). This deadline establishes appellate court jurisdiction. *State v. Collins*, 2014 UT 61, ¶ 22, 342 P.2d 789 (stating "an appellate court simply has no power to hear the case if a notice of appeal is untimely.").

2

litigation." *Id.* ¶ 11 (quotation simplified). "Strict adherence to the final judgment rule" is necessary to "maintain[ ] the proper relationship between [the appellate courts] and the district courts." *Id.* (quotation simplified).

There are only three exceptions to the final judgment rule: (1) when the legislature has provided a "statutory avenue for appealing nonfinal orders," *Powell v. Cannon,* 2008 UT 19, ¶ 13, 179 P.3d 799; (2) when the appellate court grants a petition for an interlocutory appeal, *see* Utah R. App. P. 5(a); and (3) when the district court *properly* certifies an order as final under rule 54(b) of the Utah Rules of Civil Procedure. *Hillam v. Hillam,* 2022 UT App 24, ¶ 13, 507 P.3d 380, 383. When rule 54(b) is properly invoked, "an appellate court can 'weigh in on a matter even though not all of the causes of action for all of the parties have been adjudicated,' and even if the ruling in question did not 'end the controversy between [all] the litigants.' "*Id.* ¶ 15 (citing *Copper Hills,* 2018 UT 56, ¶ 15, 428 P.3d 1133, and *Anderson v. Wilshire Invs., LLC,* 2005 UT 59, ¶ 9, 123 P.3d 393 (quotations simplified)).[3]

## Motion For Entry of Final Judgment

The Legislative Defendants first move for entry of a final judgment in this case. They also submit a proposed final judgment for the Court to execute. The proposed final judgment states that Plaintiffs prevailed on Count 5 and Count 16, enters permanent injunctions on S.B. 200 and H.B. 2004 (the 2021 Congressional Map), enters *permanent* injunctions on S.B. 1011 and S.B. 1012 (Map C) (when only *preliminary* injunctions have been entered as of November 10, 2025), and legally concludes that all remaining counts are just dismissed as moot. In response to the Court's questions regarding how the remaining claims were "resolved," the Legislative Defendants asserted that they did not propose and are not proposing to settle the case. The parties have not reached a stipulated resolution regarding any or all outstanding claims. And there is no dispute that the several unadjudicated claims that remain (some recently added in November 2025) have not been the subject of a motion to dismiss, a motion for summary judgment nor any subsequent legal proceeding that would allow this Court to consider or decide if the remaining claims are moot as a matter of law. Under the circumstances, the proposed form of the final judgment submitted by the Legislative Defendants does not actually reflect the legal status of this case or the status of the various claims in the case.[4] This case is far from over and is not yet final.

---

[3] Whether appellate jurisdiction exists is a question of law. *Copper Hills Custom Homes, LLC v. Countrywide Bank, FSB,* 2018 UT 56, ¶ 22 n. 6, 428 P.3d 1133, 1140 n. 6 (citations omitted). Whether a district court properly determined there is "no just reason for delay" is reviewed "for an abuse of discretion." *Id.*

[4] Generally speaking, there are twenty-one causes of action in this case: Counts 1 to 4 are before the Utah Supreme Court on interlocutory appeal; Counts 6 to 8 remain unadjudicated; Counts 9 to 15 involve Amendment D, which has been enjoined, and Counts 16 to 21 are newly added as of November 2025 (and focus on S.B. 1011 and S.B. 1012). None of them are final.

"To be final, the trial court's order or judgment must dispose of all parties and claims to an action." *Bradbury v. Valencia*, 2000 UT 50, ¶ 10, 5 P.3d 649. Even liberally construing the collective "effect" of the Court's three rulings from August 25, September 6, and November 10, 2025, those rulings do not dispose of all of the pending claims. There are several unadjudicated claims in this case, and the parties continue to actively litigate the case. Utah law does not authorize this Court to just "deem" that issues are effectively resolved or enter a proposed *final* judgment because some relief has been granted. *See e.g., Anderson v. Wilshire Invs., L.L.C.*, 2005 UT 59, ¶ 37, 123 P.3d 393, 400 (holding district court's summary determination that lien was not wrongful did not directly or by implication resolve quiet title issue).

Rule 58A of the Utah Rules of Civil Procedure governs the form of judgments. However, it does not and cannot create finality where it does not otherwise exist. And while the Legislative Defendants would like this case to be over, there is no legal basis supporting entry of a final judgment. The Motion for Entry of Final Judgment is DENIED.

### Motion For Rule 54(b) Certification

Rule 54(b) of the Utah Rules of Civil Procedure states: "When an action presents more than one *claim* for relief—whether as a claim, counterclaim, cross claim, or third party claim—and/or when multiple parties are involved, the court may enter judgment as to one or more but fewer than all of the *claims* or parties *only if the court expressly determines that there is no just reason for delay.*" Utah R. Civ. Pro. 54(b) (emphasis added). The Utah Supreme Court has adopted a "narrow approach" to rule 54(b) certifications, requiring district courts closely examine certifiability because "Utah's rules of appellate procedure provide ample avenues for interlocutory appeals." *Kennecott Corp. v. Utah State Tax Comm'n*, 814 P.2d 1099, 1104 (Utah 1991).

*Timing Rule 54(b) and Waiver*

Before addressing the legal requirements, Plaintiffs argue that the Legislative Defendants' Rule 54(b) Motion is not timely and that they have waived their right to make this motion now.

Regarding timing, it appears that a motion to certify a claim as final under rule 54(b) can be made at any time. *Ross v. Kracht*, 2025 UT 22, ¶ 10. There is no deadline set forth in the rule, and earlier decisions from our Utah appellate courts seem to agree that – if the requirements are met – this motion can be brought at any time, and even after a failed certification. The rule 54(b) motion is therefore timely.

Regarding waiver, Plaintiffs contend that where the Legislative Defendants had a clear "right" to appeal created under Utah Code section 78B-5-1002(2), its failure to do so precludes as a matter of law the Legislative Defendants' attempt to appeal the exact same ruling and order by seeking certification under rule 54(b). This issue has not been addressed in Utah. Plaintiffs, however, cite to a federal district court case from Georgia that supports this very proposition. In *National Association of Boards of Pharmacy v. Board of Regents of the University System of*

4

*Georgia*, the defendant missed a 30-day deadline to file a notice of appeal under a rule that gave him a direct right of appeal and then subsequently moved for a rule 54(b) certification to facilitate an immediate appeal. 2009 WL 1109824, at *1 (M.D. Ga. April 23, 2009). That court denied the motion, explaining:

> The collateral order doctrine would have permitted [defendant] to appeal the Court's April 18, 2008 denial of qualified immunity within 30 days. [Defendant] missed the deadline, so he now sees a second chance under Rule 54(b). [Defendant] cites no authority in support of his argument that Rule 54(b) provides a second chance for a litigant who has missed an appeal deadline, and the Court declines to create one.

*Id.* Because Legislative Defendants have a statutory right to immediately appeal an injunction of a state law, their failure to exercise that right precludes their appeal until another appealable order or the final judgment is entered.

Legislative Defendants argue that they were not required to request permission for an interlocutory appeal of the August 25, 2025 Ruling and Order before seeking certification under rule 54(b). In addition, they explain that any appeal of the August 25, 2025 Ruling and Order under section 78B-5-1002(2) "would have resulted in the parties simultaneously briefing likelihood of success review in the appellate courts while conducting remedial proceedings before this Court, thereby unnecessarily complicating the proceedings and wasting judicial and party resources." (*Legislative Defendants' Reply to Plaintiffs' Opposition to Motion for Entry of Final Judgment*, at 7.) In other words, it would have been a lot of work in both courts. While that may be true, this statement reveals that the Legislative Defendants were aware of these avenues to an immediate appeal but chose not to use them.

While this Court finds the *National Association of Boards of Pharmacy* case persuasive, it is not binding. Based on representations made by the Legislative Defendants, it does appear that they knowingly elected to forego their statutory right to a direct appeal under Utah Code section 78B-5-1002(2). It is unclear to this Court what an appeal under section 78B-5-1002 looks like, including the scope of review, the decision issued and the timing. It is arguably new ground for everyone, given this is a new statutory right. So, the Court cannot say that a decision from an appeal under section 78B-5-1002 and under rule 54(b) would be the exact same; although, given the importance of the issue, this Court is confident the Utah Supreme Court would have issued whatever ruling was necessary to address the issues presented on appeal. But, nonetheless, this Court cannot conclude that the Legislative Defendants' decision not to pursue an appeal under section 78B-5-1002(2) is a waiver that now precludes them as a matter of law from seeking certification under Rule 54(b), if the requirements for finality can be separately met.

*Requirements – Rule 54(b) Certification*

The Utah Supreme Court clearly detailed what is required to support a rule 54(b) certification in *Copper Hills Custom Homes, LLC v. Countrywide Bank, FSB,* 2018 UT 56, 428 P.3d 1133. District courts must provide a "clear articulation" of their "reasons for granting certification" so that the appellate courts can have a "basis for conducting a meaningful review" of that certification. *Id.* ¶ 22 (quotation simplified). This Court must make "findings supporting the conclusion that the certified orders are final." *Copper Hills Custom Homes, LLC,* 2018 UT 56, ¶ 21 (quotation simplified). The findings must "detail the lack of factual overlap between the certified and remaining claims" to avoid any potential res judicata impact an appeal may have on the remaining issues in the case and the findings should "advance a rationale as to why" there "is no just reason for delay." *Id.* (quotation simplified). The detailed findings allow the appellate courts to evaluate if extending appellate jurisdiction over a certified claim can be done in a manner to avoid piecemeal appeals that would "needlessly increase the risk of inconsistent or erroneous decisions" on factually intertwined issues. *Id.* ¶ 11 (citing *Anderson,* 2005 UT 59, ¶ 9, 123 P.3d 393 (quotation simplified)); *see also Hillam v. Hillam,* 2022 UT App 24, ¶¶ 17-22, 507 P.3d 380, 384-85 (discussing district court's rule 54(b) certification obligations).

In order to properly certify a claim as final, three requirements must be met: (1) "there must be multiple claims for relief or multiple parties to the action;" (2) "the judgment appealed from must have been entered on an order that would be appealable but for the fact that other claims or parties remain in the action;" and (3) the district court, in its discretion, must make an express determination and "set forth a clear rationale as to why there is no just reason" for delay." *Copper Hills Custom Homes, LLC,* 2018 UT 56, ¶ 16.

The Court addresses each of the three requirements separately. Regarding the *first requirement*, there are multiple claims for relief in this case and this litigation involves multiple parties. The first requirement is met.

The *second requirement* in this case is candidly the hardest to satisfy: "the judgment appealed from must have been entered on an order that would be appealable but for the fact that other claims or parties remain in the action." To be clear, no "judgment" has been entered in this case. In the August 25, 2025 Ruling and Order, this Court merely granted Plaintiffs' Motion for Summary Judgment on Count 5, concluding that the Legislative Defendants violated Plaintiffs' constitutional right to alter or reform their government when the Legislature repealed Proposition 4 and replaced it with S.B. 200. The Court issued a permanent injunction, enjoining S.B. 200 and the resulting 2021 Congressional map, ruled that Proposition 4 is the law in Utah and ordered remedial proceedings pursuant to Proposition 4. *If Plaintiff's Count V requested only that S.B. 200 and the 2021 Congressional map be enjoined*, then the August 25, 2025 Ruling and Order would in fact be final and appealable as to Count V. But that is not the only remedy requested under Count V, it is not the only remedy available under Proposition 4 and the parties are in the midst of those remedial proceedings.

The relief requested by Plaintiffs in Count 5 goes beyond what was granted in the August 25, 2025 Ruling and Order. Because the August 25, 2025 Ruling and Order ruled that Proposition 4 is the law in Utah, Proposition 4 itself includes a process to provide relief to Plaintiffs. So, while the August 25, 2025 Ruling and Order grants summary judgment to Plaintiffs on Count 5, *and* it permanently enjoins S.B. 200 and the 2021 Congressional Map, it also is the genesis for the remedial process that the Court and the parties engaged in as reflected in the September 6, 2025 Amended Ruling and Order Adopting the Parties' Scheduling Order and Clarifying the Court's August 25, 2025 Ruling ("September 6, 2025 Amended Ruling and Order"). That process led to the Legislature enacting S.B. 1011 (modifications to Proposition 4) and S.B. 1012 (Map C), which led to Plaintiffs' Motion for Leave to File Third Supplemental Complaint with six new causes of action (Counts 16-21) and a new Motion for Preliminary Injunction seeking to enjoin S.B. 1011 and S.B. 1012. On October 23-24, 2025, a two-day evidentiary hearing was conducted and ultimately this Court issued the November 10, 2025 Ruling and Order, which itself is *not* "final." Rather, the November 10, 2025 Ruling and Order made findings of fact and conclusions of law and granted Plaintiffs motion for a preliminary injunction on S.B. 1011 (the October 6, 2025 modifications to Proposition 4) and S.B. 1012 (Map C, which was enacted under S.B. 1011). Because S.B. 1011 and S.B. 1012 were preliminarily enjoined, the Court choose between the two maps proposed by Plaintiffs and ultimately ordered that Plaintiffs' Map 1 be used as the remedial congressional map, pending further proceedings in this Court, pending an appeal or pending a new legislatively enacted congressional map.

Nonetheless, the Legislative Defendants request that this Court certify the August 25, 2025 Ruling and Order as "final." In complete candor to the Utah Supreme Court and to provide as much information as possible for the Court's review of this rule 54(b) certification, this Court makes clear – the August 25, 2025 Ruling and Order does not completely resolve Plaintiffs' *claim* in Count V. Rule 54(b) plainly refers to the "finality" of "claims." Utah's appellate courts regularly reject certifications of summary judgment rulings that have not been finalized. *See e.g., Am. Sav. & Loan Ass'n v. Gibson,* 839 P.2d 797, 798 (Utah 1992) (holding summary judgment ruling on liability alone was not final because "the question of the remedy remain[s] to be determined."); *see also Maddox v. Maddox,* 2024 UT App 130, ¶ 5, 557 P.3d 604, 606-607 (rejecting district court's attempt to certify a ruling on summary judgment as final, explaining that a summary judgment ruling that an excess insurance policy is not applicable to cover damages in the case "is not a ruling that resolves any party's claims in the case."). This case is no different – the remedy for Count V is only partially complete. This Court could not find a case certifying an "issue" as final or suggesting that "a partial remedy" met the requirements under rule 54(b). Although, the Court notes – by operation of time (not law) – the Court's rulings on Count 5 to date (e.g., enjoining the 2021 Congressional Map, enjoining Map C, and ordering the use of Map 1) will be rendered final for purposes of the next upcoming 2026 election cycle.

In addition, there will be some *legal* and *factual* overlap moving forward. Count 5 and the newly added Count 16 are both based on Plaintiffs' claim that the Legislative Defendants

violated Plaintiffs' right to alter or reform their government by impairing Proposition 4. Count 5 alleges S.B. 200 violated the alter or reform clause by repealing Proposition 4 entirely. Count 16 alleges that S.B. 1011 violates the alter or reform clause by impairing the core anti-gerrymandering goals of Proposition 4. While it is true that the underlying facts are different (different laws enacted in different years), both claims are based on the same type of legislative conduct. And both claims will rise and fall based on this Court's and, if the Utah Supreme Court accepts the rule 54(b) certification, the Utah Supreme Court's legal analysis of the alter and reform clause and both the Legislature's and the people's legislative authority on redistricting. The factual overlap is that resolution of Count 16 is integral to completely addressing the remedy Plaintiffs requested in Count 5. Count 16 is also a new stand-alone claim. So, this Court cannot say that what happens on appeal will not have a res judicata effect on the case as it continues in district court. But some overlap does not necessarily preclude a rule 54(b) certification as a matter of law. *See Copper Hills Custom Homes, LLC v. Countrywide Bank, FSB*, 2018 UT 56, ¶ 21, 428 P.3d 1133, 1141 (requiring district courts to explain overlap between certified and remaining claims and why certification is still appropriate).

With regard to the ***third requirement***, and notwithstanding that the remedy under Count 5 is not yet complete nor final, this Court in its discretion is certifying that there is no just reason to delay appellate review[5] of the legal rulings in the August 25, 2025 Ruling and Order (as amended in the September 6, 2025 Amended Order). Utah courts have concluded that there is no just reason to delay entry of a final judgment if there is a decision that "finally dispos[es] of either an individual claim or an individual party." *Wash. Townhomes, LLC v. Wash. Cnty. Water Conserv. Dist.*, 2016 UT 43. ¶ 9, 388 P.3d 753. In explaining the relationship between finality and certification, the United States Supreme Court in *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437, 76 S. Ct. 895, 900–01 (1957):

> *The District Court cannot, in the exercise of its discretion, treat as "final" that which is not "final"* .... But the District Court *may*, by the exercise of its discretion in the interest of sound judicial administration, release for appeal final decisions upon one or more, but less than all, claims in multiple claims actions. The timing of such a release is, with good reason, vested by the rule primarily in the discretion of the District Court as the one most likely to be familiar with the case and with any justifiable reasons for delay. With equally good reason, any abuse of that discretion remains reviewable by the Court of Appeals.

*Id.* (emphasis added); *see also Pate v. Marathon Steel Co.*, 692 P.2d 765, 768 (Utah 1984).

There is no doubt that Count V as pled by Plaintiffs is not completely resolved even if all three rulings from August 26, September 6 and November 10, 2025 are read together. Complete relief requested in Count V remains to be finalized. But, based on this Court's ruling granting

---

[5] issuing a final judgment capturing the permanent injunction and certifying that portion of the August 25, 2025 Ruling and Order as final.

Plaintiffs' summary judgment on Count V and awarding relief that *permanently* enjoins S.B. 200 and the 2021 Congressional Map and declares that Proposition 4 is the law in Utah, this Court can say that it does "finally dispose" of the claims regarding the constitutionality of S.B. 200, the 2021 Congressional Map and Proposition 4. There is nothing further to be done on Count V *as it pertains to those specific legal rulings and that specific relief granted.*

The Court also certifies that there is no just reason to delay issuing a final judgment reflecting the permanent injunction of S.B. 200 and the 2021 Congressional Map, as reflected in the August 25, 2025 Ruling and Order. That Ruling and Order thoroughly explains the Court's application of the standard created by the Utah Supreme Court in *League of Women Voters of Utah v. Utah State Legislature,* 2024 UT ¶ 21. It thoroughly explains this Court's legal analysis and reasoning regarding the people's right to alter or reform their government under the Utah Constitution, how Proposition 4 was the people's exercise of that right, how the Legislature impaired that right, and how repealing Proposition 4 was not narrowly tailored to advance a compelling state interest. It also thoroughly explains the legal basis for entering the permanent injunction on both S.B. 200 and the 2021 Congressional Map and explaining why Proposition 4 is the law in Utah.

This case is unique. Most cases before district courts involve private parties and private transactions. Redistricting cases are the exact opposite. They are very public and have a state-wide impact. Every Utah voter, every Utah congressional candidate and arguably every Utah citizen is impacted by this case. Issuing a final ruling – on even a portion of this case – ultimately serves the public's interest and will lead to a faster resolution of the entire case. While it was the Legislative Defendants' duty to seek appellate review of these decisions as soon as possible (if in fact that is what they wanted), they have offered no legitimate explanation for failing to do so when they had the chance, either by interlocutory appeal or by exercising their statutory right to immediately appeal an injunction of a state law. Nonetheless, this Court still believes that there is no reason to delay appellate review. If the Court does not certify the August 25, 2025 Ruling and Order now, any appellate review will have to wait until the end of the case, which could be months to years away.

Until there is a final decision on these legal issues from our Supreme Court, there will be a cloud on Utah's congressional elections and an open question regarding the power of the Legislature and the power of the people. The Utah Supreme Court can decide *now* if the Legislature is the sole and exclusive authority over redistricting in Utah or if it shares that responsibility with the people. It can decide if the people of Utah, through the exercise of their right to alter or reform government through a citizen initiative, can also pass binding laws regarding how the Legislature performs its redistricting duty. And the Utah Supreme Court should decide now if the order granting the permanent injunction of S.B. 200 and the 2021 Congressional Map should stand or if it should be vacated. These legal questions should be put to rest as soon as possible. There is no just reason to delay the Utah Supreme Court's review of

those legal rulings in the August 25, 2025 Ruling and Order. There is no reason to delay bringing some finality on these important issues to the people of Utah.

Based on the findings detailed above and the Court's certification that there is no reason to delay appellate review of the August 25, 2025 Ruling and Order or to delay finalizing the permanent injunction of S.B. 200 and the 2021 Congressional Map or the order ruling that Proposition 4 is the law in Utah, the Court GRANTS the Legislative Defendants' Motion for Rule 54(b) Certification of the August 25, 2025 Ruling and Order. *The Court expressly DENIES the Motion to the extent it requests certification of Count 5 as final. Because the remedy requested by Plaintiffs in Count 5 (and now Count 16) is not complete nor final, 54(b) certification of Count 5 – and all other claims – is DENIED.*

## CONCLUSION

This was not an easy call. The Legislative Defendants had a direct, non-discretionary right to immediately and directly appeal to the Utah Supreme Court from both the August 25, 2025 Ruling and Order which enjoined S.B. 200 and the 2021 Congressional Map and the November 10, 2025 Ruling and Order which enjoined S.B. 1011 and Map C. They chose not to appeal. No legitimate reason was offered for failing to appeal. Now, they seek a third imperfect avenue requesting the Court certify its August 25, 2025 Ruling and Order as final, to allow them to appeal under Utah law.

To comply with Utah law, this Court has attempted to provide a clear statement explaining the status of the case, what is final and what is not, and the reasons why this Court – even under these circumstances – believes there is no just reason to delay appellate review of the legal issues resolved and the permanent relief granted by this Court in the August 25, 2025 Ruling and Order, as modified by the September 6, 2025 Amended Ruling and Order. The Court leaves it to the Utah Supreme Court to determine if, as a matter of law, this suffices to establish appellate jurisdiction.

The Court ORDERS the Legislative Defendants to prepare a form of a final judgment consistent with this Court's ruling, specifically reflecting a final judgment related to the permanent injunction of S.B. 200 and the 2021 Congressional Map and declaring that Proposition 4 is the law in Utah, as reflected in the August 25, 2025 Ruling and Order. Legislative Defendants should submit the proposed final judgment to Plaintiffs for review as quickly as possible and then submit to the Court. Given timing, please notify the Court directly once the proposed Order is ready for the Court's review.

DATED December 26, 2025.

Judge Dianna M. Gibson
Third District Court

## CERTIFICATE OF NOTIFICATION

I certify that a copy of the attached document was sent to the following people for case 220901712 by the method and on the date specified.

EMAIL: DAVID BILLINGS DBILLINGS@FABIANVANCOTT.COM

EMAIL: ABHA KHANNA AKHANNA@ELIAS.LAW

EMAIL: MARCOS MOCINE MCQUEEN mmcqueen@elias.law

EMAIL: RICHARD MEDINA rmedina@elias.law

EMAIL: TYLER GREEN TYLER@CONSOVOYMCCARTHY.COM

EMAIL: VICTORIA ASHBY VASHBY@LE.UTAH.GOV

EMAIL: MARIE E SAYER mari@consovoymccarthy.com

EMAIL: CHRISTINE GILBERT CGILBERT@LE.UTAH.GOV

EMAIL: ALAN HOUSTON AHOUSTON@LE.UTAH.GOV

EMAIL: SOREN GEIGER soren@consovoymccarthy.com

EMAIL: OLIVIA ROGERS orogers@consovoymccarthy.com

EMAIL: LANCE SORENSON LANCESORENSON@AGUTAH.GOV

EMAIL: DAVID WOLF DNWOLF@AGUTAH.GOV

EMAIL: DAVID REYMANN DREYMANN@PARRBROWN.COM

EMAIL: ASEEM MULJI amulji@campaignlegalcenter.org

EMAIL: ANNABELLE HARLESS aharless@campaignlegalcenter.org

EMAIL: J FREDERIC VOROS FVOROS@ZBAPPEALS.COM

EMAIL: TROY BOOHER TBOOHER@ZBAPPEALS.COM

EMAIL: CAROLINE OLSEN COLSEN@ZBAPPEALS.COM

EMAIL: MARK GABER mgaber@campaignlegalcenter.org

EMAIL: KADE OLSEN KOLSEN@PARRBROWN.COM

EMAIL: BENJAMIN PHILLIPS bphillips@campaignlegalcenter.org

EMAIL: ISAAC DESANTO idesanto@campaignlegalcenter.orig

EMAIL: CHEYLYNN HAYMAN CHAYMAN@PARRBROWN.COM

Date: 12/26/2025

/s/ SHAI ALVAREZ

Signature