David P. Billings (Utah Bar No. 11510)
**FABIAN VANCOTT**
95 South State Street, Suite 2300
Salt Lake City, Utah 84111
801-531-8900
dbillings@fabianvancott.com

Abha Khanna*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
206-656-0177
akhanna@elias.law

Richard A. Medina*
Max C. Accardi*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
202-968-4490
rmedina@elias.law
maccardi@elias.law

*Attorneys for Proposed Intervenor
National Redistricting Foundation*

**Pro hac vice* application forthcoming

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| COMMISSIONER AMELIA POWERS GARDNER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> LIEUTENANT GOVERNOR DEIDRE HENDERSON, in her official capacity, <br><br> Defendant. | **MOTION TO INTERVENE BY THE NATIONAL REDISTRICTING FOUNDATION** <br><br> Civil Action No. 2:26-cv-84-RJS-JCB |

Proposed Intervenor the National Redistricting Foundation ("NRF") moves to intervene as a Defendant in this action as a matter of right under Federal Rule of Civil Procedure 24(a)(2) or permissively under Rule 24(b)(1)(B). Concurrently with this motion, NRF files both a Proposed Answer, as required by Rule 24(c), and a provisional motion to dismiss Plaintiffs' Complaint, pursuant to the Court's scheduling order. *See* ECF No. 25.

## BACKGROUND

### I. Nature of the Case

Plaintiffs ask this Court to interfere in ongoing state redistricting litigation based on a fringe interpretation of the Elections Clause of the U.S. Constitution. In August, a Utah district court enjoined, on state law grounds, the congressional map enacted by the Utah legislature in 2021 (the "2021 Map"). *See* ECF No. 1 ("Compl.") ¶ 73. The court gave the Legislature an opportunity to remedy the violation by enacting a new map that complied with state law. *Id.* The Legislature enacted a new map, but the court concluded it failed to remedy the state law violations it previously identified, enjoined its use, and ordered Utah election officials to instead conduct the 2026 congressional elections under a state law-compliant map proposed by plaintiffs in the state court action. *Id.* ¶¶ 75, 78. That decision has been appealed to the Utah Supreme Court. *Id.* ¶ 44.

Instead of allowing Utah courts to resolve questions of Utah law, Plaintiffs sued the Lieutenant Governor in federal court to enjoin her from implementing Map 1 as ordered by the Utah district court. *See generally* ECF No. 1. Plaintiffs contend that under the Constitution's Elections Clause, state courts have no authority to remedy state law redistricting violations by ordering the use of a compliant map. *Id.* ¶ 91 (citing U.S. Const. art. I, § 4, cl. 1). They argue that

the Constitution "conveys the authority to prescribe the times, places, and manner of congressional elections only to 'the Legislature' of 'each State,'" not to state courts. *Id.*

This theory, commonly referred to as the Independent State Legislature ("ISL") theory, has been widely discredited. In *Moore v. Harper*, the Supreme Court considered and rejected it, holding that "[t]he Elections Clause does not insulate state legislatures from the ordinary exercise of state judicial review." 600 U.S. 1, 22 (2023). If Plaintiffs were to prevail on their ISL claim, however, it would have radical implications. In its broadest formulation, ISL would all but foreclose *any* state law challenge to *any* state election law—meaning it "would effectively eliminate state constitutions as a source of voting rights protections," Jason Marisam, *The Dangerous Independent State Legislature Theory*, 2022 Mich. St. L. Rev. 571, 574. And in the formulation Plaintiffs appear to urge in their Complaint, state courts may never order the use of a particular map as a remedy, *see* Compl. ¶ 87–88—a rule that would effectively strip state courts of the power to remedy state-law defects in congressional maps.

## II. Proposed Intervenor

Founded in 2017, NRF is a § 501(c)(3) nonprofit advocacy group that seeks to ensure fair maps through litigation that will have a nationwide impact in creating more just and representative electoral districts. To advance this mission, NRF engages in public education and grassroots mobilization efforts to raise awareness of gerrymandering, partners with groups to develop redistricting reforms at the state and federal level, and sponsors and funds litigation to oppose unjust gerrymandering practices that discriminate on the basis of race or party affiliation or otherwise violate state or federal law to the detriment of voters and fair representation.

Because the Supreme Court has held that partisan gerrymandering claims are not justiciable, NRF and the litigants it supports are unable to challenge partisan gerrymanders in federal court. *See Rucho v. Common Cause*, 588 U.S. 684 (2019). However, many state constitutions retain protections against partisan gerrymandering that can be adjudicated in state courts.[1] For this reason—and because of other voter protections in state constitutions—NRF's ability to develop and promote state court litigation is mission-critical. NRF regularly sponsors and financially supports election-related litigation in state courts. Just this month, plaintiffs supported by NRF filed suit in the Florida Supreme Court challenging the Florida Governor and Secretary of State's attempts to force the Florida Legislature to undergo mid-decade redistricting in 2026.[2] NRF is also sponsoring ongoing litigation in Missouri state court, challenging that state's newly-enacted congressional map as a violation of the Missouri Constitution.[3]

Because NRF seeks to preserve state-court litigation as an avenue to vindicate voter rights, it has consistently—and vocally—opposed the ISL theory. Indeed, the *Harper* Plaintiffs in *Moore v. Harper* were supported by NRF in both the U.S. Supreme Court and North Carolina state court, resulting in the successful defeat of the ISL theory at the Supreme Court.[4] As NRF explained at

---

[1] *See, e.g.*, Harry Black & Emily Lau, State Democracy Rsch. Initiative, *Explainer: Status of Partisan Gerrymandering Claims Across the Country* (2025), https://statedemocracy.law.wisc.edu/wp-content/uploads/sites/1683/2024/06/Explainer-Status-of-Partisan-Gerrymandering-Claims-Across-the-Country-Harry-Black-Emily-Lau.pdf.

[2] *Pines v. DeSantis*, Nat'l Redistricting Found. (Feb. 5, 2026), https://redistrictingfoundation.org/court-cases/pines-v-desantis/

[3] *Healey v. Missouri*, Nat'l Redistricting Found. (Sep. 28, 2025), https://redistrictingfoundation.org/court-cases/healey-v-missouri/.

[4] *NRF Statement on* Moore v. Harper *Victory*, Nat'l Redistricting Found. (June 27, 2023), https://redistrictingfoundation.org/2023/06/27/nrf-statement-on-moore-v-harper-victory/.

the time: "The independent state legislature theory is an extreme theory that threatens our system of checks and balances, a cornerstone of democracy . . . . We renew our calls for the Court to shut down the fringe theory once and for all."[5]

### III. Procedural History

Plaintiffs filed this lawsuit on February 2, 2026, three months after the map they challenge was adopted by the Utah district court. On February 7, the League of Women Voters of Utah, Mormon Women for Ethical Government, and several individual Utah voters (collectively, "LWV Intervenors")—plaintiffs in the underlying state-court litigation—moved to intervene as Defendants in this case. ECF No. 17. LWV Intervenors explain that they are interested in this case because they obtained injunctive relief against the Utah Legislature's map in state court, and Plaintiffs' requested remedy would "result in reversal of LWV Intervenors' relief." *Id.* at 8–9. LWV Intervenors also contend that the map Plaintiffs seek to restore "violat[es] their state constitutional rights" as individual Utah voters. *Id.* at 6. In their motion, LWV Intervenors indicated that they "plan to expeditiously move to dismiss Plaintiffs' suit." *Id.* at 1 n.1.

Also on February 7, Plaintiffs filed a preliminary injunction motion that is set for a hearing on February 18. ECF No. 25. The Court set a briefing schedule on Plaintiffs' preliminary injunction motion and the LWV Intervenors' motion to intervene. *Id.*

---

[5] *NRF-Supported Respondents Submit 2nd SCOTUS Brief Reiterating Dangers Posed by Independent State Legislature Theory*, Nat'l Redistricting Found. (May 11, 2023), https://redistrictingfoundation.org/2023/05/11/nrf-supported-respondents-submit-2nd-scotus-brief-reiterating-dangers-posed-by-independent-state-legislature-theory/.

## LEGAL STANDARD

Under Rule 24, a party may intervene either as a matter of right or with permission of the Court. Fed. R. Civ. P. 24. To intervene as of right, a proposed intervenor "must establish (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties." *Barnes v. Sec. Life of Denv. Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019) (citation omitted); *see* Fed. R. Civ. P. 24(a). Permissive intervention is appropriate when the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b), and the intervention would not "result in an undue delay or prejudice the main action." *Buhler v. BCG Equities, LLC*, No. 2:19-CV-00814-DAK, 2021 WL 364191, at *1 (D. Utah Feb. 3, 2021) (unpublished).

Courts in the Tenth Circuit have "historically taken a 'liberal' approach to intervention and thus favor[ed] the granting of motions to intervene." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017). This is especially true "in cases raising significant public interests such as this one," where courts impose "relaxed intervention requirements." *Kane County v. United States*, 94 F.4th 1017, 1025 (10th Cir. 2024) (citation omitted).

## ARGUMENT

**I.   NRF is entitled to intervene as of right.**

**A.   NRF's motion is timely.**

NRF's motion is undisputably timely. Courts in the Tenth Circuit consider three factors in evaluating timeliness: (1) the length of time since the proposed intervenor knew of its interests in the case; (2) prejudice to existing parties if intervention is granted; and (3) prejudice to the

proposed intervenor if intervention is denied. *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010).

All three factors favor intervention. *First*, NRF files this motion only nine days after the case was filed. *See Kane County*, 928 F.3d at 891 (motion filed three months after event triggering intervenor's interest was timely); *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1251 (10th Cir. 2001) (motion filed three years after complaint was timely). *Second*, little substantial briefing has occurred in this case, and, as demonstrated by the concurrent filing of NRF's provisional motion to dismiss, NRF will comply with any deadlines imposed by the Court, so there is no risk of undue prejudice or delay. *W. Energy All.*, 877 F.3d at 1164–65 (no prejudice to other parties was likely "[g]iven how early in the lawsuit the [proposed intervenor] moved to intervene"). *Finally*, as set out below, NRF will be substantially prejudiced if it is not permitted to intervene in this case to protect its strong and unique interests in the litigation.

### B.  NRF has a strong interest in this case that will be impaired by an adverse ruling.

To intervene under Rule 24(a), a proposed intervenor must show an "interest" that could be "impair[ed]"—two requirements that are "closely related." *FDIC v. Jennings*, 816 F.2d 1488, 1492 (10th Cir. 1987). A proposed intervenor satisfies the "interest" requirement if it identifies a "direct, substantial, and legally protectable" stake in the lawsuit that "would be impeded by the disposition of the action." *Barnes*, 945 F.3d at 1121–22 (citation omitted). The "interest" requirement is intended to ensure the "involv[ement of] as many apparently concerned persons as is compatible with efficiency and due process," *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996) (citation omitted), meaning that establishing a protectable interest "presents a minimal burden," *Kane County*, 928 F.3d at 891 (citation

7

omitted). So long as a proposed intervenor could "be substantially affected in a practical sense by the determination made in an action, [it] should . . . be entitled to intervene" as of right. *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009) (citation omitted).

The impairment requirement is similarly "minimal." *Barnes*, 945 F.3d at 1123 (citation omitted). To satisfy it, an intervenor must show only that impairment of its interest is "possible," not inevitable, "if intervention is denied." *Id.* (citation omitted). In evaluating impairment, the Court is not "restricted to a rigid . . . test." *Id.* (citation omitted). The Court must instead "consider any . . . legal effect [on] the applicant's interest." *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth*, 100 F.3d at 844. This includes circumstances where "the resolution of the legal questions in the case [may] effectively foreclose the rights of the proposed intervenor in later proceedings, whether through *res judicata*, collateral estoppel, or *stare decisis*." *Ute Distrib. Corp. v. Norton*, 43 F. App'x 272, 279 (10th Cir. 2002) (unpublished); *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1254 (10th Cir. 2001) ("[T]he *stare decisis* effect of the district court's judgment is sufficient impairment for intervention." (citation modified)).

An organization can satisfy these requirements by showing that it has a "record of advocacy" related to the subject matter of the dispute and that an adverse ruling may thwart or hinder that advocacy. *W. Energy All.*, 877 F.3d at 1165–67. In *San Juan County v. United States*, for instance, the *en banc* Tenth Circuit found it "indisputable" that an environmental advocacy organization could intervene as of right in a case seeking a right-of-way on public land that could cause "potential damage to the environment." 503 F.3d 1163 (10th Cir. 2007) (en banc), *abrogated on other grounds by Hollingsworth v. Perry*, 570 U.S. 693 (2013). Similarly, in *WildEarth Guardians*, the court held that an environmental group had a "strong . . . interest in defending and

preserving the [National Park Service's] interpretation of" a statute that was consistent with its organizational mission and goals. 604 F.3d at 1200; *accord W. Energy All.*, 877 F.3d at 1165–67 (environmental organization's interest in "obviating and/or minimizing the environmental impact of oil and gas development on public lands" warranted intervention in suit seeking oil and gas leases); *Utah Ass'n of Cntys.*, 255 F.3d at 1253 (permitting intervention based on intervenors' "interest in the preservation and protection of [a national] monument").

NRF easily satisfies these standards. NRF's organizational mission includes sponsoring state-court litigation against unlawful redistricting maps, including active cases in Missouri and Florida. *Supra* Background § II. NRF also has a "record of advocacy," *W. Energy All.*, 877 F.3d at 1165–67, against the ISL theory—the specific claim advanced by Plaintiffs in this case—including its sponsorship of *Moore v. Harper*, the seminal Supreme Court case rejecting the theory. Both of these qualify as "legally protectable interest[s]" under Tenth Circuit precedent. *Barnes*, 945 F.3d at 1121–22.

This litigation directly threatens these interests. If Plaintiffs prevail on their ISL-based claim, it could have a *stare decisis* effect "in later proceedings" (or serve as persuasive authority for other courts which later address similar issues), which could preclude state courts from performing judicial review on state election laws or severely limit their ability to impose an appropriate remedy. *Ute Distribution Corp.*, 43 F. App'x at 279. Not only would that "foreclose the rights" of NRF in other cases, *id.*, it would devastate NRF's ability to perform ongoing, mission-critical work. *See WildEarth Guardians*, 573 F.3d at 995 (any party that might be "affected in a practical sense by the determination made in an action" can intervene). Further, an adverse ruling would hamper NRF's long-standing, extensive, and expensive advocacy against the ISL

9

theory, thereby frustrating NRF's organizational mission. *See W. Energy All.*, 877 F.3d at 1164–67; *San Juan County*, 503 F.3d at 1164.

Because an adverse result in this action would undermine years of advocacy and hinder NRF's ability to sponsor crucial litigation to vindicate its mission, NRF easily satisfies the "interest" and "impairment" requirements of Rule 24(a).

### C. NRF's interest is not adequately represented by the existing parties.

None of the existing parties adequately represent NRF's interests. The burden of showing inadequacy is "minimal," requiring only that NRF demonstrate that "representation *may be* inadequate." *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002) (citation modified); *accord Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). "The possibility that the interests of the [proposed intervenor] and the parties may diverge need not be great in order to satisfy this minimal burden." *Utah Ass'n of Cntys.*, 255 F.3d at 1254 (citation modified).

Lieutenant Governor Henderson plainly does not represent NRF's interests. She is a *defendant* in the state court litigation that Plaintiffs here collaterally attack. And it is likely that, as in the underlying state court litigation, she will take no position on the requested relief. *See* ECF No. 17-5; *Utah Ass'n of Cntys.*, 255 F.3d at 1256 (government's "silence on any intent to defend the [intervenors'] special interests is deafening" (alteration in original)). But even if Lieutenant Governor Henderson is inclined to defend here, the Tenth Circuit has held that it is "on its face impossible for a government agency to carry the task of protecting the public's interests and the private interests of a prospective intervenor," *WildEarth Guardians*, 604 F.3d at 1200 (citation modified).

Though the LWV Intervenors have not yet been granted intervention and therefore are not "existing parties," *Barnes*, 945 F.3d at 1124, they also would not adequately represent NRF's interests. While both the LWV Intervenors and NRF are interested in "defending against, and ultimately defeating, the claims asserted in [Plaintiffs'] complaint," the fact that they share the same posture in the litigation does not render their interests identical, *cf. id.* at 1125, and "[o]nly 'when the objective of the applicant for intervention is *identical* to that of one of the parties' is representation considered to be adequate," *id.* at 1124 (emphasis added) (citation omitted). The LWV Intervenors have clearly stated their interests and objectives in this litigation: preserving the judgment and relief granted to them in the state-court litigation from which this case springs. ECF No. 17 at 9–10. NRF's interests and objectives, explained above, lie in preserving its organizational mission of sponsoring state-court litigation against unfair and partisan state election laws and defending its many years of advocacy against the ISL theory. NRF's objectives thus are not identical to the LWV Intervenors'. *See Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 198 (2022) (permitting intervention where intervenors "s[ought] to give voice to a different perspective" from existing parties).

Because NRF need only show a "possibility" that its interests diverge from those of the other parties, and even that possibility "need not be great" to satisfy their minimal burden, *see Utah Ass'n of Cntys.*, 255 F.3d at 1254 (citation omitted), NRF has demonstrated that its interests are not adequately represented.

## II. Alternatively, the Court should grant NRF permissive intervention.

In the alternative, the Court should grant NRF permissive intervention. As indicated by NRF's Proposed Answer, NRF's claims and defenses share a "common question of law or fact"

11

with the main action—namely, whether Plaintiffs have plausibly advanced a cognizable legal theory in the complaint. *See* Fed. R. Civ. P. 24(b). NRF has moved to intervene promptly, and its intervention would not unduly delay the action or unfairly prejudice any party. *See Buhler*, 2021 WL 364191, at *2; *supra* Argument § I.A. And given NRF's experience with ISL challenges—including its role in *Moore v. Harper*—its presence will assist the Court in analyzing the relevant legal issues. *Corp. of President of Church of Jesus Christ of Latter-Day Saints v. RJ*, No. 2:16-CV-00453-RJS-BCW, 2016 WL 11656351, at *1 (D. Utah Aug. 24, 2016) (citation omitted) (unpublished). Courts in this circuit often grant permissive intervention where, as here, the proposed intervenor would contribute "experience, views, and expertise" that may clarify "the issues in the action." *Kobach v. U.S. Election Assistance Comm'n*, No. 13-CV-4095-EFM-DJW, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013) (unpublished).

## CONCLUSION

The Court should grant NRF's motion to intervene either as of right or by permission.

Dated: February 11, 2026                                        Respectfully submitted,

/s/ David P. Billings

David P. Billings
**FABIAN VANCOTT**
95 South State Street, Suite 2300
Salt Lake City, Utah 84111
801-323-2205
dbillings@fabianvancott.com

Abha Khanna*
**ELIAS LAW GROUP LLP**
1700 Seventh Ave, Suite 2100
Seattle, WA 98101

12

Telephone: 206-656-0177
akhanna@elias.law

Richard A. Medina*
Max C. Accardi*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
Telephone: 202-968-4490
rmedina@elias.law
maccardi@elias.law

*Attorneys for Proposed Intervenor National Redistricting Foundation*

*\* Pro hac vice application forthcoming*

## LOCAL RULE 7-1(A)(6) CERTIFICATION

I, David P. Billings, certify that this Motion to Intervene contains 3,098 words and complies with DUCivR 7-1(a)(4).

*/s/ David P. Billings*
David P. Billings
