David P. Billings (Utah Bar No. 11510)
**FABIAN VANCOTT**
95 South State Street, Suite 2300
Salt Lake City, Utah 84111
801-531-8900
dbillings@fabianvancott.com

Abha Khanna*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
206-656-0177
akhanna@elias.law

Richard A. Medina*
Max C. Accardi*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
202-968-4490
rmedina@elias.law
maccardi@elias.law

*Attorneys for Proposed Intervenor*
*National Redistricting Foundation*

\**Pro hac vice* application forthcoming

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| COMMISSIONER AMELIA POWERS GARDNER, et al.,<br><br>           Plaintiffs,<br><br>      v.<br><br>LIEUTENANT GOVERNOR DEIDRE HENDERSON, in her official capacity,<br><br>           Defendant. | Civil Action No. 2:26-cv-84-RJS-JCB |

**PROPOSED INTERVENOR NATIONAL REDISTRICTING FOUNDATION'S
PROVISIONAL MOTION TO DISMISS**

Proposed Intervenor National Redistricting Foundation ("NRF"), through undersigned counsel, hereby files its provisional motion to dismiss the Complaint with prejudice pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* ECF No. 25. In the alternative, NRF moves to defer consideration of Plaintiffs' Complaint pending final resolution of the underlying state court litigation under the doctrine of *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941).

In support of this Motion, NRF states as follows:

## INTRODUCTION

The relief Plaintiffs seek—a federal court order countermanding a state court's remedial order on state-law grounds—is squarely foreclosed by Supreme Court precedent. Less than three years ago, the Supreme Court rejected Plaintiffs' expansive interpretation of the United States Constitution's Elections Clause, U.S. Const. art. 1, § 4, cl. 1. *Moore v. Harper*, 600 U.S. 1 (2023). It held that, although the Elections Clause requires "the Legislature" of each State to prescribe the rules governing federal elections, it does not "vest[] state legislatures with exclusive and independent authority when setting the rules governing federal elections." *Id.* at 26. That means "[s]tate courts retain the authority to apply state constitutional restraints when legislatures act under the power conferred upon them by the Elections Clause." *Id.* at 37. And that authority includes the power to order the use of court-drawn plans to remedy violations of state and federal law. *See Scott v. Germano*, 381 U.S. 407, 409 (1965).

That is exactly what has happened here. Nearly six months ago, a Utah state district court held unconstitutional a state statute that repealed Proposition 4, a voter-approved initiative to restrict partisan gerrymandering in Utah. *League of Women Voters of Utah v. Utah State Legislature*, No. 220901712, 2025 WL 2644292 (Utah Dist. Ct. Aug. 25, 2025) (unpublished). As a result, it concluded that Utah's existing congressional map, enacted under that state statute and

2

in violation of Proposition 4, was invalid. *Id.* So it enjoined the map and gave the state Legislature another bite at the apple. *Id.* In response, the Legislature again attempted to amend Proposition 4 and enacted a new map. In a thorough ruling, the Utah district court again concluded that both the amendments to Proposition 4 and the proposed map failed to pass muster under Utah law. ECF No. 1 ("Compl.") ¶ 78. It did what courts around the country often do when a state legislature fails to remedy legal violations in a redistricting plan: it held a remedial hearing and ordered the adoption of a legally compliant plan. *Id.*

None of this is remotely unusual, and it certainly does not exceed the "ordinary bounds of judicial review." *Moore*, 600 U.S. at 36. Plaintiffs base their contrary argument on provisions of state law that on their face say nothing to restrict the broad remedial power enjoyed by courts of equity in Utah. They rely on a state constitutional provision that requires the "Legislature" to redistrict soon after the U.S. Census. Utah Const. art. IX, § 1. But that is a limitation on the Legislature, not an exclusive grant of authority. They also claim that Proposition 4's provision that a court may enjoin an unlawful map necessarily excludes the power to replace it with a remedial map. But that makes no sense—without the ability to order the adoption of a remedial map, courts would be left to play redistricting whack-a-mole with state legislatures that repeatedly adopt non-compliant maps or, worse, refuse to propose a remedial map at all, thus insulating redistricting plans from judicial review entirely. The Utah district court rightly rejected these strained interpretations of state law.

Accordingly, binding Supreme Court precedent mandates dismissal of Plaintiffs' claim. But even if dismissal were not warranted, abstention doctrines require the Court to, at the very least, stay its hand. This case falls squarely within the *Pullman* doctrine, which requires courts to

abstain from adjudicating constitutional questions that could be obviated by state court interpretations of state law that bear on important state policies. Plaintiffs here ask the Court to conclude that the Utah district court's interpretation of Utah law is not just wrong, but *so* wrong that the court has "transgress[ed] the ordinary bounds of judicial review" and "arrogate[d] to [itself] the power vested in state legislatures to regulate federal elections." *Moore*, 600 U.S. at 36. The Utah Supreme Court on appeal, not this Court, must answer these important questions of state law.

## BACKGROUND

### I. Nature of the Case

The Plaintiffs in this action ask this Court to interfere in state redistricting litigation that has been ongoing for nearly four years based on a fringe interpretation of the Elections Cause of the U.S. Constitution. The League of Women Voters of Utah and other plaintiffs in the state redistricting litigation (the "LWV Plaintiffs") filed suit in March 2022, challenging on state-law grounds the congressional map enacted by the Utah Legislature in 2021 along with the Legislature's repeal of Proposition 4, a ballot measure that created an independent redistricting commission and banned partisan gerrymandering, among other things. *See* Compl., *League of Women Voters of Utah et al. v. Utah State Legislature*, No. 220901712 (Utah Dist. Ct. Mar. 17, 2022). After much litigation, including multiple trips to the Utah Supreme Court in which the court ruled unanimously for the LWV Plaintiffs, *see, e.g.*, *League of Women Voters of Utah v. Utah State Legislature*, 2024 UT 21, 554 P.3d 872 (2024), the Utah district court in August 2025 held that the legislature's repeal of Proposition 4 violated the Utah Constitution, and accordingly

enjoined the use of the existing Utah congressional map (the "2021 Map"), which was enacted in violation of Proposition 4's requirements. *See* Compl. ¶ 73.

As is typical in redistricting litigation, the court gave the Legislature an opportunity to remedy the violation by enacting a new map that complied with Proposition 4. *Id.* The Utah Legislature passed two bills: S.B. 1011, which amended Proposition 4 to redefine and limit its prohibition on partisan favoritism in redistricting, and S.B. 1012, which enacted a new congressional map, "Map C." *Id.* ¶ 75. The LWV Plaintiffs sought and received permission to file a supplemental complaint challenging the constitutionality of S.B. 1011 and subsequently moved for a preliminary injunction preventing its enforcement. The court granted the preliminary injunction and enjoined the use of Map C, which it determined violated Proposition 4's ban on partisan favoritism. Compl. ¶ 78. On November 10, the court ordered Utah election officials, including Lieutenant Governor Deidre Henderson, to conduct the 2026 congressional elections under Map 1—a state-law-compliant map proposed by the LWV Plaintiffs. *Id.* On January 7, 2026, Defendants appealed to the Utah Supreme Court. *Id.* ¶ 44. That appeal remains pending.

Rather than permitting the Utah Supreme Court to resolve these important questions of Utah law, on February 2, 2026, Plaintiffs sued the Lieutenant Governor in federal court to enjoin her from implementing Map 1 as ordered by the Utah district court. *See generally* Compl. Plaintiffs contend that under the Constitution's Elections Clause, state courts have no authority to remedy state law redistricting violations by ordering the use of a compliant map. *Id.* ¶ 91 (citing U.S. Const. art. I, § 4, cl. 1). They argue that the Constitution "conveys the authority to prescribe the times, places, and manner of congressional elections only to 'the Legislature' of 'each State,'" not to state courts. *Id*.

## II.     Procedural History

Plaintiffs filed their complaint on February 2, 2026, and filed a motion to expedite the briefing schedule for an anticipated motion for preliminary injunction on February 6, 2026. ECF Nos. 1, 14. On February 7, 2026, the League of Women Voters of Utah, Mormon Women for Ethical Government, and other plaintiffs in the underlying state court litigation (collectively, "LWV Intervenors") moved to intervene as Defendants in this case. ECF No. 17. In their motion, LWV Intervenors indicated that they "plan to expeditiously move to dismiss Plaintiffs' suit." *Id.* at 1 n.1. The same day, Plaintiffs filed their preliminary injunction motion. ECF No. 19. The Plaintiffs sought, and the court granted in part, an extraordinarily expedited schedule to resolve their preliminary injunction motion, with a hearing set for February 18. ECF No. 25. NRF filed its motion to intervene on February 11, 2026.

## LEGAL STANDARD

A complaint must be dismissed where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At the motion-to-dismiss stage, while the Court "must accept as true all of the allegations contained in a complaint," it need not accept the complaint's "legal conclusions." *id.* at 678. "Thus, mere 'labels and conclusions'" are insufficient. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiffs "must offer specific factual allegations to support each claim." *Id.*

## ARGUMENT

**I.     Plaintiffs' claim fails under clear Supreme Court precedent.**

    **A. The Elections Clause does not bar state courts from ordering remedial maps.**

Plaintiffs argue that under the Elections Clause, only the Utah legislature—and not any Utah court—may enact a congressional redistricting plan. Their Complaint cites no case that has adopted their theory. That is unsurprising: As even Plaintiffs are forced to admit, Compl. ¶ 92, the Supreme Court has rejected the expansive theory of state legislative power that they put forward here, holding that the Elections Clause "does not insulate state legislatures from the ordinary exercise of state judicial review." *Moore*, 600 U.S. at 22. That means "[s]tate courts retain the authority to apply state constitutional restraints when legislatures act under the power conferred upon them by the Elections Clause." *Id.* at 37. Just two years ago in *Moore*, the Court identified at least three of its cases—*Ohio ex rel. Davis v. Hildebrant*, 241 U.S. 565 (1916), *Smiley v. Holm*, 285 U.S. 355 (1932), and *Arizona State Legislature v. Arizona Independent Redistricting Comm'n*, 576 U.S. 787 (2015)—that "rejected the contention that the Elections Clause vests state legislatures with exclusive and independent authority when setting the rules governing federal elections." *Moore*, 600 U.S. at 26. And it reaffirmed that "State courts are the appropriate tribunals . . . for the decision of questions arising under their local law, whether statutory or otherwise." *Id.* at 34 (quoting *Murdock v. Memphis*, 20 Wall. 590, 626 (1875)).

This power of state court judicial review under the Elections Clause, the Supreme Court has also explained, includes the power to order remedial maps. The Court has repeatedly held "that state courts have a significant role in redistricting," and reversed lower courts that "overlooked this . . . teaching." *Growe v. Emison*, 507 U.S. 25, 33 (1993). Indeed, where a redistricting map

7

violates state law, as the Utah district court found here, state courts are "specifically encouraged" to take up the map-drawing pen themselves to remedy those violations. *Scott v. Germano*, 381 U.S. 407, 409 (1965). In *Germano*, for example, a federal district court invalidated Illinois' senate districts and entered an order requiring the State to submit to the court any revised senate districting plan it might adopt. *Id.* at 408. Meanwhile, as here, an action had previously been filed in state court attacking the same redistricting plan. *Id.* The Illinois Supreme Court invalidated that plan, offered the Illinois legislature an opportunity to enact a lawful plan, and retained jurisdiction. The Supreme Court held that the federal district court "should have stayed its hand." 381 U.S. at 409. It recognized that "[t]he power of the judiciary of a State to require valid reapportionment *or to formulate a valid redistricting plan* has not only been recognized by this Court but appropriate action by the States in such cases has been *specifically encouraged*." *Id.* (citing *State of Maryland Committee for Fair Representation v. Tawes*, 377 U.S. 656, 676 (1964); *City of Scranton v. Drew*, 379 U.S. 40 (1964); *Baker v. Carr*, 369 U.S. 186 (1962)). As a result, it remanded the matter with "directions that the District Court enter an order fixing a reasonable time within which the appropriate agencies of the State of Illinois, *including its Supreme Court*, may validly redistrict the Illinois State Senate." *Id.* (emphasis added).

In *Growe v. Emison*, the Supreme Court unanimously "renew[ed its] adherence to the principles expressed in *Germano*, which derive from the recognition that the Constitution leaves the States with primary responsibility for apportionment of their *federal congressional* and state legislative districts." 507 U.S. at 34 (emphasis added). It repeated "what has been said on many occasions: reapportionment is primarily the duty and responsibility of the State through its legislature *or other body*, rather than of a federal court." *Id.* (quoting *Chapman v. Meier*, 420 U.S.

8

1 (1975)). It accordingly held that the district court's "injunction of state-court proceedings" was "clear error" based on the "mistaken view that federal judges need defer only to the Minnesota Legislature and not at all to the State's courts." *Id.* It explicitly underscored the "legitimacy of state *judicial* redistricting," and explained that "the doctrine of *Germano* prefers *both* state branches to federal courts as agents of apportionment." *Id.* (emphasis in original). Indeed, the state court's "issuance of its [redistricting] plan" was "precisely the sort of state judicial supervision of redistricting we have encouraged." *Id.*

The lesson of these cases is clear: state courts possess not only the power under the Elections Clause to order remedial maps to cure violations of state law, but also the duty to do so. That is precisely what the Utah district court did here. Plaintiffs' contention that the Elections Clause forbids this is meritless.

### B. The Utah district court did not "transgress the ordinary bounds of judicial review" under Utah law in ordering a remedial map.

Plaintiffs cannot escape through the narrow window left open by the Supreme Court in *Moore* for instances where state courts "transgress the ordinary bounds of judicial review such that they arrogate to themselves the power vested in state legislatures to regulate federal elections." 600 U.S. at 36. Behind this limited proviso is "the concern that state courts might read state law in such a manner as to circumvent federal constitutional provisions." *Id.* at 35. That standard is extraordinarily high, and no court has ever applied *Moore*'s narrow exception to hold that a state court's application of state law violated the federal Elections Clause. This Court should not be the first.

Importantly, Plaintiffs' Complaint does not question the Utah district court's ruling that both the 2021 Map and Map C violated state law, nor do they question that the Utah district court

9

had the power to enjoin the use of those maps. Having failed to identify any legal error in the Utah district court's state law analysis, Plaintiffs can hardly argue that these decisions "exceeded the bounds of ordinary judicial review." *Id.* at 36. Instead, the Complaint contends only that the Utah district court lacked authority under the United States and Utah constitutions to order the adoption of a remedial map to cure the violations of state law that it found. *E.g.*, Compl. ¶ 94.

Although the Supreme Court in *Moore* declined to adopt any "test by which we can measure state court interpretations of state law in cases implicating the Elections Clause," nothing about the state court's remedial order here "transgress[ed] the ordinary bounds of judicial review" under any plausible standard. *Moore*, 600 U.S. at 36. Indeed, it is quite "ordinary" for a court—state or federal—to adopt a remedial redistricting plan to cure a violation of law and ensure that the upcoming election will take place under a legally compliant map. That is commonplace in redistricting litigation. *See, e.g.*, *Norelli v. Sec'y of State*, 175 N.H. 186, 195 (2022) (holding that state courts have jurisdiction "to formulate a remedy if the current congressional districting statute is unconstitutional and no redistricting plan is timely enacted by the legislature"); *Carter v. Chapman*, 672 Pa. 172, 216-17 (2020) (adopting a congressional redistricting plan); *Hippert v. Ritchie*, 813 N.W.2d 391, 403 (Minn. 2012) (adopting a congressional redistricting plan); *Perry v. Del Rio*, 67 S.W.3d 85, 91 (Tex. 2001) ("The Legislature is the department constitutionally responsible for apportioning the State into federal congressional legislative districts. When the Legislature does not act, citizens may sue and, then, it is the judiciary's role to determine the appropriate redistricting plan." (citations omitted)) *cf. Hoffmann v. N.Y. State Independent Redistricting Comm'n*, 41 N.Y.3d 341, 348-351 (2023) (recounting the long history of federal court-drawn maps in New York); *Milligan v. Allen*, No. 2:21-cv-1530-AMM, 2025 WL 2451593,

at *4 (N.D. Ala. Aug. 7, 2025) (adopting congressional plan to remedy violations of Section 2 of the VRA).

Plaintiffs' principal basis for arguing that the Utah court transgressed its authority under Utah law is the Utah Constitution's provision that "[n]o later than the annual general session next following the Legislature's receipt of the results of an enumeration made by the authority of the Untied States, the Legislature shall divide the state into congressional, legislative, and other districts accordingly." Utah Const. art. IX, § 1. That provision, by its plain terms, says nothing to limit the judicial power of the Utah courts. Instead, as the Utah district court previously explained, Article IX, Section 1, far from "grant[ing] redistricting authority to the 'Legislature,'" instead "*limits* the Legislature's authority" as to "when redistricting shall occur." *League of Women Voters of Utah v. Utah State Legislature*, No. 220901712, 2025 WL 2644292, at *18 (Utah Dist. Ct. Aug. 25, 2025) (unpublished).

The Constitutions of other states contain similar provisions to Utah's Article IX, Section 1, but courts in those states routinely order new district maps to remedy violations of state and federal law. The Minnesota Constitution, for instance, provides that "the legislature shall have the power to prescribe the bounds of congressional and legislative districts." Minn. Const. art. IV, § 3. But Minnesota courts regularly draw maps. *E.g.*, *Wattson v. Simon*, 970 N.W.2d 56, 59-66 (Minn. 2022); *Hippert*, 813 N.W.2d at 394-95. Wisconsin's Constitution similarly provides that "[a]t its first session after each enumeration made by the authority of the United States, the legislature shall apportion and district anew the members of the senate and assembly." Wis. Const. art. IV, § 3. But that provision has not stopped the Wisconsin Supreme Court from imposing remedial maps. *See Johnson v. Wis. Elections Comm'n*, 967 N.W.2d 469 (Wis. 2021); *Clarke v. Wis. Elections*

*Comm'n*, 998 N.W.2d 370, 396 (Wis. 2023). New Hampshire's constitution provides that "the legislature shall divide the state into single-member [senate] districts," and that it "shall form the single-member districts . . . at the regular session following each decennial federal census. N.H. Const. Pt. 2, Art. 26th. Again, that did not stop the New Hampshire Supreme Court from "undertak[ing] the unwelcome obligation" of choosing a new Senate map to remedy the state legislature's failure to enact a lawful map. *Below v. Gardner*, 963 A.2d 785, 788 (N.H. 2002). And as the Texas Supreme Court has explained, though the "Legislature shall, at its first regular session after the publication of each United States decennial census, apportion the state into senatorial and representative districts," Tex. Const. art. III, § 28, "[w]hen the Legislature does not act, citizens may sue, and, then, it is the judiciary's role to determine the appropriate redistricting plan." *Perry*, 67 S.W.3d at 91 (citing *Growe*, 507 U.S. at 33–34).

Utah courts, like these other state courts, "have broad authority to grant equitable relief as needed." *Jeffs v. Stubbs*, 970 P.2d 1234, 1243 (Utah 1998); *see also Spanish Fork Westfield Irr. Co. v. Dist. Ct. of Salt Lake Cnty.*, 104 P.2d 353, 359 (Utah 1940) ("Generally speaking, courts of equity exercise a broad and flexible jurisdiction to grant remedial relief where justice and good conscience requires it."). "A trial court is accorded considerable latitude and discretion in applying and formulating an equitable remedy." *Thurston v. Box Elder Cnty.*, 892 P.2d 1034, 1041 (Utah 1995). Moreover, the Utah Constitution provides that "[a]ll courts shall be open, and every person, for an injury done to the person in his or her person, property, or reputation, shall have remedy by due course of law." Utah Const. art. I, § 11. The Oklahoma Supreme Court, for instance, has relied on the Oklahoma Constitution's similar "open courts" provision to hold that its state courts have

12

jurisdiction to "grant remedies for violations of congressional redistricting disputes." *Alexander v. Taylor*, 51 P.3d 1204, 1212–13 (Okla. 2002) (citing Okla. Const. art. 2, § 6).

Nor does it matter that Proposition 4 permits the Court to "issue a permanent injunction barring enforcement or implementation of the redistricting plan." Utah Code § 20A-19-301(2); *see* Compl. ¶ 84. That section in no way limits the Utah district court's broad remedial authority under the Utah constitution and common law—it does not say that courts may *not* adopt remedial plans as an equitable remedy. Moreover, under Proposition 4, "[u]pon the issuance of a permanent injunction, the legislature *may* enact a new or alternative redistricting plan that abides by and conforms to the redistricting standards, procedures, and requirements of this chapter." Utah Code § 20A-19-301(8) (emphasis added). This permissive language further underscores that, absent a legally compliant remedial plan from the Utah legislature, the court must step in and devise a remedy. Although the legislature "may" enact a remedial plan, it is not required to do so, which would leave it to the court to remedy the violation. Any other interpretation would render the availability of an injunction under Proposition 4 entirely meaningless: the Legislature could simply refuse to avail itself of the opportunity to cure the violation, thus leaving in place a map drawn in violation of state law. Proposition 4's strictures are not so toothless.

Finally, even if the Court were to disagree with the Utah district court's interpretation of the Utah Constitution as to its own remedial authority, that would not be sufficient to show that the Utah district court "transgressed the ordinary bounds of judicial review." *Moore*, 600 U.S. at 36. As the persuasive authorities cited above demonstrate, the Utah district court's interpretation of Utah law—even if erroneous—certainly does not "impermissibly distort[]" Utah law "beyond what a fair reading required." *Id.* (quoting *Bush v. Gore*, 531 U.S. 98, 115 (2000) (Rehnquist, J.,

13

concurring)). Nor does it "transcend[] the limits of reasonable statutory interpretation to the point of supplanting the statute enacted by the 'legislature' within the meaning of Article II." *Id.* (quoting *Bush*, 531 U.S. at 133 (Souter, J., dissenting)). Short of that demanding standard, any error in the district court's interpretation of Utah law is a matter for the Utah Supreme Court to address on appeal.

## II. In the alternative, the Court should abstain from deciding this case under *Pullman*.

If the Court does not dismiss the Complaint outright for failure to state a claim, it should at the very least defer consideration of Plaintiffs' claim until after resolution of the state court proceedings, as this is a paradigmatic case for abstaining under *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941). "The policy underlying *Pullman* abstention is that federal courts should avoid premature constitutional adjudication and the risk of rendering advisory opinions." *Caldara v. City of Boulder*, 955 F.3d 1175, 1178 (10th Cir. 2020) (citations omitted). Accordingly, the Court should abstain under *Pullman* where: (1) "an uncertain issue of state law underlies the federal constitutional claim"; (2) "the state issues are amenable to interpretation and such an interpretation obviates the need for or substantially narrows the scope of the constitutional claim" and (3) "an incorrect decision of state law . . . would hinder important state law policies." *Id.* (quoting *Lehman v. City of Louisville*, 967 F.2d 1474, 1478 (10th Cir. 1992)).

This case plainly satisfies all three elements. *First*, as Plaintiffs' complaint demonstrates, there are multiple uncertain issues of state law that precede any federal constitutional question. Plaintiffs challenge a state trial court order issued on November 10, 2025, that invalidates the Utah Legislature's 2021 map and replaces it with a different map. Compl. ¶ 2. That order rests on a determination of state law—namely, that the 2021 map violates Proposition 4, a Utah statute that

the legislature attempted to unconstitutionally repeal. *Id*. Plaintiffs contend that the state court order is unlawful because (1) the Utah constitution allegedly "vest[s] congressional apportionment authority exclusively in the state" legislature and (2) Utah statutes do not "grant any authority to adopt or impose a map" to state courts—both state law arguments. *Id*. ¶¶ 63, 84–85. These "threshold state law issue[s]" necessarily precede the federal constitutional issue Plaintiffs present, which depends on whether the Utah district court's interpretation of state law is so erroneous as to violate the United States Constitution. *See Clajon Prod. Corp. v. Petera*, 70 F.3d 1566, 1567 (10th Cir. 1995); *Moore*, 600 U.S. at 36.

*Second*, the state law issues are not only "amenable to interpretation" in the abstract, *Caldara,* 955 F.3d at 1178, but in fact are the subject of ongoing litigation before the Utah Supreme Court. *Pullman* abstention applies even when resolution of threshold state-law issues is merely hypothetical—when those issues "*might be* . . . presented in a different posture by a state court determination of pertinent state law." *S & S Pawn Shop Inc. v. City of Del City*, 947 F.2d 432, 442 (10th Cir. 1991) (emphasis added) (affirming *Pullman* abstention over ambiguous Oklahoma statute). These facts present an even stronger case for abstention, because the state law questions are pending on appeal in proceedings before Utah's high court. *Cf. Morrow v. Winslow*, 94 F.3d 1386, 1393 (10th Cir. 1996) (noting, in the context of another abstention doctrine, the "strong federal policy against federal court interference with pending state judicial proceedings" (citation omitted)).

And, importantly, resolution of any of the state-law issues Plaintiffs present could "make [this court's] constitutional ruling unnecessary." *Clajon Prod. Corp.*, 70 F.3d at 1576. At least according to Plaintiffs' complaint, the Utah Supreme Court could decide that the trial court (1)

15

mis-applied Proposition 4 in invalidating the 2021 map, (2) violated separation-of-powers principles in the Utah constitution, or (3) violated Utah statutes limiting the court's remedial authority, *see* Compl. ¶¶ 2, 63, 84–84—all questions of state law. Should the Utah Supreme Court rule that the trial court erred on any of these issues, "there would be no need for [this Court] to resolve the federal constitutional questions." *Caldara*, 955 F.3d at 1181 (applying *Pullman* abstention given uncertain issue of Colorado state law); *see also City of Chicago v. Fieldcrest Dairies*, 316 U.S. 168, 173 (1942) (applying *Pullman* abstention where federal constitutional "issue may not survive [parallel] litigation in the state courts"); *Am. Const. L. Found., Inc. v. Meyer*, 113 F.3d 1245 (10th Cir. 1997) (*declining* to apply *Pullman* abstention when "no possible state court ruling . . . would obviate the need for a determination" of the federal constitutional question); *Fed. Home Loan Bank Bd., Washington, D.C. v. Empie*, 778 F.2d 1447, 1451 (10th Cir. 1985) (similarly declining to abstain because "no foreseeable state court ruling on the scope of existing state law . . . will render moot the [federal constitutional] question").

*Third*, any disposition of this case plainly touches on important state policies. "Reapportionment [of congressional districts] . . . is primarily the duty and responsibility of the States, not the federal courts." *Allen v. Milligan*, 599 U.S. 1, 29 (2023) (quotations omitted; citation modified); *see Large v. Fremont Cnty., Wyo.*, 670 F.3d 1133, 1146 (10th Cir. 2012) (highlighting federalism concerns when federal courts become involved in state redistricting efforts); *Caldara*, 955 F.3d at 1181–82 (applying *Pullman* abstention where "federalism issues [we]re salient"). Among other issues, Plaintiffs' arguments here implicate the balance of power between the Utah legislature and Utah courts, and the meaning of several constitutional and statutory provisions of

Utah law. *See Caldara*, 955 F.3d at 1182 (*Pullman* abstention was appropriate to avoid "balanc[ing] two competing state policy choices").

In short, Plaintiffs ask the Court to wade into important questions of Utah law that are the subject of ongoing litigation in the state's highest court. A ruling in their favor would deprive the Utah Supreme Court of even the opportunity to opine on these issues and declare that the Utah district court's interpretation of state law is not just wrong, but *so* wrong that it violates the Elections Clause. Such intrusions on the comity between state and federal courts are exactly what abstention doctrines are meant to avoid.

## CONCLUSION

The Court should dismiss Plaintiffs' complaint or, alternatively, defer pending the Utah Supreme Court's adjudication of the underlying state law action.

Dated: February 11, 2026　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　/s/ *David P. Billings*

　　　　　　　　　　　　　　　　　　　　　David P. Billings
　　　　　　　　　　　　　　　　　　　　　**FABIAN VANCOTT**
　　　　　　　　　　　　　　　　　　　　　95 South State Street, Suite 2300
　　　　　　　　　　　　　　　　　　　　　Salt Lake City, Utah 84111
　　　　　　　　　　　　　　　　　　　　　801-323-2205
　　　　　　　　　　　　　　　　　　　　　dbillings@fabianvancott.com

　　　　　　　　　　　　　　　　　　　　　Abha Khanna*
　　　　　　　　　　　　　　　　　　　　　**ELIAS LAW GROUP LLP**
　　　　　　　　　　　　　　　　　　　　　1700 Seventh Ave, Suite 2100
　　　　　　　　　　　　　　　　　　　　　Seattle, WA 98101
　　　　　　　　　　　　　　　　　　　　　Telephone: 206-656-0177
　　　　　　　　　　　　　　　　　　　　　akhanna@elias.law

　　　　　　　　　　　　　　　　　　　　　Richard A. Medina*
　　　　　　　　　　　　　　　　　　　　　Max C. Accardi*
　　　　　　　　　　　　　　　　　　　　　**ELIAS LAW GROUP LLP**
　　　　　　　　　　　　　　　　　　　　　250 Massachusetts Ave. NW, Suite 400

Washington, D.C. 20001
Telephone: 202-968-4490
rmedina@elias.law
maccardi@elias.law

*Attorneys for Proposed Intervenor National Redistricting Foundation*

*\* Pro hac vice application forthcoming*