Victoria Ashby (12248)
Christine R. Gilbert (13840)
Alan R. Houston (14206)
OFFICE OF LEGISLATIVE RESEARCH
 AND GENERAL COUNSEL
Utah State Capitol Complex,
House Building, Suite W210
Salt Lake City, UT 84114-5210
(801) 538-1032
vashby@le.utah.gov
cgilbert@le.utah.gov
ahouston@le.utah.gov

Tyler R. Green (10660)
CONSOVOY MCCARTHY PLLC
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
(703) 243-9423
tyler@consovoymccarthy.com

*Counsel for Amicus Utah Legislature*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AMELIA POWERS GARDNER, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>LIEUTENANT GOVERNOR DEIDRE HENDERSON, in her official capacity.<br><br>*Defendant.*<br><br>――――――――<br><br>LEAGUE OF WOMEN VOTERS OF UTAH, *et al.*,<br><br>*Proposed Intervenors.* | Case No. 2:26-cv-00084<br>Circuit Judge Timothy M. Tymkovich<br>District Judge Robert J. Shelby<br>District Judge Holly L. Teeter<br><br><br>Magistrate Judge Jared C. Bennett |

**MEMORANDUM OF UTAH LEGISLATURE AS**
***AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Introduction & Interest of Proposed *Amicus* ....................................................................... 1

Background ............................................................................................................................. 2

        A.    After a redistricting-related citizens' initiative passes by a slim margin, the Legislature enacts S.B. 200 to mitigate constitutional concerns. ................................................................................................... 2

        B.    The Legislature enacts the 2021 Congressional Plan, and state-court plaintiffs sue. .................................................................................. 4

Argument ................................................................................................................................. 9

   I.    The state court's order permanently enjoining the use of the Legislature's 2021 Congressional Plan exceeds the bounds of ordinary judicial review ...... 9

Conclusion ............................................................................................................................ 15

i

**INTRODUCTION & INTEREST OF PROPOSED *AMICUS***

The U.S. Constitution delegates the power to regulate federal elections to state legislatures, subject only to congressional oversight. U.S. Const. art. I, §4. That includes congressional redistricting. *See Moore v. Harper*, 600 U.S. 1, 26 (2023). Likewise, the Utah Constitution expressly vests in "the Legislature" the duty to "divide the state into congressional, legislative, and other districts." Utah Const. art. IX, §1. Because Plaintiffs' motion for a preliminary injunction seeks to remedy the unconstitutional infringement of that redistricting authority, the Utah Legislature respectfully submits this brief as *amicus curiae* in support of that motion.

In 2020, the Utah Legislature passed legislation by a nearly unanimous vote to govern the redistricting process ("S.B. 200"). A year later, the Census Bureau released 2020 census data, and the Legislature enacted Utah's 2021 Congressional Plan ("H.B. 2004"). Years of litigation in state court then ensued after proposed intervenors here (state-court plaintiffs) sued to enjoin the enforcement of S.B. 200's redistricting processes and, separately, the use of the districts themselves. Late last August, the state district judge in that case enjoined S.B. 200, finding that an earlier voter-passed initiative ("Proposition 4") prevented the Legislature from setting its own redistricting priorities and procedures embodied in S.B. 200. But the court didn't stop there. It also *permanently* enjoined the Lieutenant Governor from conducting elections using the 2021 districts—even though the lawfulness of that plan has never been litigated and it has never been held unlawful. The court then replaced the 2021 congressional districts with districts of its choosing—those offered by proposed intervenors with the help of academics in Delaware and Michigan.

The Utah Legislature has an acute interest in ensuring state courts do not "transgress the ordinary bounds of judicial review such that they arrogate to themselves the power vested in state legislatures to regulate federal elections." *Moore*, 600 U.S. at 36. The state trial court's order permanently enjoining the 2021 Plan—based on its finding that a *different* law violates the state constitution—violates the federal Elections Clause as far "exceed[ing] the bounds of ordinary judicial review." *Id.* at 36. To "safeguard limits imposed by the Federal Constitution" against such "free rein," *id.* at 34-35, this Court should grant Plaintiffs' motion for a preliminary injunction.

## BACKGROUND

**A.  After a redistricting-related citizens' initiative passes by a slim margin, the Legislature enacts S.B. 200 to mitigate constitutional concerns.**

In the 2018 Utah general election, "Proposition 4" was on the ballot for Utah voters. Proposition 4 was a redistricting-related citizens' initiative. *See* 2018 Voter Information Pamphlet ("VIP") at 78-83, Utah Office of the Lieutenant Governor, bit.ly/3ZqCXCP. Its self-described purpose was to stop "gerrymandering," install an "Independent Redistricting Commission," and impose mandatory redistricting criteria and procedural requirements on the Utah Legislature. VIP at 76.

If the initiative passed, it would become a *statute*, not a constitutional amendment. Unlike other States, the Utah Constitution does not permit constitutional amendment by initiative. *See LWV of Utah v. Utah State Legislature*, 554 P.3d 872, 909 (Utah 2024). Utah citizen initiatives may implement only "*statutory* government reforms" "within the bounds of the Constitution." *Id.* at 891 n.16.

2

Proposition 4 passed by a 0.6% margin, with a majority of voters in 25 of Utah's 29 counties voting *against* it.[1] Proposition 4 imposed *procedural*[2] and *substantive*[3] redistricting standards on the Utah Legislature, enforceable in the courts through a private right of action and fee-shifting for plaintiffs. Constitutional concerns loomed. Among others, opponents expressed concerns that Proposition 4 violated Article IX of the Utah Constitution, which vests the Legislature with "the *exclusive* authority over the redistricting process" and that an initiative cannot "grant this legislative authority to other branches of [the state] government" without a constitutional amendment. VIP at 77.

After Proposition 4's photo finish, its sponsors (known as Better Boundaries) and a bipartisan group of legislators negotiated legislation to respond to those constitutional concerns. Those efforts culminated in S.B. 200, jointly announced by Proposition 4's sponsors and Utah legislators as a compromise bill amending Proposition 4 that would alleviate constitutional concerns while leaving in place the "valuable" "advisory maps" from an advisory

---

[1] 2018 Election Results are publicly available at vote.utah.gov/wp-content/uploads/2023/09/2018-General-Election-Canvass.pdf.

[2] *See, e.g.*, Utah Code §20A-19-204(2) (2018) (mandating the Legislature take an up-or-down vote on maps proposed by the independent redistricting commission without change or amendment); *id.* §20A-19-204(4) (2018) (requiring the Legislature to make any redistricting plan available for public comment for at least 10 days before enactment); *id.* §20A-19-204(5)(a) (2018) (requiring the Legislature, if it rejects a commission's proposal, to issue "a detailed written report" explaining how the enacted plan better satisfied Proposition 4 than the commission's plan).

[3] *See, e.g.*, Utah Code §20A-19-103(3) (2018) (prohibiting the Legislature from "purposefully or unduly" favoring a political party or candidate in redistricting); *id.* §20A-19-103(2) (2018) (requiring the Legislature to adhere to substantive redistricting criteria in a specific "order of priority" and "to the greatest extent practicable," with minimizing the division of municipalities at the top, behind complying with federal law); *id.* §20A-19-103(4) (2018) (mandating that the Legislature use "judicial standards and the best available data and scientific and statistical methods" to ensure compliance with Proposition 4's ban on undue partisan favoritism).

3

Independent Redistricting Commission. *See* Bethany Rodgers, *Utah lawmakers, Better Boundaries explain how they've compromised on the anti-gerrymandering law*, Salt Lake Trib. (Feb. 27, 2020), bit.ly/4kwDcGb. Those maps would provide "a potential contrast and check with the district designs ultimately adopted by the Legislature." *Id.*

The Utah Legislature passed S.B. 200 by a nearly unanimous vote with bipartisan support.[4] *See LWV*, 554 P.3d at 883. S.B. 200 funded and retained the independent redistricting commission and required the Legislature to provide "reasonable time" for the commission to fulfill its role and for public comment before the Legislature enacted a redistricting plan. *Id.* §20A-20-303(3)-(4) (2020). The Legislature was permitted, but not required, to vote on commission proposals. *Id.* §20A-20-303(5) (2020). Proposition 4's sponsors praised S.B. 200 as "a reasonable approach to redistricting reform" that gave "the Legislature … the final say" while "preserv[ing] the independence of the Commission and maintain[ing] the public's voice in the redistricting process." Better Boundaries, *Why is an independent redistricting commission good for Utah?*, perma.cc/GP6C-U334.

### B. The Legislature enacts the 2021 Congressional Plan, and state-court plaintiffs sue.

In 2021, after the Census Bureau released 2020 U.S. Census data, the Legislature followed S.B. 200's procedures and adopted a new congressional redistricting plan. H.B. 2004, Utah Legislature, bit.ly/4hCfVAE. In March 2022, state-court plaintiffs sued the Utah Legislature, various legislators, and the Lieutenant Governor.

---

[4] S.B. 200 Redistricting Amendments, Utah Legislature, bit.ly/3NWJ4sv.

Counts I through IV of their complaint challenged the congressional districts themselves, enacted in H.B. 2004. Those counts alleged that the 2021 congressional districts were an illegal partisan gerrymander under the Utah Constitution. Still today, there has been no decision on those counts by any court. *See LWV*, 554 P.3d at 921 (retaining jurisdiction over Counts I through IV without deciding them).

Count V asked to enjoin a different law—the redistricting priorities and procedures enacted in S.B. 200. Plaintiffs alleged that, by amending Proposition 4, S.B.200 violated their right to "'alter or reform' their government" via a statutory citizens' initiative. *LWV*, 554 P.3d at 887 (addressing Utah Const. art. I, §2).

The district court initially dismissed Count V (the challenge to S.B. 200). The court adhered to the conventional wisdom that statutes can be freely amended or repealed, whether enacted by a legislature or by a citizens' initiative. *See* Utah D.Ct.Doc. 140, at 58-59 (citing *Grant v. Herbert*, 449 P.3d 122 (Utah 2019); *Kadderly v. City of Portland*, 74 P. 710, 720 (1903)). But the Utah Supreme Court rewrote that conventional wisdom in an interlocutory appeal decided in July 2024. The Court "introduced [a] formulation for the first time" regarding citizens' initiatives. *LWV*, 554 P.3d at 892. The Court held that if an initiative is one that "alter[s] or reforms" the government, the Legislature cannot "impair" it unless it can satisfy "strict scrutiny." *Id.* at 909-10, 917. Still, the Court repeated about a dozen times that initiatives cannot "amend the Utah Constitution" or "violate any other provision of the constitution." *Id.* at 909. The Court remanded for the district court to apply that new "formulation." *Id.* at 892. The Utah Supreme Court's *LWV* decision has been widely recognized to be a "new

5

interpretation of the state Constitution" that "shift[ed the] status quo" and introduced "a wholly new class of laws." Brigham Tomco, *How we got here: The 8-year fight over political power in Utah*, Deseret News (Feb. 8, 2026), bit.ly/46xLUhn.

In the remanded proceedings, state-court plaintiffs moved for summary judgment on only Count V, challenging S.B. 200 and not the districts themselves.[5] *See* Ex. B, MSJ Op. at 2 (Utah D.Ct.Doc. 470). In January 2025, the summary judgment motion was briefed and argued and ready for a decision. Seven months after argument, in August 2025, the court granted summary judgment for Plaintiffs on Count V. The court concluded that the Legislature could not set its own redistricting priorities and procedures. *Id.* at 61-62. The court declared S.B. 200 invalid and resurrected Proposition 4 wholesale, even portions that Plaintiffs did not ask to resurrect. *Id.* at 63-68.

But the court didn't stop there. Though Count V challenged only S.B. 200's redistricting priorities and procedures, the court permanently enjoined the use of the congressional districts. Again, those congressional districts were enacted as part of a different law (H.B. 2004) that still today has never been held unlawful. The trial court held that state-court plaintiffs' challenge to S.B. 200 was close enough—H.B. 2004 should be enjoined as a "fruit" of S.B. 200. *Id.* at 70-74.

The trial court retained jurisdiction to replace the 2021 districts with districts of its choosing. The court ordered the Legislature to "enact[] a remedial congressional redistricting

---

[5] After moving for summary judgment, state-court plaintiffs amended their complaint to add new counts challenging the validity of the 2021 Congressional Plan as violations of Proposition 4's requirements. FAC ¶¶320-54 (Utah D.Ct.Doc. 298). Those counts have never been decided by any court.

6

map in conformity with Proposition 4's mandatory redistricting standards and requirements," or else the court would select a proposed remedy that did so.[6] *Id.* at 76. The court later clarified that, while it was resurrecting Proposition 4 wholesale, the remedial process it ordered need not comply with all of Proposition 4's procedural requirements, so it issued an order dispensing with most of those requirements. Utah D.Ct.Doc. 506.

Given the seven-month delay and the lack of time for ordinary remedial proceedings, the Legislature immediately asked the Utah Supreme Court for a stay pending appeal.[7] *LWV v. Utah State Legislature*, 579 P.3d 287, 294-95 (Utah 2025). The Legislature explained there was no time for further proceedings, given the Lieutenant Governor's November deadline for final districts. The Legislature also highlighted the inconsistency of the ruling—that the 2021 districts had to be enjoined because they did not follow Proposition 4's procedures, but remedial districts would soon be selected in a process that did not follow Proposition 4's procedures. The Supreme Court denied relief without passing on any merits issues that are relevant here. *Id.* The Legislature then participated in lightning-fast remedial proceedings, enacting substitute

---

[6] The Legislature has disputed—and will continue to dispute—that Proposition 4 permits a state trial court to order a remedial hearing to create a court-ordered map. Proposition 4, at most, contemplates that a court would issue an injunction against using a map, Utah Code §20A-19-301(2), and that the Legislature would then enact any remedial or other maps, *id.* §20A-19-102(3), (4); *compare* Tenn. Code Ann. §20-18-105(b) (expressly authorizing a court-imposed map in limited circumstances).

[7] In light of the Lieutenant Governor's then-imminent November 10, 2025, deadline for a redistricting map, the Legislature focused its limited resources on challenging the court's remedial ruling while preserving its merits challenge for a post-judgment appeal.

7

redistricting legislation[8] and participating in the typical battle-of-the-experts, culminating in an evidentiary hearing.

With only minutes to go on November 10, 2025—the Lieutenant Governor's stated deadline for final districts—the trial court rejected the Legislature's substitute redistricting legislation and instead ordered the state-court plaintiffs' proposed districts to be used in "all future congressional elections in Utah … until another validly enacted legislative plan takes effect or as otherwise ordered by an appellate court." *See* Ex. C, Nov. 10, 2025, Remedial Order at 89 (Utah D.Ct.Doc. 735). The timing of the trial court's ruling left the Legislature no chance to seek meaningful appellate review from the Utah Supreme Court or the U.S. Supreme Court.

On December 9, the Governor convened a special session of the Legislature to push back congressional election deadlines. S.B. 2001, Utah Legislature, bit.ly/4rL9hwj. This change provided more time for the Legislature to appeal as of right, an option otherwise unavailable due to the trial court's delay. The Legislature immediately moved for entry of final judgment, and, alternatively, for a certification of partial final judgment on state-court plaintiffs' Count V under Utah Rule of Civil Procedure 54(b). *See* Ex. D, Certification Order (Utah D.Ct.Doc. 822). The day after Christmas, the trial court certified an interlocutory appeal of its August 2025 order. It declared S.B. 200 "void ab initio," "permanently enjoin[ed]" the defendants from using the 2021 Congressional Plan, and declared that Proposition 4 is "the law on redistricting in Utah." *Id.* The Legislature noticed its appeal to the Utah Supreme Court on January

---

[8] The substitute legislation provides that the 2021 districts will govern if the Legislature prevails on appeal. *See* Utah Code §20A-13-101.1(2)(b)(ii).

7, 2026. State-court plaintiffs objected to partial final judgment before the trial court and have moved the Utah Supreme Court to summarily dismiss the appeal for lack of jurisdiction. On January 23, the Legislature moved the Utah Supreme Court to stay the injunction against the 2021 Congressional Plan pending appeal and requested relief from that court by February 20.

## ARGUMENT

### I. The state court's order permanently enjoining the use of the Legislature's 2021 Congressional Plan exceeds the bounds of ordinary judicial review.

Plaintiffs' Elections Clause claim here arises from the state court's order enjoining the 2021 Congressional Plan as a remedy for its finding that *a different law* violated the Utah Constitution. *See* Prelim. Inj. Mot. at 3, 7, 8, 21, 22 n.5, 23, 24 n.6. The federal Elections Clause violation is clear: the state court "exceeded the bounds of ordinary judicial review" of state law by permanently enjoining the 2021 Congressional Plan *even though* the state-court plaintiffs' claims challenging that plan were not before the court—and even though no faults with the 2021 Plan have been litigated or found. *Moore*, 600 U.S. at 36. To "safeguard" the U.S. Constitution's "role specifically reserved to state legislatures," this Court should grant Plaintiffs' motion for a preliminary injunction. *Id.* at 35, 37.

The U.S. Constitution "entrusts state legislatures with the primary responsibility for drawing congressional districts." *Alexander v. S.C. NAACP*, 602 U.S. 1, 6 (2024); *see also Rucho v. Common Cause*, 588 U.S. 684, 699 (2019) ("The Framers were aware of electoral districting problems" and "settled" on "assigning the issue to the state legislatures."). Article I, Section 4, Clause 1—the federal Elections Clause—tasks "the Legislature" specifically with congressional redistricting. While "the Elections Clause does not exempt state legislatures from the

9

ordinary constraints imposed by state law, state courts do not have free rein." *Moore*, 600 U.S. at 34. When reviewing redistricting legislation, state courts "may not transgress the ordinary bounds of judicial review such that they arrogate to themselves the power vested in state legislatures to regulate federal elections." *Id.* at 36.

Remedial proceedings in redistricting cases are not exempt from the same remedial rules in other cases—narrow in scope, with remedies tailored to any violation found, so that they remain within the limits of "ordinary judicial review." *Id.* Federal and state remedial principles require courts to tailor any remedy to a proven constitutional violation. *See Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328 (2006) (courts must "limit the solution to the problem"); *Citizen Band Potawatomi Indian Tribe of Okla. v. Okla. Tax Comm'n*, 969 F.2d 943, 948 (10th Cir. 1992) (noting "the well-settled principle that an injunction must be narrowly tailored to remedy the harm shown"); *Spackman v. Bd. of Educ. of Box Elder Cnty. Sch. Dist.*, 16 P.3d 533, 539 n.11 (Utah 2000) (describing "precisely tailored" injunctive relief for procedural due process violations); *Kingston v. Kingston*, 532 P.3d 958, 962 (Utah 2022) (remanding for district court to more narrowly tailor remedy to harms identified).

Those rules follow from basic "principles of equity jurisprudence" dictating that "the scope of injunctive relief is dictated by the extent of the violation established." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). When "a less drastic remedy" is "sufficient to redress [Plaintiffs'] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010). Nor is an injunction warranted for "merely trifling" violations, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982),

or where the violation was "on the statutory procedure rather than on the underlying substantive policy" of the law, *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 544 (1987). For example, in recent North Carolina redistricting litigation, the U.S. Supreme Court reversed a redistricting remedy in part as overly broad. *See North Carolina v. Covington*, 585 U.S. 969, 978-79 (2018) (per curiam). There, plaintiffs challenged the districts themselves, and still the Court held that the remedy went too far in redrawing districts; the Court explained that any changes must be limited to redressing the racial gerrymandering claim plaintiffs had proved, not other supposed legal violations unproved. *Id.*

Here, the state court invalidated the 2021 Plan even though no court has ever held that the districts themselves violated any federal or state law. Absent some constitutional defect in the districts themselves, the court did "not have free rein" to redraw congressional districts and thereby remove the redistricting power from the Legislature. *Moore*, 600 U.S. at 34.[9]

***First***, state-court plaintiffs' Count V challenged the validity of S.B. 200. It never encompassed a challenge to the 2021 Congressional Plan—a different law, enacted as H.B. 2004. In the complaint's allegations as to Count V, *not once* did Plaintiffs refer to the "2021 Congressional Plan." Compl. ¶¶310-19 (Utah D.Ct.Doc. 1). State-court plaintiffs' representations to the Utah Supreme Court repeatedly confirmed this; they said that "If certain aspects of Proposition 4 become operative, Plaintiffs will amend their complaint to allege the statutory private right of action contemplated under Proposition 4." Pls. Suppl. Br. 19, *LWV v. Utah State*

---

[9] The Legislature does not concede and continues to contest that the Utah Constitution permits judicial review of partisan gerrymandering claims.

11

*Legislature*, No. 20220991-SC (July 31, 2023); *see also* Oral Arg. at 2:29:01, *LWV v. Utah State Legis.*, 2024 UT 21 (No. 20220991-SC), bit.ly/3GalfwG (state-court plaintiffs' counsel noting that they would have to "amend our complaint to add … the statutory cause of action challenging the map under the Prop 4 … standards that the legislature was obligated to apply"); *id.* at 2:31:00 (acknowledging that "at the moment, there is not a challenge that says that" H.B. 2004 fails to comply with Proposition 4 "because the law's not in effect"). Based on those representations, the Utah Supreme Court observed that state-court plaintiffs "may bring … an amended claim" invoking Proposition 4's private cause of action "on remand in the event that Count V is reinstated." *LWV*, 2024 UT 21, ¶222. Indeed, when state-court plaintiffs amended their complaint, Count V did not change; Count V said nothing about the "2021 Congressional Plan." FAC ¶¶310-19 (Utah D.Ct.Doc. 297). That's why state-court plaintiffs added Counts VI and VII, which challenged the 2021 Congressional Plan under Proposition 4. The state court's remedy of permanently enjoining the 2021 Plan even though the claims against it were still pending at the motion-to-dismiss stage exceeds the "ordinary bounds of judicial review." *Moore*, 600 U.S. at 36.

    ***Second***, the state court's remedial order precluded the Legislature from litigating the merits of the 2021 Congressional Plan's validity *and* the proper remedy for any defect in the 2021 Congressional Plan. It's a foundational rule that a permanent injunction should "[o]rdinarily" be "granted only after a full trial on the merits." *Birch Creek Irrigation v. Prothero*, 858 P.2d 990, 993-94 (Utah 1993); *see also Univ. of Texas v. Camenisch*, 451 U.S. 390, 396-97 (1981). To the extent that state-court plaintiffs prevailed on Count V, the most far-reaching relief that

12

state-court plaintiffs theoretically could have obtained should have been the revival of Proposition 4 and invalidation of S.B. 200.[10] At that point, litigation under Counts VI and VII should have commenced. Yet the district court skipped that entire process and jumped straight to enjoining the 2021 Congressional Plan before there had been any fact or expert testimony or any briefing on the 2021 Plan's compliance with the Utah Constitution or Proposition 4. The district court simply assumed a legal defect in Utah's 2021 congressional districts without state-court plaintiffs ever proving any such defect exists or demonstrating that they would prevail on Counts VI and VII. For instance, the district court asserted that "Plaintiffs did establish undisputed facts that [the 2021 Plan] did not comply with the procedural requirements of Proposition 4," Ex. B at 73, even though the state-court plaintiffs' claims against that Plan had not advanced past the pleading stage.

The state court short-circuited this inquiry by foreclosing litigation on what the proper remedy should be for any Proposition 4 violations. *See NRDC v. Texaco Ref. & Mktg., Inc.*, 906 F.2d 934, 937 (3d Cir. 1990) (incorrect to determine that "injunction should automatically follow upon a finding of statutory violation"); *Salt Lake County v. Kartchner*, 552 P.2d 136, 138 (Utah 1976) (injunction not appropriate "in every type and circumstance of violation"); *United States v. Ballin*, 144 U.S. 1, 9 (1892) (refusing to enjoin legislation based on arguments that Congress passed that legislation without a quorum). Nor was the district court correct to

---

[10] The Legislature now has an appeal pending in state court about Proposition 4's constitutionality and about the serious and separate Elections Clause problems arising from the state district court's decision that the Legislature could not amend Proposition 4's redistricting priorities and processes by passing S.B. 200—just as the Legislature can amend any other statute.

13

enjoin the 2021 Congressional Plan as the "fruit" of S.B. 200. Ex. B at 70-74. With or without S.B. 200, the Legislature has the independent constitutional authority to enact congressional maps under the federal Elections Clause and Article IX of the Utah Constitution. The state trial court "arrogate[d]" to itself "the power vested" in the Utah Legislature "to regulate federal elections" by enjoining the 2021 Congressional Plan when the only definitive finding it made was that S.B. 200—a different law—was invalid. *Moore*, 600 U.S. at 36.

***Third***, state-court plaintiffs have argued in state court that any departures from Proposition 4's *procedures* are serious enough to justify the district court's sweeping injunction. The three procedures state-court plaintiffs have relied on are the mandatory up-down vote, the 10-day notice requirement, and the written report rule. *See supra* at 3 n.2. Even if noncompliance with those rules had been litigated and proven, the court never explained why a permanent injunction that categorically prevents the State from using the 2021 Congressional Plan was the proper remedy for any such violations. Principles of equity command otherwise. Any injunctive relief must be "precisely tailored," allowing the Legislature "to redo correctly the 'procedure' that allegedly lacked the mandated safeguards." *Spackman*, 16 P.3d 533, 539 n.11.

And if Proposition 4's procedural requirements are so important, then the trial court's order to use Plaintiffs' Map 1 should inflict a similar, intolerable violation of the Utah Constitution's "alter or reform" right. The district court held, when enjoining the 2021 Plan, that "Proposition 4's procedural requirements are so integral to the governmental reforms it put into place that any map enacted in their absence is, itself, a violation of the people's right to alter and reform their government." Ex. B at 73. To the court (at that time), whether the 2021

14

Plan "also violated" Proposition 4's substantive standards was "irrelevant." *Id.* But days later, the court followed state-court plaintiffs' lead and determined that those "integral" procedures would not apply to the remedial proceedings where the state trial court ultimately picked state-court plaintiffs' Map 1 as Utah's congressional districts. *See* Utah D.Ct.Doc. 506. If those procedural requirements were as "integral" to the governmental reforms as the district court thought, the district court's remedial order that summarily dispensed with almost all of them also cannot stand. Nor can Plaintiffs' Map 1, which was drawn by the state-court plaintiffs' out-of-state expert and adopted without following Proposition 4's procedural requirements.

In short, state-court plaintiffs cannot have it both ways. If a map adopted in the remedial phrase without following Proposition 4's procedures is permissible, the Legislature's alleged failure to follow those procedures could not be enough to justify enjoining the 2021 Plan. Neither state-court plaintiffs nor the state court have ever explained this discrepancy. This all confirms that a permanent injunction against the 2021 Congressional Plan was not the "ordinary" way to rectify any departures from those provisions. *Moore*, 600 U.S. at 36.

## CONCLUSION

The Court should grant Plaintiffs' motion for a preliminary injunction.

Dated: February 13, 2026

Respectfully submitted,

Victoria Ashby  
Christine R. Gilbert  
Alan R. Houston  
OFFICE OF LEGISLATIVE RESEARCH  
  AND GENERAL COUNSEL  
Utah State Capitol Complex,  
House Building, Suite W210  
Salt Lake City, UT 84114-5210

*/s/ Tyler R. Green*  
Tyler R. Green (10660)  
CONSOVOY MCCARTHY PLLC  
222 S. Main Street, 5th Floor  
Salt Lake City, UT 84101  
(703) 243-9423  
tyler@consovoymccarthy.com

15

Telephone: 801-538-1032
vashby@le.utah.gov
cgilbert@le.utah.gov
ahouston@le.utah.gov

*Counsel for Utah Legislature*

## CERTIFICATE OF SERVICE

I certify that I filed this document through the CM/ECF system.

*/s/ Tyler R. Green*

## CERTIFICATE OF PAGE AND WORD LIMIT

I certify that this brief was prepared with Garamond size 13 and does not exceed 25 pages or 7,500 words, per District of Utah Local Rule of Civil Practice 7-6(c)(1)-(2)

*/s/ Tyler R. Green*