# EXHIBIT A

Case 2:26-cv-00084-RJS-JCB Document 63-1 Filed 02/13/26 PageID.1346 Page 1 of 14

James K. Rogers (Utah Bar No. 18783)
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave. SE #231
Washington, DC 20003
Phone: (202) 964-3721
james.rogers@aflegal.org

*Counsel for Proposed Amicus*
*America First Legal Foundation*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| AMELIA POWERS GARDNER, *et al.*, *Plaintiffs*, v. LIEUTENANT GOVERNOR DEIDRE HENDERSON, in her official capacity, *Defendant*. ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ LEAGUE OF WOMEN VOTERS OF UTAH, *et al.*, Proposed Intervenors. | Case No. 2:26-cv-00084 Circuit Judge Timothy M. Tymkovich District Judge Robert J. Shelby District Judge Holly L. Teeter Magistrate Judge Jared C. Bennett |

**[PROPOSED] MEMORANDUM OF AMERICA FIRST LEGAL FOUNDATION AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ................................................................. 3

INTEREST OF PROPOSED *AMICUS* ............................................................................ 3

BACKGROUND ................................................................................................................ 3

ARGUMENT ..................................................................................................................... 6

    I.    The use of Map 1 violates the Elections Clause and must be enjoined. ........... 6

    II.   2 U.S.C. § 2a(c) requires the 2021 Map to remain in effect until the Utah Legislature enacts a new congressional map. ....................................................... 8

CONCLUSION ................................................................................................................ 12

CERTIFICATE OF SERVICE ........................................................................................ 13

LOCAL RULE 7-6(c) CERTIFICATION ....................................................................... 13

**CORPORATE DISCLOSURE STATEMENT**

America First Legal Foundation has no parent corporation nor any shares that could be owned by a publicly held corporation. *See* Fed. R. Civ. P. 7.1(a).

**INTEREST OF PROPOSED *AMICUS***

America First Legal Foundation ("AFL") is a nonprofit organization dedicated to promoting the rule of law in the United States and defending individual rights guaranteed under the Constitution. AFL routinely participates in cases regarding the Elections Clause and 2 U.S.C. § 2a(c). *See, e.g.*, Brief for America First Legal Foundation as Amicus Curiae in Support of Petitioners, *Moore v. Harper*, 2022 WL 4117469 (No. 21-1271). AFL has a substantial interest in this case because the state judiciary has flouted the Elections Clause of the U.S. Constitution and 2 U.S.C. § 2a(c) by involving itself in a congressional redistricting dispute.

No counsel for any party authored the brief in whole or in part, and no entity or person aside from AFL, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

**BACKGROUND**

In 2018, Utah voters approved Proposition 4, a statutory ballot initiative intended to curb partisan gerrymandering, establish an Independent Redistricting Commission, and impose certain redistricting criteria and procedures on the Utah Legislature. Because Utah citizen initiatives may implement only "*statutory* government reforms," Proposition 4 became a statute when passed, rather than a

3

constitutional amendment. *See League of Women Voters of Utah v. Utah State Legislature*, 554 P.3d 872, 891 n.16 (Utah 2024).

In 2020, the Utah Legislature enacted S.B. 200, which amended Proposition 4 to address perceived constitutional concerns. *See* S.B. 200, 63d Leg., 2020 Gen. Sess. (Utah 2020). Following the release of the 2020 census data, the Legislature followed S.B. 200's new procedures to adopt a new congressional map. *See* H.B. 2004, 2021 Leg., 2d Spec. Sess., (Utah 2021), https://perma.cc/N9DC-XK3T (the "2021 Map").

In March 2022, a group of state-court plaintiffs sued the Legislature, individual legislators, and the Lieutenant Governor. Counts I through IV challenged the congressional districts created by H.B. 2004, alleging that they constituted an unconstitutional partisan gerrymander under the Utah Constitution. To date, no court has ruled on the merits of those claims. Count V asked the court to enjoin a different law—S.B. 200—on the ground that the new procedures in S.B. 200 violated voters' right to alter or reform their government through a statutory initiative.

The district court initially dismissed Count V. But in July 2024, the Utah Supreme Court articulated a new framework governing legislative amendments to citizen initiatives. *See League of Women Voters of Utah*, 554 P.3d at 892. The Court held that where an initiative "alters or reforms" government, the Legislature may not "impair" it unless the amendment survives strict scrutiny. *Id.* at 909–10, 917.

On remand, the state-court plaintiffs moved for summary judgment solely on Count V. In August 2025, Utah state district Judge Dianna M. Gibson granted that motion, declared S.B. 200 invalid, and reinstated Proposition 4 in its entirety. In

4

doing so, however, Judge Gibson also purported to enjoin the use of the 2021 Map, despite not finding it unlawful in any way. The court reasoned that because the 2021 Map was enacted pursuant to procedures later deemed invalid, it was a "fruit" of S.B. 200 and could therefore be enjoined. *See League of Women Voters of Utah v. Utah State Legislature*, 2025 WL 2644292 (Utah D.Ct. Aug. 25, 2025).

Judge Gibson ordered the Legislature to submit new congressional maps within 30 days, while simultaneously directing the League of Women Voters and other private plaintiffs to submit their own proposed maps. The Legislature passed S.B. 1011 and S.B. 1012. The plaintiffs proposed their own map: Map 1. Map 1 dramatically reconfigured existing districts, relocating approximately half a million voters from a single county into new congressional districts. Meanwhile, Utah's Lieutenant Governor set midnight on November 10, 2025, as the deadline for new redistricting maps for the 2026 elections.

On the evening of November 10, 2025, Judge Gibson rejected the Legislature's substitute maps and ordered Map 1 to be used in all future congressional elections, unless and until a validly enacted legislative plan takes effect or an appellate court orders otherwise. The timing of that ruling effectively foreclosed meaningful appellate review by the Utah Supreme Court or the U.S. Supreme Court before impending election deadlines.

On December 9, 2025, the Utah Governor convened a special session of the Legislature to adjust the congressional election deadlines. Those changes preserved the Legislature's ability to seek appellate review as of right. The Utah Legislature

5

moved for entry of final judgment, or alternatively for certification of a partial final judgment on state-court plaintiffs' Count V under Utah Rule of Civil Procedure 54(b). On December 26, 2025, the trial court certified an interlocutory appeal of its August 2025 order declaring S.B. 200 void, permanently enjoining defendants from using the 2021 Map, and declaring Proposition 4 to be "the law" in Utah. *League of Women Voters of Utah v. Utah State Legislature*, No. 220901712 (Utah D.Ct. Dec. 26, 2025) (unpublished order). The Legislature noticed its appeal to the Utah Supreme Court on January 7, 2026. State-court plaintiffs opposed entry of partial final judgment and have moved the Utah Supreme Court to summarily dismiss the appeal for lack of jurisdiction. On January 23, 2026, the Legislature moved the Utah Supreme Court to stay the injunction against the 2021 Congressional Plan pending appeal and requested relief by February 20.

Judge Gibson's order supplants the Legislature's duly enacted congressional plan with a map drawn by private litigants and adopted without the ordinary legislative process or appellate review. Under these circumstances, the appropriate relief is to enjoin the Lieutenant Governor from implementing the unconstitutional map and either permit the 2021 Map to remain in effect during the pendency of appellate review or remand the matter to the Utah Legislature to enact a new plan.

## ARGUMENT

### I.   The use of Map 1 violates the Elections Clause and must be enjoined.

The Elections Clause vests each State's "Legislature" with exclusive authority over the "Times, Places and Manner" of congressional elections. U.S. CONST. art. I,

§ 4, cl. 1. That grant of authority is broad and undisputedly encompasses the power to draw federal congressional districts. *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 793 (2015). Consistent with this constitutional allocation of power, the people of Utah have likewise provided that its "*Legislature* shall divide the state into congressional, legislative, and other districts." UTAH CONST. art. IX, § 1 (emphasis added).

The "exercise of [legislative] authority in the context of the Elections Clause is subject to the ordinary constraints on lawmaking in the state constitution." *Moore v. Harper*, 600 U.S. 1, 30 (2023). But "state courts do not have free rein." *Id.* at 34. For example, "state courts may not transgress the ordinary bounds of judicial review such that they arrogate to themselves the power vested in state legislatures to regulate federal elections." *Id.* at 36.

Map 1 was drawn and proposed by private activist organizations, selected by a state court, and acquiesced in by the Lieutenant Governor. None of these actors, individually or collectively, possesses the constitutional authority to enact a congressional districting plan. *See* U.S. CONST. art. I, § 4, cl. 1. Because Map 1 did not originate from, nor was it enacted by, the Utah Legislature, its use in federal elections is constitutionally unauthorized.

When a congressional map is unconstitutional, the remedy is straightforward: the map must be enjoined and the matter returned to the state Legislature—the only body vested with authority to enact a lawful replacement. A court may review legislative enactments for compliance with constitutional limits, but it may not

7

substitute its own preferred map for that of the Legislature or permanently impose a judicially selected plan for future federal elections.

Judge Gibson's purported imposition of Map 1 for Utah's 2026 congressional elections exceeds the bounds of judicial authority recognized by the Elections Clause and *Moore*. That action, therefore, cannot stand. This Court should enjoin the Lieutenant Governor from implementing Map 1 and order the 2021 Map be used, as it was passed by the Utah Legislature and has not been found to violate any law, or remand the matter to the Utah Legislature to enact a new map.

To obtain preliminary injunctive relief, Plaintiffs need not prove that their interpretation will ultimately prevail; they must demonstrate only a *likelihood* of success on the merits. *See Coal. of Concerned Citizens to Make Art Smart v. Fed. Transit Admin.*, 843 F.3d 886, 901 (10th Cir. 2016) (explaining that "'[a]ll courts agree that plaintiff must present a prima facie case but need not show a certainty of winning'"). Plaintiffs have made that showing here. Accordingly, this Court should enter a preliminary injunction barring Defendant from implementing Map 1—or any congressional map not enacted by the Utah Legislature as required by Article IX of the Utah Constitution.

## II. 2 U.S.C. § 2a(c) requires the 2021 Map to remain in effect until the Utah Legislature enacts a new congressional map.

After delegating authority to "the Legislature" in "each State" to regulate elections, the Constitution reserves to Congress the authority to "any time by Law make or alter such Regulations, except as to the Places of chusing Senators." U.S. CONST. art. I, § 4, cl. 1. Exercising its authority under the Elections Clause, Congress

8

has enacted a statutory framework governing the conduct of congressional elections when a state Legislature fails to enact a lawful redistricting plan.

That framework is set forth in 2 U.S.C. § 2a(c), which prescribes the "manner" in which Representatives are to be elected when a State has not redistricted "in the manner provided by the law thereof." 2 U.S.C. § 2a(c). The statute provides:

> Until a State is redistricted in the manner provided by the law thereof after any apportionment, the Representatives to which such State is entitled under such apportionment shall be elected in the following manner:
>
> (1) If there is no change in the number of Representatives, they shall be elected from the districts then prescribed by the law of such State, and if any of them are elected from the State at large they shall continue to be so elected;
>
> (2) if there is an increase in the number of Representatives, such additional Representative or Representatives shall be elected from the State at large and the other Representatives from the districts then prescribed by the law of such State;
>
> (3) if there is a decrease in the number of Representatives but the number of districts in such State is equal to such decreased number of Representatives, they shall be elected from the districts then prescribed by the law of such State;
>
> (4) if there is a decrease in the number of Representatives but the number of districts in such State is less than such number of Representatives, the number of Representatives by which such number of districts is exceeded shall be elected from the State at large and the other Representatives from the districts then prescribed by the law of such State; or
>
> (5) if there is a decrease in the number of Representatives and the number of districts in such State exceeds such

9

> decreased number of Representatives, they shall be elected from the State at large.

2 U.S.C. § 2a(c). Section 2a(c) thus establishes clear default rules that states and state judiciaries are constitutionally obligated to follow under the Elections Clause. *See* U.S. CONST. art. I, § 4, cl. 1. Those default rules provide that if the Legislature does not draw a new map and the number of Representatives has not changed, congressional elections proceed with the previous election's district maps.

Applying those rules here, if the Utah Legislature does not enact a new congressional map after Map 1 is enjoined, the 2026 congressional elections must proceed under the 2021 Map. That map is the last legislatively enacted plan that governed a completed election and therefore remains the operative default under Section 2a(c). Once a state court determines that a subsequently enacted map is unconstitutional, Section 2a(c) leaves no room for judicial discretion to select or impose an alternative map based on preferences or equitable considerations.

To be sure, there are some instances in which judges may modify congressional maps. Section 2a(c) was enacted before *Wesberry v. Sanders*, 376 U.S. 1 (1964), which established the constitutional requirement that congressional districts contain equal populations. It was also enacted before Congress imposed the single-member district mandate now codified at 2 U.S.C. § 2c. *See* 2 U.S.C. § 2c ("[T]here shall be established by law a number of districts equal to the number of Representatives to which such State is so entitled, and Representatives shall be elected only from districts so established, no district to elect more than one Representative."). By its terms, Section 2a(c) operates automatically upon an "apportionment" and remains in effect "until"

10

the State is "redistricted in the manner provided by the law thereof." But because Section 2a(c) predates both *Wesberry* and Section 2c, its fallback mechanisms can require districting arrangements that are malapportioned or that violate the single-member district requirement.

In these circumstances, the state judiciary may act to prevent violations of the Constitution and Section 2c. It does not violate the Elections Clause for a court to re-draw an unconstitutional map required by Section 2a(c) if the state legislature is unwilling or unable to do so; to deny this would put the Elections Clause at war with the rest of the Constitution. And it does not violate the Elections Clause for the state judiciary to enforce Section 2c, as the Elections Clause specifically allows Congress to "make or alter" regulations governing the manner of electing Representatives.

But the state judiciary's map-drawing authority in these situations comes from the fact that it is attempting to remedy or prevent a violation of the Constitution (or a violation of Section 2c) that would occur if it implemented the congressionally mandated redistricting plan described in Section 2a(c). And the judiciary's remedial discretion in these situations is limited by the Elections Clause, which requires the state courts to hew as closely as possible to the congressionally required plans in Section 2a(c) even as the state courts devise a remedy that will avoid violations of *Wesberry* or Section 2c.

In any event, while the application of Section 2a(c) can allow for judicial map-drawing in some circumstances, its application in this case is exceptionally forward. If this Court enjoins Map 1, which it ought to do as it violates the Elections Clause

11

and the Utah Constitution, the limited role of the Utah judiciary is to comply with Section 2a(c)(1) and utilize the 2021 Map. However, the Utah judiciary has refused to comply and has instead unconstitutionally created its own map, with no input from the Utah Legislature. The Utah Legislature is the only Constitutional entity that can create a new map in this situation. If the Legislature fails to enact a new congressional map in time for the 2026 elections, this Court should declare that the 2021 Map remains in effect—which maintains the electoral landscape as it was before the state district court imposed an unconstitutional remedial map—until the Legislature fulfills its constitutional responsibility to redistrict.

## CONCLUSION

This Court should grant Plaintiffs' motion for a preliminary injunction.

Dated: February 13, 2026     Respectfully submitted,

*/s/ James Rogers*
James K. Rogers (Utah Bar No. 18783)
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave. SE #231
Washington, DC 20003
Phone: (202) 964-3721
james.rogers@aflegal.org

*Counsel for Proposed Amicus*
*America First Legal Foundation*

12

## CERTIFICATE OF SERVICE

I certify that I filed this document through the CM/ECF system.

*/s/ James Rogers*
James K. Rogers

## LOCAL RULE 7-6(c) CERTIFICATION

I certify that this memorandum contains 2,415 words and complies with DUCivR 7-6(c).

*/s/ James Rogers*
James K. Rogers
