**PARR BROWN GEE & LOVELESS**
David C. Reymann (Utah Bar No. 8495)
Cheylynn Hayman (Utah Bar No. 9793)
Kade N. Olsen (Utah Bar No. 17775)
101 South 200 East, Suite 700
Salt Lake City, UT 84111
(801) 532-7840
dreymann@parrbrown.com
chayman@parrbrown.com
kolsen@parrbrown.com

**ZIMMERMAN BOOHER**
Troy L. Booher (Utah Bar No. 9419)
J. Frederic Voros, Jr. (Utah Bar No. 3340)
Caroline Olsen (Utah Bar No. 18070)
341 South Main Street
Salt Lake City, UT 84111
(801) 924-0200
tbooher@zbappeals.com
fvoros@zbappeals.com
colsen@zbappeals.com

**CAMPAIGN LEGAL CENTER**
Mark P. Gaber*
Aseem Mulji**
Benjamin Phillips*
Isaac DeSanto*
1101 14th Street NW, Ste. 400
Washington, DC 20005
(202) 736-2200
mgaber@campaignlegalcenter.org
amulji@campaignlegalcenter.org
bphillips@campaignlegalcenter.org
idesanto@campaignlegalcenter.org

Annabelle Harless*
55 W. Monroe Street, Ste. 1925
Chicago, IL 60603
aharless@campaignlegalcenter.org

*Attorneys for Proposed Intervenors*

\* *Admitted Pro Hac Vice*
\*\**Pro Hac Vice Pending*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| AMELIA POWERS GARDNER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>LIEUTENANT GOVERNOR DEIDRE HENDERSON, in her official capacity,<br><br>Defendant.<br><br>LEAGUE OF WOMEN VOTERS OF UTAH, *et al.*,<br><br>Proposed Intervenors. | **PROPOSED LWV INTERVENORS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Case No. 2:26-cv-84-RJS-JCB<br><br>Judge Timothy M. Tymkovich<br>Judge Robert J. Shelby<br>Judge Holly L. Teeter<br>Magistrate Judge Jared C. Bennett |

# TABLE OF CONTENTS

LEGAL STANDARD .................................................................................................................. 1

ARGUMENT .................................................................................................................................. 1

    I.    Plaintiffs lack standing. ................................................................................................ 1

    II.    Issue preclusion bars this suit. ..................................................................................... 4

    III.    Plaintiffs' Complaint should be dismissed because the Elections Clause does not prohibit court-imposed remedial maps. ....................................................................... 5

        A.    Plaintiff's Complaint does not challenge the 2021 Map injunction. ............................ 5

        B.    The 2021 Map injunction did not violate the Elections Clause .................................... 6

        C.    The state district court was empowered and obligated to impose a remedial map. ... 10

            1.    *Growe* forecloses Plaintiffs' claim. ........................................................................ 10

            2.    *Branch* forecloses Plaintiffs' claim. ...................................................................... 12

            3.    The state court could not ignore the November 10 deadline. .............................. 14

    IV.    The Court should stay this case if it does not dismiss it. ..................................................... 15

CONCLUSION ............................................................................................................................ 15

Plaintiffs misstate the legal standard governing dismissal, lack standing, advance a claim that is barred by issue preclusion, and seek relief foreclosed by decades of precedent. The state court did not violate federal law by following federal law. This case should be dismissed, and if not, stayed pending the outcome of the state court litigation.

## LEGAL STANDARD

Contrary to Plaintiffs' misunderstanding, their Complaint cannot survive Rule 12(b)(6) by asserting a "legal position [that] is at least plausible." ECF No. 67 at 30; *see id.* at 40 ("Under a motion to dismiss, Plaintiffs must only allege plausible legal claims."). Rather, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). "Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously unsupportable." *Id.* Where a motion to dismiss turns on the validity of the legal claim itself and not factual assertion, Rule 12(b)(6) applies "without regard to whether [the claim] is based on an outlandish legal theory or on a close but ultimately unavailing one." *Id.*

## ARGUMENT

### I. Plaintiffs lack standing.

Plaintiffs lack standing. Plaintiffs assert (at 9) that Reps. Maloy and Owens have a reputational injury from the fact that the state district court imposed a remedial map and that "under *Bost* [that] is essentially per se [the case] for any candidate." That is not what the *Bost* Court held. "[W]e address today only candidates' standing to challenge rules that . . . govern the counting of votes in their elections." *Bost v. Ill. State Bd. of Elections*, 607 U.S. --, -- S. Ct. --, No. 24-568, 2026 WL 97070, at *5 n.7 (2026). The reputational theory makes sense in the context of vote-counting rules because a candidate's vote total vis-à-vis their opponent is a literal calculation of

their popularity and reputation amongst the electorate. On the other hand, it is implausible to allege that Rep. Maloy's or Owens's reputations will be affected by a court-imposed map. No one would view them any differently because a state court judge, not the Legislature, imposed Map 1.

Citing their declarations submitted with the preliminary injunction motion and not the Complaint's factual allegations, Plaintiffs contend (at 10) that under Map 1, Rep. Maloy "needs to campaign in most of Utah's 29 counties, compared to her incumbent district with only 3 (Salt Lake, Davis, and Tooele)." That is likely news to Rep. Maloy, whose current CD 2 under the 2021 Map encompasses *13* counties—not just 3,[1] and her declaration does not say otherwise. For his part, Rep. Owens's claimed injury (at 10) is that his new district is "politically hostile." But that cannot be an Article III injury in a redistricting case, *see Rucho v. Common Cause*, 588 U.S. 684 (2019), even if it is in a vote-counting rule case, *see Bost*, 2026 WL 97070, at *5. The Supreme Court's precedent recognizes a dividing line between partisan-based redistricting injuries and partisan-based electoral participation (and thus vote-counting related) injuries. The former is not a cognizable Article III injury while the latter is. *Compare Rucho*, 588 U.S. at 718 ("We conclude that partisan gerrymandering claims present political questions beyond the reach of the federal courts."), *with Anderson v. Celebrezze*, 460 U.S. 780, 793 (1983) ("It is especially difficult for the State to justify a restriction that limits political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or economic status.").

---

[1] *See* Utah Geospatial Resource Center, 2022 Congressional Map, https://opendata.gis.utah.gov/datasets/utah::utah-us-congress-districts-2022-to-2032/explore?location=39.499686%2C-111.547240%2C-1 (CD 2 covering Washington, Kane, Garfield, Iron, Wayne, Piute, Beaver, Sevier, Millard, Juab, Tooele, Salt Lake, and Davis Counties).

Moreover, Reps. Maloy and Owens contend they are injured by the candidate filing period commencing in March instead of January, but—without explanation—say (at 11) that injury "is not attributable to the Legislature's [law] [] changing the filing deadline from January to March." That is not intuitive. Map 1 is a map, not a filing deadline. Absent the Legislature's enactment, Reps. Maloy and Owens would have filed in January—eliminating their alleged injury. Their "uncertainty" injuries are not traceable to Map 1, but rather to the Legislature's decision to change the deadline. And that cannot be an Elections Clause violation.

The remaining Plaintiffs[2] offer no concrete harms. They assert (at 13) that they will somehow "violate their oath to uphold the U.S. Constitution" because of Map 1. But the Complaint's only example is the two Washington County commissioners, and as they allege, ECF No. 1 at 40, they already remedied this alleged injury themselves with their protest vote against aligning Washington County's ordinance with state law. In any event, this is just another generalized grievance about whether the law was followed. And as with the congressional plaintiffs, the "electoral limbo" the other plaintiffs allege (at 13) is a function of the Legislature's decision to change the filing deadline coupled with their own decision to cause themselves uncertainty by filing this lawsuit. Neither creates a cognizable Article III injury.

Plaintiffs lack standing. *See Lance v. Coffman*, 549 U.S. 437 (2007).

---

[2] Plaintiffs label themselves (at 13) "State Officials." They also use the title "Commissioner" for Ms. Powers Gardner in the caption of their filings. To be clear, Plaintiffs have not filed suit in their official capacities. *See* Fed. R. Civ. P. 17(d).

**II.     Issue preclusion bars this suit.**

Issue preclusion bars this suit. Plaintiffs contend (at 32) they have no privity with the Legislature because in *Daz Management, LLC v. Honnen Equipment Co.*, 2022 UT 15, 508 P.3d 84, the question was whether a person and his LLC were in privity. But *Daz* is relevant because of its articulation of Utah law on privity, not the circumstances of the case. The rule announced in *Daz* is a broad one: privity exists where "legal interests and rights [are] substantially aligned when considered in relation to the subject matter of the litigation." *Id.* ¶ 47. Plaintiffs offer no explanation for how the Legislature's interest in protecting its purported Elections Clause power in the state court litigation differs from Plaintiffs' interest in this litigation. Likewise, Plaintiffs do not explain how Colorado law, addressed in *Lance v. Dennis*, 444 F. Supp. 2d 1149, 1156 (D. Colo. 2006), *aff'd in part, vacated in part*, *Lance v. Coffman*, 549 U.S. 437 (2007), differs from Utah law. Indeed, Utah law appears broader on the question of privity.[3]

Contrary to Plaintiffs' contention (at 33), it is not "too high a level of generality" to say that the Elections Clause argument advanced by the Legislative Defendants in the state court litigation—that the Legislature has the sole power over redistricting legislation—is the same issue Plaintiffs advance here. That is the foundational argument in both cases. For the same reason, Plaintiffs are wrong (at 33-34) to contend that this issue has not been fully and fairly litigated. They identify nothing about the state court litigation of this issue that was anything short of full and fair. Finally, the fact that LWV Intervenors take the position that the state court erroneously

---

[3] Plaintiffs also conflate (at 32) the sequence of events in *Lance*. The *Rooker-Feldman* decision that the Supreme Court vacated was earlier in the case's history and predated the issue preclusion decision. *See Lance v. Davidson*, 379 F. Supp. 2d 1117 (D. Colo. 2005), *vacated and remanded*, *Lance v. Dennis*, 546 U.S. 459 (2006).

entered a Rule 54(b) judgment does not make that judgment any less real. It exists, and the fact that the state case is on appeal does not affect finality for issue preclusion purposes under controlling Utah law. *See Yourn v. Tintic Sch. Dist.*, 2004 UT App 33, 86 P.3d 771, 773 n.2.

### III. Plaintiffs' Complaint should be dismissed because the Elections Clause does not prohibit court-imposed remedial maps.

Plaintiffs' Complaint should be dismissed because the Elections Clause does not prohibit court-imposed remedial maps. In their response brief (at 15), Plaintiffs advance two overarching arguments for why they contend the state district court violated the Elections Clause: "[s]pecifically, th[e] state court (1) enjoined a legislatively drawn map [the court] never found substantively unlawful, and (2) imposed a map not drawn by the only entity with authority to do so under the federal and state constitutions—i.e., the Utah Legislature." Not so.

#### A. Plaintiff's Complaint does not challenge the 2021 Map injunction.

Plaintiffs' Complaint does not challenge the state district court's August 2025 permanent injunction against the 2021 Map. It advances no claim that the state district court violated the Elections Clause by entering that injunction. Rather, Plaintiffs raise a single legal claim in their Complaint: that the state district court violated the Elections Clause by imposing Map 1 on November 10, 2025, rather than providing the Legislature with another opportunity to enact a lawful map. *See, e.g.*, ECF No. 1 ¶¶ 82-83, 89-100. Plaintiffs underscore the limited nature of their lawsuit in their preliminary injunction motion. *See* ECF No. 19 at 2-3 (stating that "nor is this a challenge to a state court decision" but rather to the "*remedy*" of Map 1) (emphasis in original); *id.* (stating that "that remedy, rather than the state court's underlying decisions on the merits, violated both the federal and state constitutions as well as federal and state statutes"). Yet Plaintiffs'

response to LWV Intervenors' motion to dismiss argues at length that the state district court violated the Elections Clause by enjoining the 2021 Map. *See, e.g.* ECF No. 67 at 15, 22-27, 29.

That is improper. "It is well established . . . that in determining whether to grant a motion to dismiss, the district court . . . [is] limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint." *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995); *see also Smith v. Dart*, 803 F.3d 304, 311 n.4 (7th Cir. 2015) ("Simply stated, it is a new claim. And as such, it cannot be raised in a brief in opposition to a motion to dismiss; it must be pleaded in a new or amended complaint."); *Bates v. Green Farms Condominium Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) ("Plaintiffs cannot . . . amend their complaint in an opposition brief or ask the court to consider new allegations . . . not contained in the complaint."). The Court thus cannot consider Plaintiffs' lengthy (and repeated) argument about whether the Elections Clause permitted the state district court to enjoin use of the 2021 Map.

### B.     The 2021 Map injunction did not violate the Elections Clause

Even if the Court considered Plaintiffs' new claim, absent from their Complaint, that the 2021 Map injunction violated the Elections Clause, the argument is meritless.

First, Plaintiffs repeatedly, and wrongly, assert that the state district court did not find the 2021 map unlawful. As LWV Intervenors explain in their opposition to Plaintiffs' preliminary injunction motion, that is not so. *See* ECF No. 56 at 5-6, 30, 33 & n.28; *see also League of Women Voters of Utah v. Utah State Legislature*, No. 220901712, 2025 WL 2644292, at *53-58 (Utah 3d Dist. Ct. Aug. 25, 2025) ("*League of Women Voters August 2025 Order*"). Plaintiffs selectively quote (at 28) the state district court's observation that it was "unnecessary" for the LWV

Intervenors to prove that the map violated Proposition 4, given the Alter or Reform Clause constitutional violation. But Plaintiffs omit this part of the court's order:

> While the Court explains below that Plaintiffs did not need to prove under Count V that [the 2021 Map] did not comply with Proposition 4, *they did.* Plaintiffs' Motion for Summary Judgment on Count V, specifically alleges and the Legislative Defendants *did not dispute* that H.B. 2004 was not enacted in compliance with Proposition 4.

*Id.* at *56 (emphasis added); *see id.* ("Plaintiffs did establish undisputed facts that [the 2021 Map] did not comply with Proposition 4."). Upon that finding, Utah law *required* the state district court to permanently enjoin the 2021 Map. *See* Utah Code § 20A-19-301(2) ("If a court . . . determines . . . that a redistricting plan by the Legislature fails to abide by or conform to the redistricting standards, procedures, and requirements [of Proposition 4], . . . the court *shall* issue a permanent injunction barring enforcement or implementation of the redistricting plan." (emphasis added)).

Moreover, in the November 2025 order, the state district court likewise found that the 2021 Map violated Proposition 4's prohibition on partisan gerrymandering and excess county splitting— the latter of which the Legislature's own expert witness and map drawer conceded was so. *See League of Women Voters of Utah v. Utah State Legislature*, No. 220901712, 2025 WL 3145894, at *40, 56 (Utah 3d Dist. Ct. Nov. 10, 2025); ECF No. 56-1 (testimony of Dr. Sean Trende).

Second, Plaintiffs badly misconstrue *Moore v. Harper*, 600 U.S. 1 (2023), to contend (at 23) that state courts can enforce (1) only state constitutional, and not statutory, congressional redistricting requirements and (2) even then, only such requirements on the "limited topic of the enactment of laws." This is not what *Moore* held and, in fact, turns the Elections Clause on its head.

It helps to back up a bit. The Elections Clause provides that the "Times, Places and Manner" of holding congressional elections "shall be prescribed in each State by the Legislature thereof." U.S. Const. art. I, § 4. In *Arizona State Legislature v. Arizona Independent Redistricting Commission* ("*AIRC*"), the Supreme Court held that the word "Legislature" in the Elections Clause refers to the "power to make laws" in a State, not merely the body known as the Legislature. 576 U.S. 787, 814 (2015).

In Utah, the "power to make laws" is vested in the "Legislative Department," which includes (1) the Legislature and (2) the People, who are empowered to "initiate any desired legislation." Utah Const. art. VI, § 1 & 2.[4] So when Utahns adopted Proposition 4 in 2018, they were *exercising* their Elections Clause power to regulate congressional elections. And they were likewise exercising that same authority when they expressly provided for judicial review of redistricting maps. *See* Utah Code § 20A-19-301. By permanently enjoining the 2021 Map under Utah Code § 20A-19-301, the state district court fulfilled an obligation that arose from the Utah Legislative Department's exercise of its Elections Clause power. There is no conceivable argument that this somehow violated the Elections Clause. It was the Elections Clause in action.

Plaintiffs' contention that *Moore* limited state courts to enforcing state constitutional provisions is wrong. True, *Moore* addressed the question of whether "state legislatures remain

---

[4] As LWV Intervenors explain in their opposition to Plaintiffs' preliminary injunction motion, Plaintiffs' contention (at 26) that Article IX of the Utah Constitution "clearly states that only the Legislature may produce redistricting maps" is simply false. The word "only" appears nowhere in Article IX. All that appears in Article IX is a temporal obligation to act. *See Lawyer v. Dep't of Justice*, 521 U.S. 567, 577 n.4 (1997) ("This article in terms provides only that the state legislature is bound to redistrict within a certain time after each decennial census" and does not "provide[] the exclusive means by which redistricting can take place."). Moreover, the Utah Constitution permits the People to enact "any desired legislation," Utah Const. art. VI, § 1, and requires the judiciary to provide remedies for all wrongs, Utah Const. art. I, § 11. Both encompass redistricting.

8

bound by state constitutional restraints," 600 U.S. at 32, in regulating congressional elections. Unsurprisingly so, because that was the issue before it: the North Carolina Supreme Court had invalidated a congressional map on *state constitutional* grounds, *id.* at 8-9, and petitioners challenged the propriety of it doing so. By recognizing that state courts could enforce state constitutions with respect to federal elections, *Moore* was not excluding state courts' power to enforce state statutes. Such a rule would make no sense. Indeed, Chief Justice Rehnquist's concurring opinion in *Bush v. Gore*, 531 U.S. 98 (2000), was about "whether Florida's Supreme Court, in construing provisions of Florida *statutory law*, exceeded the bounds of ordinary judicial review to an extent that its interpretation violated the Electors Clause." *Id.* at 35-36 (emphasis added). Nothing in *Moore* suggests a different standard applies to state court statutory interpretative power. *See, e.g.*, *id.* at 39 (Kavanaugh, J., concurring) ("Chief Justice Rehnquist's standard should apply not only to state court interpretations of *state statutes*, but also to state court interpretations of state constitutions." (emphasis added)). The Court will search the U.S. and Federal Reporters in vain for the proposition that state courts are disempowered from interpreting state statutes, as Plaintiffs posit.

Plaintiffs' second proffered rule (at 23)—that state courts can only enforce provisions that deal with "the limited topic of the enactment of laws"—is directly contradicted by *Moore*. The Court rejected as "too cramped" the view that state courts could only enforce "'procedural' and [not] 'substantive' restraints on lawmaking." *Id.* at 30. "How [state law] provisions might be categorized" was not relevant to the Court's precedent recognizing the power of state courts to enforce state law that affected federal elections. *Id.*

9

Plaintiffs cannot raise a new legal claim absent from their Complaint in a brief opposing a motion to dismiss. But the arguments are nevertheless meritless as a matter of law.

### C. The state district court was empowered and obligated to impose a remedial map.

The state district court had both the power and obligation to impose a remedial map. Consider the situation: the 2021 Map had been permanently enjoined. The Utah Supreme Court denied the Legislature's request to stay that injunction. The Legislature, given the chance to enact a new map, enacted one so blatantly unlawful (Map C) that neither Plaintiffs nor the Legislature seek to defend or resurrect it. The Lieutenant Governor's November 10 deadline had arrived. The only available legislatively enacted map that had not been enjoined was the 2011 map, which all parties agreed was unconstitutionally malapportioned. The court did precisely what *Germano*, *Growe*, and *Branch* required and that courts have routinely done for decades—it imposed a map that complied with federal and state law. Plaintiffs' efforts to distinguish these precedents are unavailing.

#### 1. *Growe* forecloses Plaintiffs' claim.

*Growe* compels the conclusion that state courts have the power to impose remedial congressional maps in the absence of lawful legislatively enacted maps. Plaintiffs' contrary arguments are unpersuasive.

First, Plaintiffs say (at 16) that *Growe* is "entirely different" because the parties agreed the prior decade's map was unconstitutionally apportioned and another map had not been legislatively enacted. But *Growe* does not turn on whether the state court litigants *agree* a map should be enjoined. Rather, it addresses what should happen *after* a state's map is enjoined as unlawful and a lawful legislatively enacted map is not forthcoming: federal courts must allow state courts to

10

impose a new one, because "[t]he power of the judiciary of a State to require valid reapportionment or to formulate a valid redistricting plan" is long established. *Growe*, 507 U.S. 25, 33 (quoting *Scott v. Germano*, 381 U.S. 407, 409 (1965) (per curiam)). So too here.

Second, Plaintiffs contend (at 16) that, unlike the *Growe* federal district court, "Plaintiffs are not seeking to enjoin any state proceeding." But neither did the *Growe* federal district court specifically enjoin a state court proceeding. Rather, it ordered the State to implement its maps and "permanently enjoin[ed] interference with said redistricting plans." *Emison v. Growe*, 782 F. Supp. 427, 449 (D. Minn. 1992), *reversed*, *Growe v. Emison*, 507 U.S. 25 (1993). Although the injunction was not directed specifically at the state court, the effect was the same: the state court could not take further effective steps. That is precisely Plaintiffs' goal here: a federal court order declaring that the 2021 Map—permanently enjoined by the state court—will govern Utah's 2026 election. The effect would be to render inoperative the state court's injunction.

Third, Plaintiffs observe (at 17) that the Elections Clause was not raised in *Growe* and cite *Smith v. Clark*, 189 F. Supp. 2d 503 (S.D. Miss. 2002), in which a three-judge court "question[ed] *Growe*'s relevance to the Elections Clause context." The Supreme Court, however, expressly vacated this portion of the *Smith* decision in *Branch v. Smith*: "The District Court's alternative holding is not to be regarded as supporting the injunction we have affirmed . . . or as binding upon state and federal officials should Mississippi seek in the future to administer a redistricting plan adopted by the Chancery Court." 538 U.S. 254, 265-66 (2003). Then, in the same decision, the Court reiterated its *Growe* precedent, *id.* at 261-62, explained that Congress exercised its Elections Clause power to require single-member congressional districts when it enacted 2 U.S.C. § 2c, *id.* at 267, and held that *state courts* must enforce that law by imposing congressional maps, *id.* at

11

272. The Elections Clause was front and center in *Branch*, and it reaffirmed its *Growe* precedent and held, again, that state courts are obligated to impose remedial congressional maps.

Fourth, Plaintiffs contend that to read *Growe* at face value—*i.e.*, that state courts have the power to impose congressional maps—would "place it in conflict with *Moore*" because the *Moore* Court noted that "'state courts do not have free reign' in the Elections Clause context." ECF No. 67 at 18 (quoting *Moore*, 600 U.S. at 34). But *Moore* neither addressed the power of state courts to impose remedial congressional maps nor questioned *Growe*'s recognition of that power. Indeed, the Court noted that because the North Carolina Supreme Court's remedial map order had been "withdrawn," it was "not before us, and our decision today does not pass on the constitutionality of any particular map adopted by the state courts." *Moore*, 600 U.S. at 37 n.2. For that reason, while Plaintiffs contend that "the specific case (*Moore*) should control over the general case (*Growe*)," they in fact advocate that the off-point case should control over the on-point case. *Moore* says nothing about state courts' power to impose congressional maps in the absence of a lawful legislatively enacted map. *Growe* specifically does.

      **2.**     ***Branch* forecloses Plaintiffs' claim.**

*Branch* likewise forecloses Plaintiffs' claim. In *Branch*, the Court held that state and federal courts must, pursuant to 2 U.S.C. § 2c, impose a single-member district congressional map in the absence of a lawful legislatively enacted one. 538 U.S. at 268-72. The *Branch* Court explained that in exercising its superior Elections Clause power to regulate congressional elections, Congress intended for "state and federal courts" to impose congressional maps because it mandated that single-member districts be established "by law," which "encompasses judicial decisions as well" as legislative action. *Id.* a 271. In other words, where, as here, a state district court finds itself with

12

no lawful legislatively enacted map and a malapportioned map from the prior decade, *Branch* interpreted 2 U.S.C. § 2c to compel the state court to impose a map.

Plaintiffs make several mistakes in contending otherwise. First, they mischaracterize the facts of *Branch*. The federal district court did not, as Plaintiffs' incorrectly say (at 20), "declar[e] the state-court plan unconstitutional." Rather, the federal district court concluded that time did not permit the state court's plan to obtain Section 5 preclearance from DOJ and thus "promulgated a redistricting plan to be used absent the timely preclearance of the [state court] plan." *Branch*, 538 U.S. at 260. Accordingly, the Supreme Court did not "affirm[] the three-judge panel's holding that the state court had improperly created its own map," as Plaintiffs baselessly assert (at 20-21). Rather, the *Branch* Court affirmed the federal district court's decision to impose a map based on the likely untimeliness of Section 5 preclearance of the state court plan. 538 U.S. at 264-65. It was for this reason that *Growe*'s rule—that federal courts must allow state courts to impose congressional maps—was not violated by the lower federal court's imposition of a map, the Court explained. 538 U.S. at 261.

From the false premise of these mischaracterizations, Plaintiffs contend (at 21) that *Branch*'s holding about the power (and duty) of courts to impose congressional maps "applie[s] only to the *federal* remedy following the state court's unlawful redistricting plan." Again, the state court's plan was inoperative because it had not obtained preclearance; the Supreme Court had not found it "unlawful." *See* 52 U.S.C. § 10304(a) (laws inoperative until precleared). Moreover, contrary to Plaintiffs' suggestion (at 21), *Branch*'s holding is not limited to empowering *federal courts* to impose congressional maps. *See Branch*, 538 U.S. at 272 ("In sum, § 2c is as readily

13

enforced by courts as it is by state legislatures, and is just as binding on courts—*federal or state*—as it is on legislatures." (emphasis added)).

Plaintiffs' accusation (at 21) that LWV Intervenors "fundamentally misrepresent[] *Branch*" is rich considering this series of misrepresentations. So too is their suggestion (at 21) that *Branch* greenlights their legal claim because the Court "expressly left for another day whether a state court is a proper redistricting entity under the Elections Clause." After vacating the lower court's Elections Clause reasoning and warning every reader not to rely on it in the future, the Court went on to expressly hold that Congress, pursuant to the Elections Clause, has *required* state courts to impose congressional maps where necessary. *Branch*, 538 U.S. at 272. Plaintiffs *are* correct (at 21), however, that *Branch* "provides a roadmap for this Court"—but it is a roadmap to dismissal of their lawsuit.[5]

### 3. The state court could not ignore the November 10 deadline.

Plaintiffs contend (at 29) that "at the time the state judge drew Map 1, there was still ample time to allow the Legislature to draw another map—given that the legislature could push back the election deadlines upon which" the Lieutenant Governor relied. For this, they cite no authority—and there is none. No case supports the proposition that a state court should simply blow off a statutory election deadline on the mere possibility that the legislature might change it. Quite the opposite. *See Wise v. Lipscomb*, 437 U.S. 535, 540 (1978) (holding that when "the imminence of a state election makes it impractical" for the legislature to act, a court must impose a map). The court had to go by the elections deadlines as they were, not assume they would be changed.

---

[5] Plaintiffs' citation (at 21) to the Mississippi Supreme Court's subsequent holding that the Chancery Court has no power under state law to impose maps does not bear on Plaintiffs' claim that the Elections Clause precluded the Utah state court from doing so.

Moreover, the *Legislature* never suggested to the state district court that the deadlines might change. And when it did change the deadline a month later, it did not go back and ask the court to vacate its remedial order to allow for a second bite at the apple to try to comply with Proposition 4. Instead, it launched its Rule 54(b) certification effort—after having inexplicably allowed its statutory right to appeal within 30 days of both the August and November order, *see* Utah Code § 78B-5-1002; Utah R. App. P. 4—to blow by.

### IV.   The Court should stay this case if it does not dismiss it.

If the Court does not dismiss this case, it should stay it. For the same reason Plaintiffs are in privity with the Legislature, *see supra* Part II, this case and the state litigation are in parallel. *See, e.g.*, *United States v. City of Las Cruces*, 289 F.3d 1170, 1182 (10th Cir. 2002) (noting that in the "*Colorado River* context, . . . exact identity of parties and issues is not required"); *Lumen Const., Inc. v. Brant Const. Co., Inc.*, 780 F.2d 691, 695 (7th Cir. 1985) (holding that *Colorado River* applies where parties differ but that "interest in the outcome of the lawsuit is the same"). Moreover, the issues for *Colorado River* purposes need only be "substantially the same," which they clearly are. *Fox v. Maulding*, 16 F.3d 1079, 1080 (10th Cir. 1994).

Plaintiffs close their brief (at 40 n.5) by asserting: "Should the Utah Supreme Court enjoin Map 1, that may moot Plaintiffs' Motion for Preliminary Injunction but not be grounds for this Court to stay this litigation." But that result would require this Court to dismiss this *lawsuit* as moot. And the fact that the state court's decision could deprive this Court of subject matter jurisdiction is a compelling reason to stay this case pending the outcome of the state court suit.

### CONCLUSION

For the foregoing reasons, LWV Intervenors' motion to dismiss or stay should be granted.

RESPECTFULLY SUBMITTED this 16th day of February 2026.

/s/ *David C. Reymann*
**PARR BROWN GEE & LOVELESS**
David C. Reymann
Cheylynn Hayman
Kade N. Olsen

**CAMPAIGN LEGAL CENTER**
Mark P. Gaber*
Annabelle Harless*
Aseem Mulji*
Benjamin Phillips*
Isaac DeSanto*

**ZIMMERMAN BOOHER**
Troy L. Booher
J. Frederic Voros, Jr.
Caroline Olsen

*Attorneys for Proposed Intervenors*