Gene C. Schaerr (*pro hac vice*)
D.C. Bar No. 416368
Justin A. Miller (*pro hac vice*)
D.C. Bar No. 90022870
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
gschaerr@schaerr-jaffe.com
jmiller@schaerr-jaffe.com

James C. Phillips (17302)
Tyler B. Lindley (18635)
SCHAERR | JAFFE LLP
299 S. Main Street, Suite 1300
Salt Lake City, Utah 84111
Telephone: (801) 918-5529
jphillips@schaerr-jaffe.com
tlindley@schaerr-jaffe.com

*Counsel for Plaintiffs*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| COMMISSIONER AMELIA POWERS GARDNER, a registered Utah voter and elected official, et al., <br><br>        Plaintiffs, <br><br> v. <br><br> LIEUTENANT GOVERNOR DEIDRE HENDERSON, in her official capacity, <br><br>        Defendant. | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** <br><br> Case No. 2:26-cv-00084-RJS-JCB <br><br> Circuit Judge Timothy M. Tymkovich <br> District Judge Robert J. Shelby <br> District Judge Holly L. Teeter <br><br> Mag. Judge Jared C. Bennett |

# TABLE OF CONTENT

TABLE OF AUTHORITIES ..................................................................... ii

ARGUMENT ......................................................................................... 1

  I.  Plaintiffs Have Standing. ............................................................. 1

  II.  Plaintiffs Are Likely to Succeed on the Merits. .......................... 3

      A.    The standard on this factor is "likelihood of success on the merits," not "entirely clearcut success." ............................. 4

      B.    The League fails to rebut the merits of Plaintiffs' motion. .............. 5

          1.    The state court's attempt to force its own map on the State and its voters independently violates *Moore*'s "ordinary judicial review" standard ....................................... 5

          2.    *Moore* only allows state courts to enforce state constitutional limits on the Legislature's redistricting power, not statutory limits. ................................... 9

          3.    No one has cited a case where a state court enjoined a legislatively drawn redistricting map because the law that authorized the map violated a different law. ................ 11

      C.    The League's cases support Plaintiffs. .............................. 12

  III. Plaintiffs Have Amply Satisfied the Other Injunction Factors. ..................... 14

  IV. This Court Can Grant Plaintiffs' Requested Relief. ....................... 16

      A.    *Purcell* is no obstacle to relief. ...................................... 17

      B.    Plaintiffs' requested remedy is entirely lawful and appropriate. ....................................................... 18

CONCLUSION ................................................................................... 21

CERTIFICATE OF COMPLIANCE .................................................... 23

CERTIFICATE OF SERVICE ............................................................. 24

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. Taylor,*
   51 P.3d 1204 (Okla. 2002) ........................................................................ 8

*Andino v. Middleton,*
   141 S.Ct. 9 (2020) ................................................................................... 17

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n,*
   576 U.S. 787 (2015) ........................................................................... 3, 14

*Biden v. Nebraska,*
   600 U.S. 477 (2023) .................................................................................. 1

*Bone Shirt v. Hazeltine,*
   461 F.3d 1011 (8th Cir. 2006) ................................................................. 8

*Bost v. Ill. State Bd. of Elections,*
   607 U.S. --, 2026 WL 96707 (2026) .............................................. 1, 2, 14

*Branch v. Smith,*
   538 U.S. 254 (2003) ..................................................... 12, 13, 14, 20

*Bush v. Gore,*
   531 U.S. 98 (2000) .................................................................................. 9

*Coal. of Concerned Citizens to Make Art Smart v.*
   *Fed. Transit Admin.,* 843 F.3d 886 (10th Cir. 2016) ............................... 5

*Dayton Bd. of Educ. v. Brinkman,*
   433 U.S. 406 (1977) ............................................................................... 20

*Free the Nipple-Fort Collins v. City of Fort Collins,*
   916 F.3d 792 (2019) ............................................................................... 16

*Growe v. Emison,*
   507 U.S. 25 (1993) .......................................................................... 12, 15

*Kansas Health Care Ass'n v. Kansas Dep't Soc.*
   *& Rehab. Servs.,* 31 F.3d 1536 (10th Cir. 1994) ............................. 15, 16

*Kennedy v. Bremerton Sch. Dist.,*
   597 U.S. 507 (2022) ................................................................................ 6

*Kim v. Hanlon,*
   99 F.4th 140 (3d Cir. 2024) ............................................................. 16, 17

*Lawyer v. Department of Justice,*
   521 U.S. 567 (1997) ................................................................................ 8

*League of Utd. Latin Am. Citizens v. Abbott,*
  -- F.Supp.3d --, 2025 WL 3215715 (W.D. Tex. 2025) .......................................... 17

*League of Women Voters of Utah v. Utah State Legislature,*
  554 P.3d 872 (Utah 2024) ...................................................................................... 3

*Mauldin v. Branch,*
  866 So.2d 429 (Miss. 2003) .......................................................................... 8, 9, 13

*Merrill v. Milligan,*
  142 S.Ct. 879 (2022) .............................................................................................. 4

*Merrill v. Milligan,* 142 S.Ct. 879, 879 (2022) ........................................................ 17

*Merrill v. People First of Ala.,*
  141 S.Ct. 190 (2020) ............................................................................................ 17

*Merrill v. People First of Ala.,*
  141 S.Ct. 25 (2020) .............................................................................................. 17

*Moore v. Harper,*
  600 U.S. 1 (2023) .......................................................................................... *passim*

*N.Y. State Rifle & Pistol Ass'n v. Bruen,*
  597 U.S. 1 (2022) ................................................................................................... 6

*Purcell v. Gonzalez,* 549 U.S. 1 (2006) ...................................................... 4, 5, 17, 18

*Republican Nat'l Comm. v. Democratic Nat'l Comm.,*
  589 U.S. 423 (2020) ............................................................................................ 17

*Rucho v. Common Cause,*
  588 U.S. 684 (2019) .............................................................................................. 3

*Schrier v. Univ. of Colo.,*
  427 F.3d 1253 (10th Cir. 2005) ........................................................................... 15

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) ................................................................................................. 2

*Trump v. CASA, Inc.,*
  606 U.S. 831 (2025) .............................................................................................. 6

*Wise v. Circosta,*
  978 F.3d 93 (4th Cir. 2020) ................................................................................. 18

**Constitutional Provisions**

U.S. Const. art. I, §4, cl. 1 ................................................................................... 3, 19

Utah Const. art. IX, §1 ..................................................................................... 7, 8, 19

**Statutes**

2 U.S.C. §2a ............................................................................................ 21

2 U.S.C. §2c ............................................................................................ 13

Utah Code §20A-13-101.1 ...................................................................... 20

Utah Code §20A-19-204 (2018) .............................................................. 3

**Other Authorities**

William Baude & Michael McConnell,
   *The Supreme Court Has a Perfectly Good Option in Its
   Most Divisive Case*, The Atlantic (Oct. 11, 2022) .................................... 6

*Merriam-Webster Dictionary* ................................................................ 12

Plaintiffs seek narrow, time-sensitive relief to prevent the Lieutenant Governor from administering Utah's 2026 congressional elections under a state-court-imposed plan that violates the Elections Clause, federal statutory default rules, and *Moore v. Harper*, 600 U.S. 1, 34 (2023). And Defendant concedes she is ready and able to restore the 2021 congressional map if this Court clears the way for her to do so by the end the day on February 23, 2026. Nothing in the arguments by the Proposed Intervenors ("League") or the amicus supporting them argues prevents this Court from quickly granting a preliminary injunction.

## ARGUMENT

As the League concedes, "while the state court litigation has tackled complicated issues, the question before this Court is simple." Doc.56 at 1. Their opposition and intervention in this case merely attempt to muddy the waters with complicated state issues irrelevant to the question before this Court.

## I. Plaintiffs Have Standing.

For example, the League's only real response to Plaintiffs' standing is arguing how *Bost v. Illinois State Board of Elections*, 607 U.S. --, 2026 WL 96707 (2026), applies to the Representatives. Doc.56 at 16-17. But *Bost* sets an easily cleared bar for candidates challenging election rules, and "only one plaintiff needs standing for a suit to proceed." 2026 WL 96707, *3 n.3 (citing *Biden v. Nebraska*, 600 U.S. 477, 489 (2023)).

The key point in *Bost* is that "[c]andidates are not common competitors in the economic marketplace," and "have an interest in a fair process." *Id.* at *3. Hence, "[w]in or lose," and "[w]hether [election-related regulations] help, hurt, or have no effect on a candidate's electoral prospects," "candidates suffer when the process departs from the law" because unlawful state action in the context of an election "deprive the candidate of a fair process and an accurate result." *Id.* Plaintiffs allege that the unconstitutional creation of Map 1 departs from the law, Doc.1 & ¶¶2-3,89-100, and this Court cannot prejudge the merits at the standing stage, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). Nothing further is required for standing.

But the Representatives also show additional harms, including winning, vote share, and expending additional resources. *Bost*, 2026 WL 96707, *3; Doc.19-13 ¶¶10-12, 14; Doc.19-12 ¶15; Doc.1 ¶42.

The League's efforts to distinguish *Bost* fail. Doc.56 at 22. That the Representatives are "more than happy to represent any group of Utahns" if they win the election, Doc.19-13¶17, Doc.19-12¶18, does not undermine their interest in a fair process. The "100-meter dash" Olympian would be happy to win the gold medal, even if that race "were unexpectedly extended to 105 meters," but would still have an injury to complain about. *See Bost*, 2026 WL 96707, *4. And evidence that the partisan make-up of a given district changes shows injury; it does not make this lawsuit about the proper redistricting authority under the Elections Clause a

partisan gerrymandering case. *Cf.* Doc.56 at 17 (citing *Rucho v. Common Cause*, 588 U.S. 684, 721 (2019).

Plaintiffs therefore have standing.

## II.    Plaintiffs Are Likely to Succeed on the Merits.

On the merits, the League argues that their motion to dismiss is based on "decades of Supreme Court precedent," Doc.56 at 23, that unfortunately for them, actually supports Plaintiffs. The Elections Clause is clear that only "the Legislature" may "prescribe[]" the "Times, Places and Manner" of congressional elections. U.S. Const. art. I, §4, cl. 1. And under Supreme Court and Utah law, the Legislature does not include state courts. To the contrary, the Supreme Court has distinguished "state courts," which "do not have free rein," from "'the Legislature' of each State," which possess the "vest[ed] power to carry out [the Elections Clause's] provisions." *Moore*, 600 U.S. at 34; *see also Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 808-09 (2015) (Legislature defined by state's constitution); *League of Women Voters of Utah v. Utah State Legislature*, 554 P.3d 872, 916-17 (Utah 2024) (initiative that created Commission "did not take the authority to enact electoral maps from the Legislature and give it to the Independent Commission," but "empowered the Independent Commission to create proposed maps, which the Legislature was required to consider." (citing Utah Code §20A-19-204(2)(a) (2018)).

The League improperly attempts to raise Plaintiffs' burden on this factor, claiming that they need to show "entirely clearcut success," instead of likelihood of

success. Doc.56 at 23. And in so doing, they misrepresent the *Purcell* principle, which applies only to the equitable factors pertaining to the State's interest. Under the proper standard, and because the League relies on cases that further support Plaintiffs and fail to rebut the merits of Plaintiffs' motion, the motion for preliminary injunction should be granted for the reasons stated in Plaintiffs' motion.

### A.    The standard on this factor is "likelihood of success on the merits," not "entirely clearcut success."

The League confuses to which injunction factor the *Purcell* principle applies. In *Purcell v. Gonzalez*, 549 U.S. 1 (2006), the district court denied the State's injunction because, although it showed "a possibility of success on the merits," not a "strong likelihood," the district court found that "the balance of the harms and the public interest counseled in favor of denying the injunction." *Id.* at 3-4. The Supreme Court's analysis then dealt with the "*State*['s] … compelling interest in preserving the integrity of its election process." *Id.* at 4 (emphasis added) (citation omitted). In other words, the concern about election complications was not relevant to likelihood of success, but to the equitable balancing of interest.

The *Merrill v. Milligan* concurrence that the League relies on (at 19) makes the same distinction. 142 S.Ct. 879, 881 (2022) (Kavanaugh, J., concurring) (*Purcell* "simply heightens the showing necessary for a plaintiff to overcome *the State's extraordinarily strong interest* in avoiding late, judicially imposed changes to its election laws and procedures.") (emphasis added). Accordingly, *Purcell* applies only

to "the balance of the harms and the public interest," not likelihood of success on the merits. *Purcell*, 549 U.S. at 3-4.

Plaintiffs need only show, as "[a]ll courts agree," that they have "a prima facie case," not that they have "a certainty of winning." *Coal. of Concerned Citizens to Make Art Smart v. Fed. Transit Admin.*, 843 F.3d 886, 901 (10th Cir. 2016) (citation omitted). And the League is wrong to claim that Plaintiffs' requested preliminary injunction would "alter the status quo" or grant them final relief. Doc.56 at 15-16. The League fails to rebut Plaintiffs' caselaw showing that the status quo is determined before the state court's selection of Map 1. Doc.1 ¶3.

### B.    The League fails to rebut the merits of Plaintiffs' motion.

The League's arguments are unmoored from the key case here, *Moore*. In contrast, Plaintiffs answer *Moore*'s unanswered question: How a state court exceeds "ordinary judicial review," violating the Elections Clause. 600 U.S. at 36. Wherever the line, the state court crossed it when it enjoined the 2021 Map, and crossed it yet again in forcing its own map on the state and its voters.

### 1.    The state court's attempt to force its own map on the State and its voters independently violates *Moore*'s "ordinary judicial review" standard.

The state court violated *Moore* by seeking to impose its own map on the State and its voters. That is true under any reasonable understanding of the phrase "ordinary judicial review."

1.     The Supreme Court has yet to adopt a precise standard for determining when state courts "transgress the ordinary bounds of judicial review such that they arrogate to themselves the power vested in state legislatures to regulate federal elections." *Moore,* 600 U.S. at 36. This Court is thus free to select a test, and an originalist or history-and-tradition test is always appropriate in interpreting the Constitution. *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022) (holding gun regulations permissible under the Second Amendment only if those laws are "consistent with the Nation's historical tradition of firearm regulation"); *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 535, 536 (2022) (holding that the Establishment Clause is to "be interpreted by reference to historical practices and understandings," using an "analysis focused on original meaning and history").

For interpreting the Elections Clause, which was part of the original Constitution, this Court should look to state court practices at the time of the Constitution's adoption. *Trump v. CASA, Inc.*, 606 U.S. 831, 841 (2025) (internal quotation marks omitted) (T]hough flexible, [a court's] equitable authority is not freewheeling" and "encompasses only those sorts of equitable remedies traditionally accorded by courts of equity at our country's inception."). And there is no evidence that state courts at the founding ever forced a redistricting map on the Legislature; neither is there any evidence that there is a tradition of such, as the practice is of very recent vintage. William Baude & Michael McConnell, *The Supreme Court Has a Perfectly Good Option in Its Most Divisive Case*, The Atlantic (Oct. 11, 2022),

https://tinyurl.com/3d54k7ny. ("[T]he practice of court-drawn maps does not have an extensive constitutional pedigree. No such thing occurred in the early years of the republic. It was an innovation of the mid-20th century, emerging from modern trends in election law.").

And for that reason alone, the state court's November order violates the Elections Clause. Even if the state court had been justified in abrogating the 2021 map, and even if the state court properly found unacceptable the map the Legislature drew (under improper duress) in response, the proper remedy under *Moore* was to (quickly) remand the issue back to the Legislature, not create a new map.

2.    Even if this Court were to adopt a "fair reading" test instead of an originalist one, it does not apply here; and even if it does, the state court still flunked it by imposing its own map. Not surprisingly, there is nothing in the state constitution that the League has pointed to (27-29) that the state court was interpreting when imposing its map onto the state. And the Utah Constitution makes clear that the State Legislature wholly retains this federal redistricting authority. Utah Const. art. IX, §1 ("[T]he Legislature shall divide the state into congressional, legislative, and other districts accordingly.").

The League objects (at 27) that Article IX of the Utah Constitution is not the exclusive font of redistricting authority. But they cite no other provision of the Utah Constitution granting any other entity redistricting authority. The League's only rebuttal is a decision issued before *Arizona State Legislature*, where the Supreme

Court decided the meaning of "Legislature" in the Elections Clause, and before *Moore*, which is the governing decision here. Doc.56 at 27-28 (citing *Lawyer v. Department of Justice*, 521 U.S. 567, 577 n.4 (1997)). But even by its own terms, the footnote the League relies on there expressed only limited "disagree[ment] on this question of state law" to the extent it would "limit the broad discretion possessed by the attorney general of Florida in representing the State in litigation." *Lawyer*, 521 U.S. at 577 n.4. The League similarly argues that the Minnesota Constitution discussed in *Growe* had a provision similar to Article IX of the Utah Constitution. Doc.56 at 28. But for the reasons discussed *infra* in Section II.C, *Growe* is inapplicable here.[1]

Second, the League fails in its attempts (at 29-30) to rebut the clear constitutional point that only the Legislature may engage in redistricting. It first relies again on *Growe* as permitting state court redistricting, which for the reasons explained below in Section II.C is wrong. The League then cites a federal case about a federal court's redistricting remedy, which is irrelevant to whether state courts may redistrict. Doc.56 at 29-30 (citing *Bone Shirt v. Hazeltine*, 461 F.3d 1011, 1022 (8th Cir. 2006)). Finally, the League relies on a state supreme court decision issued before

---

[1] The League's reliance on the Oklahoma Supreme Court is not convincing either. Doc.56 at 28 (citing *Alexander v. Taylor*, 51 P.3d 1204, 1208-10 (Okla. 2002)). There, the Oklahoma Supreme Court decided to reverse decades of state precedent refusing to allow state court redistricting. It based its decision on state considerations not present here, along with *Growe* and *Branch*, which are inapposite for the reasons explained above. *See infra* at Section II.C; *compare Mauldin*, 866 So.2d at 434 (holding state courts cannot engage in redistricting under Elections Clause).

*Branch*. *Id.* (citing Colorado district court decision affirmed by Colorado Supreme Court). But asking a state court whether a state court is allowed to redistrict inevitably presents a fox guarding the henhouse problem. And in any event, it merely presents a split from the better reasoned, post-*Branch* decision from the Mississippi Supreme Court holding "that *no* Mississippi court has jurisdiction to draw plans for congressional redistricting." *Mauldin v. Branch*, 866 So.2d 429, 434 (Miss. 2003).[2]

The League further argues that even if the state court was wrong, it did not "impermissibly distort[]" state law "beyond what a fair reading required." Doc.56 at 29 (quoting *Moore*, 600 U.S. at 38 (Kavanaugh, J., concurring), in turn quoting *Bush v. Gore*, 531 U.S. 98, 115 (2000) (Rehnquist, C.J., concurring)). But even under the "fair reading" test, the state court fails. Nothing in Utah law authorizes the November remedy of imposing Map 1 on the state in defiance of the Legislature. *See* Utah Code §20A-19-301(8) (authorizing the Legislature to draft a new map after a court enjoins one).

### 2. *Moore* only allows state courts to enforce state constitutional limits on the Legislature's redistricting power, not statutory limits.

As to enjoining the 2021 legislatively drawn map, only "requirements imposed 'by the state *constitution* with respect to the enactment of laws'" may restrict the

---

[2] Ironically, the League claims (at 31) that there is no *Moore* problem with the state court issuing Map 1 without complying with the requirements of Proposition 4, despite the state court faulting the Legislature for not complying with Proposition 4's provisions. But that Proposition 4 does not plainly state it applies to state courts further shows that Utah law does not contemplate state courts redistricting.

Legislature's redistricting power. *Moore,* 600 U.S. at 26 (citation omitted). *Moore* is clear: "State courts retain the authority to apply state *constitutional* restraints when legislatures act under the power conferred upon them by the Elections Clause." *Id.* at 37. Instead, the state court here applied statutory restraints (Proposition 4) to the Legislature's redistricting authority.

The League mistakenly asserts (at 30-31) that the state court "explained at *length*" in pages 53 to 58 of its August 25, 2025 order "how the 2021 Map was part of the violation of [the League's] Alter or Reform Clause rights under Article I, Section 2 of the Utah Constitution *and* how it violated multiple provisions of Proposition 4." Doc.56 at 30. But that section is only about S.B. 200; it does not mention the 2021 Map created by H.B. 2004 *at all*.

In fact, nowhere in the Analysis section of that decision does the state court mention H.B. 2004 and the 2021 Map. *See* Doc.67-2 at 143-62. The first mention of H.B. 2004 and the 2021 Map comes only in the Remedy section. *See id.* at 62. That order tracks the League's pleading, which did not raise any claim against H.B. 2004 and the 2021 Map, yet still requested an injunction against H.B. 2004 and the 2021 Map as a remedy for S.B. 200 being declared unconstitutional. Doc.17-2 ¶¶311-319; *id.* at 85-86; Doc.57 at 8. The plain language of the League's complaint shows that

nowhere in Count V is H.B. 2004 or the 2021 Map mentioned, let alone challenged. Doc.17-2 ¶¶ 311-19.[3]

And none of the League's arguments about Utah statutory law (at 27-29) are relevant under *Moore* focus on state constitutional law. 600 U.S. at 26, 37. *Moore* did not open the door to state courts restraining state legislature's redistricting authority under the Elections Clause via state statute. Neither should this Court. *See also* Resp. to PI Mot. at 22-25.

### 3.    No one has cited a case where a state court enjoined a legislatively drawn redistricting map because the law that authorized the map violated a different law.

In any event, it is quite out of the ordinary for a state court to enjoin a legislatively drawn redistricting map without first at least finding it substantively unlawful. But here the state court merely invented its fruit-of-the-poisonous-tree theory, seemingly importing it from Fourth Amendment doctrine.

To be sure, both the League and its supporting amicus cite numerous state cases in support of their arguments. Doc.50 at 17-19; Doc.65 at 8-10. But they apparently have not found a single one that adopts the state court's fruit-of-the-

---

[3] The League also misrepresents (at 37) Plaintiffs' claim as not challenging the state court's injunction that created Map 1. Plaintiffs have no position in this lawsuit on whether S.B. 200 was lawful or not. They do not "challenge" the "state court decision" that it was not. Doc.56 at 37 (quoting Doc.19 at 2). Instead, "this suit challenges Defendant's acquiescence to a state court's purported *remedy* of imposing on Utah a map" that violates the Elections Clause. Doc.19 at 2-3; Doc.1 ¶¶81-82, 94-96.

poisonous-tree theory under the Elections Clause, as they have not cited one in any of their filings.

"Ordinary," moreover, is defined as "of a kind to be expected in the normal order of events."[4] When a state court does something no other state court has apparently done in the history of nation, much less in the history of Elections Clause litigation, it is not "ordinary judicial review." And for that reason too, the attempted invalidation of the 2021 map runs afoul of both *Moore* and the Elections Clause.

### C.    The League's cases support Plaintiffs.

Nor do the League's citations to other Supreme Court decisions advance the ball.  For example, the League misrepresents the proceedings in *Growe v. Emison*, 507 U.S. 25 (1993), which show that its "central point" is *not*, as the League argues, "that state courts are empowered to impose congressional maps." Doc.56 at 21. The League would have this Court believe that *Growe* and previous cases settled the Elections Clause issue despite the Supreme Court's explicitly leaving the question unresolved ten years after *Growe. Branch v. Smith*, 538 U.S. 254, 265 (2003). Such an assertion borders on the frivolous.

As to the specter of concurrent litigation, the problem in *Growe* was that the three-judge panel enjoined a state court from completing a congressional redistricting plan before hearing a challenge to it. 507 U.S. at 36. The facts here present a sharp

---

[4] *Ordinary,    Merriam-Webster    Dictionary,*    https://www.merriam-webster.com/dictionary/ordinary/ (last visited Feb. 16, 2026).

contrast: (1) the 2021 legislatively drawn redistricting map has not been held unconstitutional, (2) there is no impasse between the political branches, (3) no state proceedings have been enjoined, (4) Plaintiffs did not file their federal suit until after a final order on the state-court map was entered, and (5) *Growe* did not involve an Elections Clause challenge. *Growe* simply does not apply here.

The League also distorts 2 U.S.C. §2c when it argues that Congress "*require*[d] courts—both federal and state" to "impose single member congressional districts" when engaging in redistricting. Doc.56 at 24. That statute only provides that no congressional district can elect more than one representative. 2 U.S.C. §2c. It says nothing about who can properly redistrict. And the Elections Clause provides that it is the "Legislature" who is required to redistrict.

The League's reliance on the Supreme Court's discussion of Section 2c in *Branch* is also inapposite. Doc.56 at 25. There the Court expressly left open the question Plaintiffs present here: "[W]e have no occasion to address the [three-judge panel's] alternative holding that the [state court's] redistricting plan was unconstitutional" under the Elections Clause. 538 U.S. at 265. That the state court failed to seek preclearance for its map was enough to affirm. *Id.* And *Branch* was about statutory interpretation, whereas Plaintiffs raise a constitutional claim. Further, on remand, the Mississippi Supreme Court held "that *no* Mississippi court has jurisdiction to draw plans for congressional redistricting." *Mauldin*, 866 So.2d at 434. *Branch* did not foreclose Plaintiffs' claim even in *Branch* itself.

The entire Section 2c discussion in *Branch* is therefore about the three-judge panel's remedy when *it* created a map. *Branch* says nothing about whether state courts may do so consistently with the Elections Clause. The League's reference to *Arizona State Legislature*, moreover, merely cites back to *Branch* and notes that whether a State has been "redistricted in the manner provided by [state] law" does not turn on whether it was done "by the legislature, court decree …, or a commission." Doc.56 at 25-26 (quoting *Ariz. State Legislature*, 576 U.S. at 811-12 & n.20 (citing *Branch*, 538 U.S. at 274)). But once again, that case fails to say anything about whether state courts may properly redistrict under the Elections Clause, just like all the other cases that the League cites.

*  *  *

In short, the state court here violated the Elections Clause, by transgressing the bounds of ordinary judicial review in multiple ways. And Defendant therefore cannot properly be bound by the state court's decision. For any of these reasons, Plaintiffs are likely to succeed on the merits.

## III.    Plaintiffs Have Amply Satisfied the Other Injunction Factors.

The League further argues (at 34-35) that Plaintiffs have not shown irreparable harm because they have no Article III injury. They are incorrect for the reasons explained *supra* in Section I. And those injuries, especially the Representatives' "interest in a fair process" and the alleged "depart[ure] from the law," *Bost*, 2026 WL 96707, *3, show irreparable harm because they "cannot be

14

compensated after the fact by monetary damages," *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005) (citation omitted).

The League's attempt to foist on Plaintiffs the delays that the League has caused is shocking. *See Kansas Health Care Ass'n v. Kansas Dep't Soc. & Rehab. Servs.*, 31 F.3d 1536, 1453-44 (10th Cir. 1994) ("As a general proposition, delay in seeking preliminary relief cuts against finding irreparable injury."). Plaintiffs already thoroughly eviscerated this argument when the League attempted to intervene. Doc.49 at 7. The blame for any perceived delay lies squarely with League and the state court. Despite hearing cross-motions for summary judgment in January 2025, the state court delayed ruling until August 2025, did not adopt Map 1 until November 2025, continued altering Map 1 until December 2025, and did not issue a final order purporting to make Map 1 Utah's congressional map for the 2026 elections until January 6, 2026. Doc.67-1 at 22-25. These delays were at the League's urging and over the Legislature's objections. Doc.67-1 at 24. In fact, the League is *currently* arguing before the Utah Supreme Court that there is no final order. Doc.50 at 1 n.1.

Plaintiffs filed this lawsuit only 27 days after that final order. Doc.1. That delay is insignificant and rendered irrelevant by the evidence that Defendant can administer the election if relief is obtained by February 23rd. The League argues that nothing prevented Plaintiffs from filing, but a premature lawsuit would risk dismissal. *Growe*, 507 U.S. at 30, 36. Plaintiffs sought relief only 27 days after a final order was entered creating Map 1. The authority the League relies on denied a delay

argument where plaintiffs there sought relief "[w]ithin three months." *See Kan. Health Care Ass'n*, 31 F.3d at 1543-44. And even if December 5 is the correct date for when Plaintiffs could file their suit, *Kansas Health Care* still supports them.

The League's arguments on the balance of equities and public interest fares no better. They make no effort to cite any caselaw or distinguish the Plaintiffs caselaw showing that "[w]hen a constitutional right hangs in the balance, … even a temporary loss usually trumps any harm to the defendant." Doc.19 at 28 (quoting *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 806 (2019) (cleaned up)). Furthermore, reverting to the 2021 map is in the public interest as it would eliminate current voter confusion since the 2021 map has been used the past two election cycles. *See Kim v. Hanlon*, 99 F.4th 140, 160, 161 (3d Cir. 2024) ("[T]he District Court's order would reduce, if not eliminate voter confusion").

For the reasons explained in Plaintiffs' motion, preliminary injunction should issue.

## IV. This Court Can Grant Plaintiffs' Requested Relief.

The League and its amicus further contend that, even if the requirements for a preliminary injunction are otherwise satisfied, the relief Plaintiffs seek cannot be granted by this Court—either because of *Purcell* timing concerns or because, they say, the requested relief would itself be unlawful. Neither argument has merit.

### A.    *Purcell* is no obstacle to relief.

As to *Purcell*: Plaintiffs seek relief by the date Defendant's office swore they could implement relief. *See* Doc.51 at 5. And the Lieutenant Governor does not object to the merits of that relief. *Id.* at 4-5. Nothing further need be shown to satisfy *Purcell v. Gonzalez*, 549 U.S. 1 (2006). *See Kim v. Hanlon*, 99 F.4th 140, 160-61 (3d Cir. 2024) (refusing to apply *Purcell* because "the county clerks could implement the necessary changes given the time available").

In addition, we are still four months away from the June primary election—much further out than when *Purcell* has been applied by the Supreme Court. *See, e.g., Purcell*, 549 U.S. at 3 (one month before election); *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) (five days); *Merrill v. Milligan*, 142 S.Ct. 879, 879 (2022) (Kavanaugh, J., concurring) (nine weeks); *Merrill v. People First of Ala.*, 141 S.Ct. 190 (2020) (one month before); *Merrill v. People First of Ala.*, 141 S.Ct. 25 (2020) (thirty-four days); *Andino v. Middleton*, 141 S.Ct. 9, 9 (2020) (forty-six days).

The League's reliance on *Abbott* (at 18) is especially inapposite because there the candidate filing period had *already* been open for two months and the Texas election official opposed the relief sought. *League of Utd. Latin Am. Citizens v. Abbott*, -- F.Supp.3d --, 2025 WL 3215715, *62 (W.D. Tex. 2025) (subsequent history omitted); *id.* at *124 (Smith, J., dissenting). Here, the opposite is true. The candidate filing

period has not yet begun, and the official tasked with Utah's elections agrees that Utah can revert to the previous map if she has an order by February 23rd.[5]

Enjoining use of the unlawfully imposed state-court map, moreover, would not run afoul of *Purcell* because it would merely return the state of affairs to where it was three months ago and for the last two election cycles—and where the legislature currently wishes it to be. *See Wise v. Circosta*, 978 F.3d 93, 104 (4th Cir. 2020) (en banc) (Wilkinson & Agee, JJ., dissenting) ("Let's understand the strategy that is being deployed here. The status quo is the election law enacted by the North Carolina General Assembly.").

In short, we are not yet in *Purcell* territory.

## B.    Plaintiffs' requested remedy is entirely lawful and appropriate.

The League also argues (at 32-34) that Plaintiffs request an illegal remedy but addresses only part of Plaintiffs' requested relief. Step One of Plaintiffs' remedy is to "[d]eclare that Map 1 was unconstitutionally imposed and agreed to by state actors—specifically a state district judge and the Lieutenant Governor—with no authority under federal or state law to adopt, impose, or implement a congressional map other than one adopted by the Legislature" and preliminarily enjoin Defendant from implementing it or "any congressional map other than one passed by the Legislature

---

[5] Further, *Purcell* is grounded in the state's interest, which explains why it is *not* implicated if a State changes its election rules close to an election. 549 U.S. at 4. So it does not apply here because the State, through Defendant, does not object to the merits of Plaintiffs' complaint and the relief requested, so long as she knows which map to use in time.

pursuant to Article IX of the Utah Constitution and free of coercion from Judge Gibson." Doc.1 at 29-30. The League does not dispute that this Court can grant that relief.

The League's argument goes only to Step Two of Plaintiffs' remedy, which is to "[r]emand the selection of a congressional map to the Legislature" and if a map cannot be selected in time, to "declare that the 2021 map governs." Doc.1 at 30. First, the League argues (at 32) that the 2021 Map cannot be used because the state court enjoined it. But the injunction against the 2021 Map was not properly before the state court and exceeded ordinary judicial review under *Moore*. That unconstitutional remedial order poses no obstacle to this Court's authority to declare the legislatively enacted 2021 Map Utah's lawful map for 2026. *See* U.S. Const. art. VI, cl 2 (the Constitution is the "supreme Law of the Land").

The League misrepresents Plaintiffs' motion as not challenging the state court's unconstitutional injunction. Doc.56 at 32 (quoting Doc.19 at 2). As explained *supra* n.3, Plaintiffs' claim is that the state court's remedy creating Map 1 was unconstitutional; they take no position here on the state court's underlying decision that S.B. 200 violated Utah constitutional and statutory law. *See supra* n.3. And that decision was the only one properly before it.

The League's second argument (at 33) echoes its first, asserting that by presenting Map C to the state court, the 2021 Map is no longer in effect. But the plain text of the statute adopting Map C states that the 2021 Map (H.B. 2004)

governs *unless* both of two conditions are met: "a court enjoins the electronic file" containing the 2021 Map *and* the Utah Independent Redistricting Commission and Standards Act "is in effect." Utah Code §20A-13-101.1(2)(b). Because the injunction is unconstitutional, when this Court grants Plaintiffs' requested relief, the 2021 Map will once again be the Legislature's designated map.

Third, the League argues (at 33) that Section 2a(c) requires courts to impose maps that comply with a state's substantive redistricting law. The League has only the *Branch* plurality decision to rely on there, and that case was decided before *Moore* or even *Arizona State Legislature*. Doc.56 at 33 (citing *Branch*, 538 U.S. at 278 (plurality)). But even if the League were correct, no court has decided that the 2021 Map violated any law. The sole basis for the League's assertion that the 2021 Map has been held unconstitutional is the state court's unordinary judicial review stating that the 2021 Map was "fruit of [an] unlawful [statute]," *i.e.*, S.B. 200. Doc.67-2 at 70.

The League's fourth argument (at 34) ends on an ironic note, quoting a Supreme Court decision holding that only "[o]nce a constitutional violation is found," can "a federal court" issue a remedy that must be "tailor[ed] … to fit 'the nature and extent of the constitutional violation.'" *Dayton Bd. of Educ. v. Brinkman*, 433 U.S. 406, 420 (1977) (citation omitted). That tailoring issue is precisely why the state court's injunction against H.B. 2004 in a lawsuit challenging S.B. 200 was unconstitutional under the Elections Clause and violated *Moore*'s ordinary judicial

20

review principle. Here, when this Court holds that the state court's Map 1 violates the Elections Clause, it can tailor its remedy to (1) declaring that Map 1 is unconstitutional and enjoining the Lieutenant Governor from implementing it, and (2) declaring that the 2021 Map governs the 2026 Utah Elections if the Legislature does not have time to enact a new one. And the Court may not even need to get that far, inasmuch as Defendant has already indicated a willingness to implement the 2021 map if this Court finds that Map 1 was invalidly imposed. Doc.51.

## CONCLUSION

The Court should grant Plaintiffs' motion for preliminary injunction, enjoin implementation of Map 1, and direct that unless the Legislature timely enacts a compliant plan, the 2026 congressional elections proceed under the last lawful legislative map, consistent with the Elections Clause, Utah law, and 2 U.S.C. §2a(c): the 2021 map.

February 16, 2026

Respectfully submitted,

/s/ Gene C. Schaerr

GENE C. SCHAERR (*pro hac vice*)
D.C. Bar No. 416368
JUSTIN A. MILLER (*pro hac vice*)
D.C. Bar No. 90022870
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
gschaerr@schaerr-jaffe.com
jmiller@schaerr-jaffe.com

JAMES C. PHILLIPS
Utah Bar No. 17302
TYLER B. LINDLEY
Utah Bar No. 18635
SCHAERR | JAFFE LLP
299 S. Main Street, Suite 1300
Salt Lake City, UT 84111
jphillips@schaerr-jaffe.com
tlindley@schaerr-jaffe.com

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the requirements of DUCivR 7-1(a)(4)(D) and 10-1 because this motion was prepared in 12-point Century Schoolbook, a proportionally spaced typeface, using Microsoft Word, and because this motion contains 5302 words.

Dated: February 16, 2026          */s/ Gene C. Schaerr*
                                  Gene C. Schaerr (*pro hac vice*)

                                  *Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on February 16, 2026, the foregoing motion was filed with the Clerk of the Court by this CM/ECF filing system, which will cause all counsel of record to be served electronically.

Dated: February 16, 2026                    */s/ Gene C. Schaerr*
                                            Gene C. Schaerr (*pro hac vice*)

                                            *Counsel for Plaintiffs*